Laurence M. Rosen (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-2684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANCOUVER ALUMNI ASSET HOLDINGS INC., Individually and on Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| vs. | <u>JURY DEMANDED</u> |
| DAIMLER AG, DIETER ZETSCHE, and THOMAS WEBER, | |
| Defendants. | |

Plaintiff Vancouver Alumni Asset Holdings Inc. ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, announcements made by Defendants, a review of U.S. Securities and Exchange Commission ("SEC") filings

by Daimler AG ("Daimler" or the "Company"), review of investor reports issued by Daimler, wire and press releases published by and regarding Daimler, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.     This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Daimler American Depositary Receipts ("ADRs") between February 22, 2012 and April 21, 2016, both dates inclusive, (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of federal securities laws and pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

3.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

4.     Venue is proper in this District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as Defendants conduct business within this District and a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

5.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.     Plaintiff, as set forth in the accompanying Certification, purchased Daimler ADRs at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

7.     Defendant Daimler, through its subsidiaries, develops, produces, distributes, and sells passenger cars, vans, trucks, and buses worldwide. Daimler operates through Mercedes-Benz Cars, Daimler Trucks, Mercedes-Benz Vans, Daimler Buses, and Daimler Financial Services segments. The Company is incorporated in Germany with principal executive offices located in Stuttgart, Germany. The Company also maintain an office in Long Beach, California. Daimler's ADRs trade on the Over-the-Counter Market ("OTC") under the ticker symbols "DDAIF" and "DDAIY."

8.     Defendant Dieter Zetsche ("Zetsche") has been a member of the Board of Management of Daimler since December 16, 1998, and Chairman of the Board of Management of Daimler since January 1, 2006. Defendant Zetsche is also Head of Mercedes-Benz Cars Division.

9.     Defendant Thomas Weber ("Weber") has been a member of the Board of Management of Daimler since January 1, 2003. In this function, he is responsible for Group Research & Mercedes-Benz Cars Development since May 1, 2004.

10.     Defendants Zetsche and Weber are sometimes referred to herein as the "Individual Defendants."

11.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)    was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)    was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)    was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)    approved or ratified these statements in violation of the federal securities laws.

12.    Daimler is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

13.    The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Daimler under *respondeat superior* and agency principles.

14.    Defendant Daimler and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## RELEVANT NON-PARTIES

15.    Relevant non-party Mercedes-Benz USA, LLC ("Mercedes") is engaged in the designing, manufacturing, marketing, distribution, leasing, and selling of Mercedes-Benz vehicles in the United States and worldwide. Mercedes is a Delaware limited liability corporation with its principal place of business located at 303 Perimeter Center North, Suite 202, Atlanta, Georgia, 30346. Mercedes operates as a subsidiary of Daimler.

## **DAIMLER'S U.S. ADR PROGRAM**

16. An ADR is a U.S. dollar denominated form of equity ownership in a non-U.S. company. It represents the foreign shares of a company held on deposit by a custodian bank in the company's home country and carries the corporate and economic rights of the foreign shares, subject to the terms specified on the ADR certificate.

17. Daimler established a sponsored Level I ADR program in September 2010, which trades on the OTC in the United States and Deutsche Bank Trust Company Americas ("Deutsche Bank") serves as the acting depositary bank.

## **SUBSTANTIVE ALLEGATIONS**

## **BACKGROUND**

18. The United States Government, through the Environmental Protection Agency ("EPA"), has passed and enforced laws and regulations designed to protect United States citizens and the environment of the United States from pollutants, chemicals, and agents known to cause disease and/or death in humans and that are known to harm the environment. Vehicle manufacturers, including Mercedes and Daimler, must abide by these United States laws and must adhere to EPA rules and regulations.

19. In order to meet the rigorous United States governmental emission standards and produce a desirable vehicle with torque and power characteristics and good fuel economy, Mercedes developed the BlueTEC™ ("BlueTEC") diesel engine. BlueTEC is Daimler's marketing name for Mercedes engines that are designed to effectively reduce fuel consumption and emissions in Mercedes diesel vehicles.

20. However, diesel engines pose a significant danger to the environment as they emit many harmful and dangerous pollutants, chemicals, and agents, such as carbon dioxide ("CO2") and nitrogen oxide ("NOx").

21.     To combat this problem vehicle manufacturers illegally install certain mechanisms designed to evade emissions standards with the help of certain software or devices that manipulate emissions controls, known as "defeat devices" or "cheat devices".

22.     The EPA defines a defeat device as "an auxiliary emission control device (AECD) that reduces the effectiveness of the emission control system under conditions which may reasonably be expected to be encountered in normal vehicle operation and use." 40 C.F.R. 86.004-2.

23.     The EPA prohibits the equipment of defeat devices in vehicles in the United States. 40 C.F.R. 86.004-16.

24.     A recent and prominent example of vehicle manufacturers' use of defeat devices is the major scandal involving Volkswagen AGs, Audi AG and Volkswagen Group of America, Inc. and Porsche AG and Porsche Cars North America (collectively, "Volkswagen").

25.     On September 18, 2015, the EPA issued a Notice of Violation of the Clean Air Act to Volkswagen AG, Audi AG, and Volkswagen Group of America, Inc. alleging that model year 2009 – 2015 Volkswagen and Audi diesel cars equipped with 2.0 liter engines included software that circumvents EPA emissions standards for nitrogen oxides. The EPA labeled the software a "defeat device" as defined by the Clean Air Act, 40 C.F.R. 86.004-2.

26.     On November 2, 2015, the EPA issued a second Notice of Violation to Volkswagen. The Notice of Violation alleged that Volkswagen developed and installed a defeat device in certain light duty diesel vehicles equipped with 3.0 liter engines for model years 2014 through 2016 that increased emissions of nitrogen oxide up to nine times the EPA's standard.

27.     On November 19, 2015, Volkswagen officials informed the EPA that the defeat device had existed in all of its U.S. 3.0 liter diesel models since 2009.

28.     The Volkswagen vehicles contained defeat devices that detected when the vehicle was undergoing official emissions testing in order to trigger the vehicle's full emissions controls on only during official emissions testing, but not during normal operation of the vehicle.

29.     This resulted in vehicles that met emissions standards in the laboratory or state testing stations, but not during normal operation of the vehicle.

30.     The U.S. Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Accordingly, Mercedes has certified to the EPA that the Mercedes BlueTEC vehicles sold in the United States meet applicable federal emissions standards.

31.     Nevertheless, by manufacturing and selling BlueTEC cars that emit far more pollutants than permitted under EPA standards, Daimler violated the Clean Air Act, defrauded its customers, engaged in unfair competition under state and federal law, without ever disclosing any of the aforementioned to Daimler investors.

**MATERIALLY FALSE AND MISLEADING STATEMENTS**

32.     On February 22, 2012, Daimler announced its financial and operating results for the period ended December 31, 2011, and issued a report entitled "Annual Financial Report 2011" ("2011 Annual Report"). The 2011 Annual Report was signed by Defendants Zetsche and Weber.

33.     The 2011 Annual Report touted Daimler's ability in creating fuel-efficient and environmentally friendly vehicles at all of Daimler's automotive divisions, stating in pertinent part:

Based on our "Road to Emission-free Mobility" initiative, the main areas of our work were new, extremely fuel-efficient and environmentally friendly drive technologies in all automotive divisions.

*       *       *

As part of our "Road to Emission-free Driving" strategy, we are implementing this intelligent mix of drive systems for our cars and commercial vehicles. We have defined the following focal areas of this approach:

> **1. We continue to develop our vehicles with state-of-the-art internal-combustion engines and are optimizing them to achieve significantly lower fuel consumption and emissions.**

[Emphasis added].

34.     The 2011 Annual Report touted BlueTEC's ability in reducing diesel-vehicle emissions and stated that Daimler vehicles equipped with BlueTEC "fulfill the strictest emission standards", stating in pertinent part:

> In recent years, we have continuously reduced the emission of pollutants by our cars: by more than 75% since 1995 and by more than 30% in the past five years. The emission reductions achieved by our cars with BlueTEC diesel engines are particularly impressive: more than 90% lower than in 1995 and over 75% lower than in 2005. We are global leaders for diesel engines with our BLUETEC technology. **Our BLUETEC automobiles fulfill the strictest emission standards and are the cleanest diesel cars in the world.**

[Emphasis added].

35.     The 2011 Annual Report touted Daimler's ability in reducing $CO_2$ emissions in its vehicles, stating in pertinent part:

- 8 -

The $CO_2$ emissions of our new car fleet in the European Union decreased by another 8 grams per kilometer to an average of 150 g/km, although the proportion of exclusive premium automobiles actually increased.

\*     \*     \*

**Further reductions in $CO_2$ emissions.** Our new economical engines, ECO start-stop technology, and new and extremely efficient model versions enabled us to reduce the average $CO_2$ emissions of the cars we sold in the European Union in the year under review from 158 grams per kilometer to 150 g/km, although we had a larger proportion of high-end automobiles in our model mix. Our goal is to reduce the average $CO_2$ emissions of our new vehicle fleet in the European Union to 125 g/km by 2016 (see pages 94 f and 148 f).

36.     On February 25, 2013, Daimler announced its financial and operating results for the period ended December 31, 2012, and issued a report entitled "Annual Financial Report 2012" ("2012 Annual Report").

37.     The 2012 Annual Report touted Daimler's ability in creating fuel-efficient and environmentally friendly vehicles at all of Daimler's automotive divisions, stating in pertinent part:

Based on our "Road to Emission-free Mobility" strategy, the main focus of our work was in the area of new, extremely fuel-efficient and **environmentally friendly drive technologies in all automotive divisions.**

\*     \*     \*

In this way, we want to significantly reduce the fuel consumption and pollutant emissions of our vehicles today, while striving to eliminate the use of fossil fuels and emissions entirely in the long term. We are now implementing this intelligent mix of drive systems for our cars and commercial vehicles as part of our "Road to Emission-free Driving" strategy. In doing so, we are focusing on the following areas:

1. **We are continuing to develop and further optimize our vehicles with state-of-the-art combustion engines in order to achieve significantly lower fuel consumption and emissions.**

[Emphasis added].

38.    The 2012 Annual Report touted Daimler's ability in reducing CO2 emissions in its vehicles, stating in pertinent part:

> We reduced the CO2 emissions of our entire fleet of new cars in the European Union by another 10 g/km to an average of 140 g/km in 2012. The new models launched in 2011 und 2012, whose fuel consumption was reduced by up to 30% compared with the predecessor models, demonstrate that we are consistently applying fuel-saving technologies in all vehicle segments.
>
> *       *       *
>
> **Further reduction of CO2 emissions.** Our new economical engines and extremely efficient model variants once again enabled us to substantially reduce the average CO2 emissions of the cars we sold in the European Union in 2012 – this time from 150 g/km to 140 g/km. We thus once again achieved an above-average reduction in the CO2 emissions of our vehicle fleet, simultaneously undercutting the EU targets for this year.

39.    The 2012 Annual Report touted BlueTEC's ability in reducing diesel-vehicle emissions and stated that Daimler vehicles equipped with BlueTEC "fulfill the strictest emission standards", stating in pertinent part:

> In recent years, we have continuously reduced the emission of pollutants by our cars: by more than 80% since 1995 and by approximately 40% in the past five years. **Even bigger reductions are achieved by our cars with BlueTEC diesel engines. We are global leaders for diesel engines with the BLUETEC technology. Our BLUETEC automobiles fulfill the strictest emission standards and are the cleanest diesel cars in the world.**

[Emphasis added].

40.     On February 21, 2014, Daimler announced its financial and operating results for the period ended December 31, 2013, and issued a report entitled "Annual Financial Report 2013" ("2013 Annual Report").

41.     The 2013 Annual Report touted Daimler's ability in creating fuel-efficient and environmentally friendly vehicles at all of Daimler's automotive divisions, stating in pertinent part:

> We intend to significantly reduce the fuel consumption and pollutant emissions of our vehicles today and to eliminate them entirely in the long term. We are implementing this intelligent mix of drive systems for our cars and commercial vehicles as part of our "Road to Emission-free Driving" strategy. We have defined the following focal areas for this approach:
>
> **1. We continue to enhance our vehicles with state-of-the-art internal-combustion engines that we are optimizing to achieve significantly lower fuel consumption and emissions.**

[Emphasis added].

42.     The 2013 Annual Report touted Daimler's ability in reducing $CO_2$ emissions in its vehicles, stating in pertinent part:

> **Further reduction of $CO_2$ emissions from cars**. Mercedes-Benz made intensive efforts early on to reduce the fuel consumption of its vehicles while enhancing their performance – and thus increasing driving enjoyment and safety margins. With a fleet average of 134 g/km (2012: 140 g/km), we once again significantly reduced the average $CO_2$ emissions of the cars we sell in the European Union in 2013. More than 50 Mercedes-Benz models emit less than 120 g $CO_2$/km, and over 100 models bear the energy efficiency label A+ or A.

*    *    *

For example, we once again significantly reduced the average CO2 emissions of the cars we sell in the European Union from 140 grams per kilometer to 134 g/km in 2013.

43. The 2013 Annual Report touted BlueTEC's ability in reducing diesel-vehicle emissions and stated that Daimler vehicles equipped with BlueTEC "conform to the strictest emissions standards", stating in pertinent part:

We have also continuously reduced the pollutant emissions of our cars in recent years: by more than 80% since 1995 and by 23% in the past five years. We have achieved even more dramatic reductions with our BlueTEC diesel cars. **Thanks to BLUETEC technology, we are a world leader for diesel vehicles. Automobiles equipped with this technology conform to the strictest emissions standards and are the cleanest diesel cars in the world.**

[Emphasis added].

44. On February 17, 2015, Daimler announced its financial and operating results for the period ended December 31, 2014, and issued a report entitled "Annual Financial Report 2014" ("2014 Annual Report"). The 2014 Annual Report was signed by Defendants Zetsche and Weber.

45. The 2014 Annual Report touted Daimler's ability in reducing CO2 emissions in its vehicles, stating in pertinent part:

**129 g/km CO2 emissions.** The highest levels of efficiency in all segments. We have reduced the CO2 emissions of our fleet of vehicles sold in Europe to 129 g/km. More than 100 Mercedes-Benz models have an efficiency class rating of A+ or A and over 60 models emit less than 120 g CO2/km.

*    *    *

Over the past five years, we have reduced the CO2 emissions of our cars by more than 19%. More than 60 Mercedes‑Benz models emit less than 120 g CO2/km, and more than 90 models have received A+ or A energy efficiency labels.

46.     The 2014 Annual Report touted Daimler's ability in creating fuel-efficient and environmentally friendly vehicles at all of Daimler's automotive divisions, stating in pertinent part:

We therefore strive to offer our customers safe and efficient low-emission vehicles and associated services. Our vision for the future is to establish a mix of drive systems that reflect market demands. Our "Road to Emission-free Driving" initiative defines the key development approaches for creating extremely fuel efficient and environmentally friendly drive-system technologies at all of our divisions:

**1. We continue to enhance our vehicles with state-of-the-art internal combustion engines that we are optimizing to achieve significantly lower fuel consumption and emissions.**

[Emphasis added].

47.     The 2014 Annual Report touted BlueTEC's ability in reducing diesel-vehicle emissions and stated that Daimler vehicles equipped with BlueTEC "conform to the strictest emissions standards", stating in pertinent part:

We have also continuously reduced the pollutant emissions of our cars in recent years – by more than 80% since 1995 and by over 20% in the past five years. Thanks to BLUETEC technology, we are a world leader for diesel vehicles. **Automobiles equipped with this technology conform to the strictest emissions standards and are the cleanest diesel cars in the world.**

[Emphasis added].

- 13 -

48.  On September 25, 2015, Daimler issued a press release entitled "Daimler AG categorically denies any and all allegations of manipulation", and stated that Daimler never has used and never will use a "defeat device", stating in pertinent part:

### Daimler AG categorically denies any and all allegations of manipulation

Sep 25, 2015, 08:53 ET from Daimler Corporate Communications

STUTTGART, Germany, Sept. 25, 2015 /PRNewswire/ -- **In light of the ongoing assertions from the Deutsche Umwelthilfe (DUH), a non-government organisation, and the related speculation, Daimler AG once again clearly states that:**

- We categorically deny the accusation of manipulating emission tests regarding our vehicles. A defeat device, a function which illegitimately reduces emissions during testing, has never been and will never be used at Daimler. This holds true for both diesel and petrol engines. Our engines meet and adhere to every legal requirement.
- In light of the written request by the DUH, which was sent to us this morning with a deadline to respond by 3:00 pm (CET), and the seven questions they posed, we can confirm that none of the allegations apply to our vehicles. The technical programming of our engines adheres to all legal requirements.
- We have no knowledge of measurements that indicate our vehicles did not meet legally required standards.
- We actively support the work being done within Europe and Germany in order to develop new testing methods which measure emissions based on real driving conditions.
- We work closely and constructively with the responsible authorities in Germany, Europe and the United States and will willingly provide any vehicle for testing.

We'd like to point out that we are evaluating our legal options pertaining to the approach taken and the public assertions made by the DUH.

49.    On October 22, 2015, Daimler announced its financial and operating results for the period ended September 30, 2015 ("Q3 2015") and issued a corporate presentation slide-show entitled "Corporate Presentation Fall 2015" which contained a statement on diesel emissions, stating in pertinent part:

## Statement on diesel emissions

| |
|---|
| Daimler does not use and has never used defeat devices which illegally limit the effectiveness of the emission control system. This applies to all of our diesel and gasoline engines worldwide. |
| We place great importance on conducting our business with integrity and comply with applicable laws and regulations. We reject any accusations to the contrary. |
| We consider the diesel engine to be and remain an important fuel-efficient technology that plays a crucial part in achieving the climate goals. |
| We use the same SCR (selective catalytic reduction)-based technology in the EU6 diesel engines for Europe and the US market. Exhaust-specific modifications are required for the US on account of the different exhaust legislation. |
| We actively support the work on the Worldwide Harmonized Light Vehicles Test Procedure (WLTP) and a new measuring method for the real driving emissions (RDE). |
| We have already included the costs for introducing the WLTP and RDE in our development budget. The same applies to additional system costs for the introduction of future components. |

8                                                                                          DAIMLER

50.    On February 18, 2016, Daimler announced its financial and operating results for the period ended December 31, 2015, and issued a report entitled "Annual Financial Report 2015" ("2015 Annual Report"). The 2015 Annual Report was signed by Defendants Zetsche and Weber.

51.    The 2015 Annual Report stated that Daimler does not use, and has never used a "defeat device" in Daimler's diesel and gasoline engines, stating in pertinent part:

- 15 -

**Compliance with legal emission-measurement stipulations**

After reports surfaced or manipulation by a competitor in the fulfillment of emission regulations, doubts began to arise concerning the emission and fuel consumption figures reported by other automakers. **Daimler repudiates any allegations of manipulation. In particular, Daimler does not use and has never used any so-called "defeat device" that illegally restricts the effectiveness of emission control systems. This applies to all of our diesel and gasoline engines. Our engines comply with all applicable laws and regulations. We also preclude any irregularities when measuring the CO2 emissions of our vehicles**.

[Emphasis added].

52.     The 2015 Annual Report touted BlueTEC's ability in reducing diesel-vehicle emissions and stated that Daimler vehicles equipped with BlueTEC "comply with the strictest emission standards", stating in pertinent part:

We have also continuously reduced the pollutant emissions of our cars in recent years and have been able to meet new emission requirements in advance – and ahead of our competitors…**Our BLUETEC technology and sustainable SCR exhaust treatment technology make us a world leader for reducing diesel vehicle emissions. The cars with this equipment already comply with the strictest emission standards.**

[Emphasis added].

53.     The 2015 Annual Report touted Daimler's ability in creating fuel-efficient and environmentally friendly vehicles at all of Daimler's automotive divisions, stating in pertinent part:

We therefore strive to offer our customers vehicles and services that are safe and efficient and produce low emissions – along the entire value chain. Our "Road to Emission-free Driving" initiative defines

the key development approaches for creating new extremely fuel-efficient and environmentally friendly drive-system technologies at all of our automotive divisions:

> **1. We continue to enhance our vehicles with state-of-the-art internal combustion engines that we are optimizing to achieve significantly lower fuel consumption and emissions.**

[Emphasis added].

54.    The 2015 Annual Report touted Daimler's ability in reducing CO2 emissions in its vehicles, stating in pertinent part:

**Further reductions in cars' CO2 emissions**

Daimler makes great efforts to reduce the fuel consumption of its vehicles while enhancing their performance – and thus increasing driving enjoyment and safety reserves. With a fleet average of 123 g/km (2014: 129 g/km), **we once again significantly reduced the average CO2 emissions of the cars we sell in the European Union in 2015**. We were thus ahead of schedule in achieving our goal of reducing the CO2 emissions of our new-vehicle fleet in the European Union to 125 g/km by 2016. Our achievements here were due to the further optimization of our BlueEFFICIENCY measures and the success of our efficient hybrid drive systems and extremely fuel-efficient new models. **We have reduced the CO2 emissions of our cars by 18% since 2011 – and by 40% within just two vehicle generations. More than 68 Mercedes‑Benz models emit less than 120 g CO2/km and more than 108 models have received A+ or A energy efficiency labels.**

[Emphasis added].

55.    The statements referenced in ¶¶ 32 - 54 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operational and financial

results, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) on average, almost every Mercedes model emits over 50% more $CO_2$ on the road than in laboratory tests; (2) BlueTEC vehicles release illegal levels of emissions in virtually all real world driving conditions; (3) BlueTEC vehicles do not meet emission standards in virtually all real world driving conditions; (4) BlueTEC vehicles emit illegal and dangerous levels of NOx at levels 65 times higher than those permitted by the EPA when operating in temperatures below 50 degrees Fahrenheit; (5) BlueTEC vehicles produce average on-road NOx emissions that are 19 times higher than the U.S. standard and in some instantaneous readings as high as 65 times more than the U.S. limit; (6) while operating at low temperatures and at variable speeds, Mercedes vehicles emit NOx as high as 30.8 times more than U.S. and state emission standards; and (7) as a result, Daimler's public statements were materially false and misleading at all relevant times.

## THE TRUTH EMERGES

56.   On September 21, 2015 during aftermarket hours, *Transport & Environment* published an article entitled "VW's cheating is just the tip of the iceberg", compiling emissions data from "respected testing authorities around Europe", found that that Mercedes might sell cars that produce illegal levels of emissions by using a illegal defeat device, stating in pertinent part:

> **In $CO_2$ tests, on average almost every Mercedes model achieves levels on the road over 50% higher than the laboratory tests**; the BMW 5 series and Peugeot 308 achieve just shy of 50% higher than in the lab. For virtually every new model that comes onto the market the gap between test and real-world performance leaps. With the launch of the VW Golf Mark VII the gap between test and real-world $CO_2$ emissions jumped from 22% to 41%. **The gap for the new Mercedes C Class rose from 37% to 53%;** for the Renault Clio IV the gap almost doubled from 19% to 34%. **These changes are unlikely to be caused solely by the increased use of test flexibilities**

- 18 -

**– the more sinister and illegal defeat devices may also be in use** and T&E has initiated a testing programme to demonstrate this as the US authorities have done to expose VW.

[Emphasis added].

57.     On this news, shares of DDAIF fell $5.38 per share or approximately 7% from its previous closing price to close at $74.30 per share on September 22, 2015, and shares of DDAIY fell $5.44 per share or approximately 7% from its previous closing price to close at $74.01 per share on September 22, 2015, damaging investors.

58.     On February 18, 2016, the law firm of Hagens Berman Sobol Shapiro LLP ("Hagens Berman") issued a press release announcing that it filed a class-action lawsuit against Mercedes[1] alleging, among other things, that Mercedes knowingly programmed its diesel vehicles to emit illegal, dangerous levels of NOx, stating in pertinent part that:

**CORRECTING and REPLACING Hagens Berman Files National Lawsuit Against Mercedes Stating BlueTEC Diesels Pollute at Illegal Levels**

***Class action accuses Mercedes of deceiving consumers about emissions levels***

February 18, 2016 02:45 PM Eastern Standard Time

CHICAGO--(BUSINESS WIRE)--The second paragraph, first sentence, should read: The suit, filed Feb. 18, 2016, in the U.S. District Court for the District of New Jersey... (instead of U.S. District Court for the Northern District of Illinois).

---

[1] The lawsuit filed by Hagens Berman is styled as *LYNEVYCH v. MERCEDES-BENZ USA, LLC*, Docket No. 2:16-cv-00881 (D.N.J. Feb 18, 2016).

The corrected release reads:

**HAGENS BERMAN FILES NATIONAL LAWSUIT AGAINST MERCEDES STATING BLUETEC DIESELS POLLUTE AT ILLEGAL LEVELS**
*Class action accuses Mercedes of deceiving consumers about emissions levels*

An owner of a Mercedes BlueTEC diesel automobile today filed a class-action lawsuit against Mercedes stating **the automaker knowingly programmed its Clean Diesel vehicles to emit illegal, dangerous levels of nitrogen oxide (NOx) at levels 65 times higher than those permitted by the EPA when operating in temperatures below 50 degrees Fahrenheit**, according to consumer-rights law firm Hagens Berman.

The suit, filed Feb. 18, 2016, in the U.S. District Court for the District of New Jersey, accuses Mercedes of deceiving consumers with false representations of its BlueTEC vehicles, which it marketed as "the world's cleanest and most advanced diesel" with "ultra-low emissions, high fuel economy and responsive performance" that emits "up to 30% lower greenhouse-gas emissions than gasoline." According to the complaint, **on-road testing confirmed that Mercedes' so-called Clean Diesel cars produced average on-road NOx emissions that are 19 times higher than the U.S. standard, with some instantaneous readings as high as 65 times more than the U.S. limit**.

"Mercedes labeled its BlueTEC vehicles as 'earth friendly,' selling consumers the false notion that these diesel cars were less harmful to the environment, but Mercedes never divulged to consumers that BlueTEC diesels pollute at illegal levels when driven at lower temperatures and that its 'champion of the environment' mantra was a sham," said Steve Berman, managing partner of Hagens Berman. "It appears that Mercedes has been caught in a similar scheme as Volkswagen and programmed these BlueTEC vehicles to pollute, all the while reaping profits from those who have fallen victim to its aggressive and deceptive eco-conscious branding."

The suit seeks relief for those who purchased the affected vehicles, including injunctive relief in the form of a recall or free replacement program and restitution including either recovery of the purchase price or overpayment or diminution in value due to Mercedes' misleading statements and omissions regarding the emission levels of its Clean Diesel BlueTEC vehicles.

The lawsuit alleges that the following Mercedes models powered by BlueTEC diesel-fueled engines are affected by the unlawful, unfair, deceptive and otherwise defective emission controls utilized by Mercedes. Contact Hagens Berman to find out your rights, if you purchased or leased one of the following affected BlueTEC vehicles:

- ML 320
- R320
- S Class
- ML 350
- E Class
- GLK Class
- GL 320
- GL Class
- GLE Class
- E320
- ML Class
- Sprinter
- S350
- R Class

The complaint states, "Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illness serious enough to send people to the hospital. Ozone and particulate matter exposure have been associated with premature death due to respiratory-related or cardiovascular-related effects."

"When we filed the first lawsuit against Volkswagen regarding their use of emissions-cheating software, we felt they were not the only culprits duping consumers into paying a high price for deceptive diesels," Berman said. "Mercedes' deception involves a cover-up of even higher levels of pollution, and consumers paid high prices for these luxury vehicles they thought were clean, only to be forced to drive diesel cars dirtier than their gasoline counterparts."

[Emphasis added].

59.   On this news, shares of DDAIF fell $2.08 per share or approximately 3% over the next two days to close at $70.54 per share on February 19, 2016, and shares of DDAIY fell $2.27 per share or approximately 3% over the next two days to close at $70.40 per share on February 19, 2016, damaging investors.

60.   On February 28, 2016, *Reuters* published an article entitled "EPA Requests information from Mercedes-Benz over emission levels", announcing that the EPA has requested information from Daimler in response the class-action lawsuit filed by Hagens Berman against Mercedes, stating in pertinent part:

**Business** | Mon Feb 29, 2016 11:54am EST

EPA requests information from Mercedes-Benz over emission levels

U.S. Environmental Protection Agency said on Monday it had not opened an official investigation into Daimler's luxury car brand Mercedes-Benz but had only requested information to explain emissions levels in some of its cars.

A spokesman for Daimler said on Sunday it was fully cooperating with the request for information, and that Mercedes-Benz cars conformed with all rules and norms.

**Daimler said the EPA request for information came in response to a class-action lawsuit filed by law firm Hagens Berman on Feb. 18, 2016, in the New Jersey District Court.**

The suit accuses Mercedes of deceiving consumers with false representations of its BlueTEC vehicles, which it marketed as "the world's cleanest and most advanced diesel."

A Daimler spokesman said the suit was wholly unfounded and without merit.

**The lawsuit alleges the automaker knowingly programmed its Clean Diesel vehicles to emit illegal, dangerous levels of nitrogen oxide, or NOx, at levels 65 times higher than those permitted by the EPA when operating in temperatures below 50 degrees F (10 C).**

Daimler said its cars conformed to all relevant rules and regulations.

It said, however, that under certain circumstances, a system to treat exhaust fumes could operate at a level of reduced effectiveness to prevent condensation from building up in the exhaust system. The condensation could otherwise lead to corrosion and damage the effectiveness of the engine and exhaust system.

That is permissible and not illegal, a spokesman said late on Sunday.

German daily Handelsblatt was first to report the EPA request for information. In its Monday edition, Handelsblatt quoted Christopher Grundler, director of the EPA's Office of Transportation and Air Quality, as saying: "We know about the lawsuit. We have contacted Mercedes and requested the test results for the U.S. diesel engines."

EPA spokeswoman Laura Allen confirmed Grundler's comments.

[Emphasis added].

61.    On this news, shares of DDAIF fell $0.41 per share from its previous closing price to close at $67.97 per share on February 29, 2016, and shares of DDAIY fell $0.44 per share from its previous closing price to close at $67.81 per share on February 29, 2016, damaging investors.

62.    On April 7, 2016, Hagens Berman issued a press release announcing that it amended the class-action lawsuit against Mercedes alleging, among other things, that Mercedes BlueTEC vehicles likely contain a "defeat device", stating in pertinent part:

- 23 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Hagens Berman: Mercedes Owners File New Lawsuit Stating Mercedes BlueTEC Diesels Fail Emissions Tests in Nearly All Real World Conditions**

April 07, 2016 09:38 AM Eastern Daylight Time

NEWARK, N.J.--(BUSINESS WIRE)--Today, owners of Mercedes BlueTEC diesel automobiles from 13 states filed an amended class-action lawsuit against Mercedes-Benz USA stating **the automaker knowingly programmed its BlueTEC vehicles to release illegal levels of emissions in virtually all real world driving conditions and likely contain a "defeat device" used to cheat emissions testing**, according to consumer-rights law firm, Hagens Berman.

"**Testing at highway speeds, at low temperatures, and at variable speeds, indicate a systemic failure to meet emissions standards. Low temperature testing at highway speeds for example, produced emissions that were 8.1 to 19.7 times the highway emissions standard**," according to the suit, filed Apr. 7, 2016 in the U.S. District Court for the District of New Jersey. "**In virtually every road test the emissions were hardly as Mercedes promised as 'the world's cleanest and most advanced diesel...' Mercedes vehicles do not meet emission standards in virtually all real world driving conditions**."

The lawsuit adds that **testing at low temperatures at variable speeds produced emissions as high as 30.8 times the standard**.

The complaint accuses Mercedes of deceiving consumers with false representations of its BlueTEC vehicles, which it marketed as "earth-friendly."

Mercedes sold BlueTEC vehicles with the promise that they were "earth-friendly," and equipped with "environmentally friendly technology," and the vehicles went "beyond statutory requirements."

The lawsuit alleges that the following Mercedes models powered by BlueTEC diesel-fueled engines are affected by the unlawful, unfair, deceptive and otherwise defective emission controls utilized by

Mercedes. Contact Hagens Berman to find out your rights, if you purchased or leased one of the following affected BlueTEC vehicles:

| | | |
|---|---|---|
| • ML 320 | • R320 | • S Class |
| • ML 350 | • E Class | • GLK Class |
| • GL 320 | • GL Class | • GLE Class |
| • E320 | • ML Class | • Sprinter |
| • S350 | • R Class | |

Mercedes owners and lessors can also find more information about the case at Hagens Berman's Mercedes Owners Hub, including an FAQ about the Mercedes emissions lawsuit.

**Cheating Emissions Tests**

"**When put to the test of real world conditions, Mercedes' 'clean' diesel cars fail at nearly every opportunity to live up to the ecofriendly branding Mercedes plastered onto these vehicles**," said Steve Berman, managing partner of Hagens Berman. "**According to our research, all signs point to Mercedes installing a defeat device, similar to what Volkswagen implemented, to cheat emissions tests**. We intend to unveil everything Mercedes knows."

The suit states that **the fact that Mercedes passed the dynamometer test in all testing done by European researchers, but failed the real world test – both in Europe and U.S. test results – is suggestive that like VW, Mercedes is implementing a "defeat device."**

In a letter Berman sent to Mercedes' Dr. Dieter Zetsche, chairman of the board of management of Daimler AG, head of Mercedes-Benz Daimler AG, he stated, "We have uncovered your deception. Now it is

- 25 -

time for you to do right by your customers, the U.S. government, and the American people."

"Every day I hear from another Mercedes customer who feels betrayed by your scam," the letter reads. "Correcting this fraud should be priority-one. To that end, I invite you to sit down with me in the next two weeks to craft a remediation plan. I believe we can work together to create a comprehensive remedy that compensates your customers fairly and allows Mercedes to move forward after this shameful deception."

**A study cited in the complaint conducted by TNO for the Dutch Ministry of Infrastructure and the Environment states that, in real world testing, the Mercedes C-Class 220 emits NOx at levels much higher than in controlled dynamometer tests**, adding that, "**In most circumstances arising in normal situations on the road, the systems scarcely succeed in any effective reduction of NOx emissions**."

"The consumers bringing this lawsuit against Mercedes have tested the vehicles in real world conditions, only to find pollution at high levels in nearly all conditions, including downhill driving and at various speeds and temperatures," Berman added. "Mercedes took advantage of consumers' trust. **It appears as though the aggressive 'greenwashing' marketing tactics Mercedes used for its BlueTEC vehicles were merely a veil to conceal its dirty diesel vehicles from eco-conscious consumers.**"

The suit seeks relief for those who purchased the affected vehicles, including injunctive relief in the form of a recall or free replacement program and restitution including either recovery of the purchase price or overpayment or diminution in value due to Mercedes' misleading statements and omissions regarding the emission levels of its Clean Diesel BlueTEC vehicles.

The suit alleges that Mercedes' actions violated numerous state consumer-rights laws including the New Jersey Consumer Fraud Act, the California Unfair Competition Law, the California Consumer Legal Remedies Act, the California False Advertising Law,

Connecticut's Unfair Trade Practices Act and laws of other states. The suit also states that the automaker's omissions and misrepresentations constitute breach of contract and fraudulent concealment.

 [Emphasis added].

63.    On this news, shares of DDAIF fell $3.76 per share or approximately 5% from its previous closing price to close at $67.86 per share on April 7, 2016, and shares of DDAIY fell $1.10 per share or approximately 2% from its previous closing price to close at $67.58 per share on April 7, 2016, damaging investors.

64.    On April 21, 2016 during aftermarket hours, Daimler issued a press release entitled "Daimler conducts internal investigation regarding its certification process related to exhaust emissions in the United States", announcing that Daimler is investigating "possible indications of irregularities" regarding its certification process of exhaust emissions in the United States at the request of the US Department of Justice, stating in pertinent part:

**Daimler conducts internal investigation regarding its certification process related to exhaust emissions in the United States**

Apr 21, 2016, 18:36 ET from Daimler North America - Corporate Communications

STUTTGART, Germany, April 21, 2016 /PRNewswire/ -- **Daimler AG conducts an internal investigation regarding its certification process related to exhaust emissions in the United States upon the request of the U.S. Department of Justice (DOJ).** Daimler is cooperating fully with the authorities. **Daimler will consequently investigate possible indications of irregularities and of course take all necessary actions.**

The company's experience with the U.S. authorities has clearly shown that a conservative communication supports the constructive dialogue with the authorities. In addition the class actions are considered to be without merit and Daimler will defend itself against them with all available legal means.

[Emphasis added].

65.    On this news, shares of DDAIF fell $3.76 per share or approximately 5% over the next two trading days to close at $67.86 per share on April 7, 2016, and shares of DDAIY fell $1.10 per share or approximately 2% over the next two trading days to close at $67.58 per share on April 7, 2016, damaging investors.

66.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

67.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than Defendants who acquired Daimler securities during the Class Period and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of Daimler, members of the Individual Defendants' and Director Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Officer or Director Defendants have or had a controlling interest.

68.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Daimler securities were actively traded on the OTC. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

69.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

70.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

71.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the financial condition, operations, and business Daimler;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the prices of Daimler's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

72.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

73.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Daimler shares met the requirements for listing, and were listed and actively traded on the OTC, a highly efficient and automated market;

- Daimler regularly communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

- Daimler was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

74.   Based on the foregoing, the market for Daimler securities promptly digested current information regarding Daimler from all publicly available sources and reflected such information in the prices of the shares, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

75.   Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

# COUNT I

## FOR VIOLATIONS OF SECTION 10(B) AND RULE 10B-5 PROMULGATED THEREUNDER (AGAINST ALL DEFENDANTS)

76.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

77.     This Count is asserted against Daimler and the Individual Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

78.     During the Class Period, Daimler and the Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

79.     Daimler and the Individual Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;
- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or
- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of Daimler securities during the Class Period.

80.     Daimler and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name

- 31 -

of Daimler were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of Daimler, their control over, and/or receipt and/or modification of Daimler's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Daimler, participated in the fraudulent scheme alleged herein.

81.     Individual Defendants, who are the senior officers and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Daimler personnel to members of the investing public, including Plaintiff and the Class.

82.     As a result of the foregoing, the market price of Daimler securities was artificially inflated during the Class Period. In ignorance of the falsity of Daimler's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Daimler securities during the Class Period in purchasing Daimler securities at prices that were artificially inflated as a result of Daimler's and the Individual Defendants' false and misleading statements.

83.     Had Plaintiff and the other members of the Class been aware that the market price of Daimler securities had been artificially and falsely inflated by Daimler's and the Individual Defendants' misleading statements and by the material adverse information which Daimler and the Individual Defendants did not

disclose, they would not have purchased Daimler securities at the artificially inflated prices that they did, or at all.

84.     As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

85.     By reason of the foregoing, Daimler and the Individual Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of Daimler securities during the Class Period.

## COUNT II

## VIOLATIONS OF SECTION 20(A) OF THE EXCHANGE ACT
## (AGAINST THE INDIVIDUAL DEFENDANTS)

86.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

87.     During the Class Period, the Individual Defendants participated in the operation and management of Daimler, and conducted and participated, directly and indirectly, in the conduct of Daimler's business affairs. Because of their senior positions, they knew the adverse non-public information about Daimler's misstatement of revenue and profit and false financial statements.

88.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Daimler's financial condition and results of operations, and to correct promptly any public statements issued by Daimler which had become materially false or misleading.

89.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Daimler disseminated in the

marketplace during the Class Period concerning Daimler's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Daimler to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Daimler within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Daimler securities.

90.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Daimler.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: April 29, 2016                    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**


By: /s/ Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-2684
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*