MERYL L. YOUNG, SBN 110156
  myoung@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

PAUL J. COLLINS, SBN 187709
  pcollins@gibsondunn.com
MICHAEL J. KAHN, SBN 303289
  mjkahn@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Facsimile: 650.849.5333

MATTHEW J. KEMNER, SBN 188124
  matthew.kemner@squirepb.com
TROY M. YOSHINO, SBN 197850
  troy.yoshino@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, CA 94111
Telephone: 415.743.2469
Facsimile: 415.393.9887

Attorneys for Defendants DAIMLER AG,
MERCEDES-BENZ USA, LLC, DIETER ZETSCHE,
BODO UEBBER, and THOMAS WEBER

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANCOUVER ALUMNI ASSET HOLDINGS INC., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIMLER AG, MERCEDES-BENZ USA, LLC, DIETER ZETSCHE, BODO UEBBER, and THOMAS WEBER,<br><br>Defendants. | Case No. 16-cv-02942-SJO-KS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM** |
| MARIA MUNRO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIMLER AG, MERCEDES-BENZ USA, LLC, DIETER ZETSCHE, BODO UEBBER, and THOMAS WEBER,<br><br>Defendants. | Case No. 16-cv-03412-SJO-KS<br><br>**Hearing:**<br>Date:     May 15, 2017<br>Time:     10:00 a.m.<br>Place:    Courtroom 10C<br><br>Judge:   Hon. S. James Otero |

Gibson, Dunn &
Crutcher LLP

1

**TABLE OF CONTENTS**

2

<u>Page</u>

3

INTRODUCTION ............................................................................................. 1

4

BACKGROUND .............................................................................................. 3

5

I.      THE COMPLAINT SHOULD BE DISMISSED BECAUSE
        PLAINTIFFS INAPPROPRIATELY SEEK TO APPLY THE
6       EXCHANGE ACT EXTRATERRITORIALLY ................................... 7

7

II.     THE COMPLAINT MUST BE DISMISSED BECAUSE
        PLAINTIFFS FAIL TO PLEAD FACTS GIVING RISE TO CLAIMS
8       UNDER SECTION 10(b) AND RULE 10b-5 ...................................... 9

9       A.      Plaintiffs Have Not Adequately Alleged Facts Showing That
                Statements Regarding BlueTEC Emissions Control Systems
10              Were False When Made ............................................................ 10

11      B.      The Complaint Must Be Dismissed Because Plaintiffs Fail to
                Plead Facts Showing That Any Defendant Acted with Scienter ............. 13

12
                1.      Plaintiffs' Generic Allegations Against Dr. Zetsche, Dr.
13                      Weber, and Mr. Uebber Are Insufficient ......................... 14

14              2.      Plaintiffs Fail to Allege Scienter as to Daimler AG and
                        MBUSA ........................................................................ 17

15      C.      Plaintiffs Fail to Plead Facts Demonstrating Loss Causation ................. 18

16

III.    THE SECTION 20(a) CLAIMS FAIL BECAUSE THERE IS NO
17      PRIMARY VIOLATION .................................................................... 20

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1

# TABLE OF AUTHORITIES

2

Page(s)

3

**Cases**

4

5   *Bell Atl. Corp. v. Twombly*,
        550 U.S. 544 (2007).................................................................................10

6

7   *Cheung v. Keyuan Petrochemicals, Inc.*,
        2012 WL 5834894 (C.D. Cal. Nov. 1, 2012) ..........................................17

8

9   *In re ChinaCast Educ. Corp. Sec. Litig.*,
        809 F.3d 471 (9th Cir. 2015) .............................................................17, 18

10

11   *Ciresi v. Citicorp*,
        782 F. Supp. 819 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1161 (2d Cir. 1992) ...............12

12

13   *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*,
        399 F.3d 651 (6th Cir. 2005) ....................................................................11

14

15   *In re Daou Sys., Inc.*,
        411 F.3d 1006 (9th Cir. 2005) ..................................................................15

16

17   *Dura Pharms., Inc. v. Broudo*,
        540 U.S. 336 (2005)...................................................................................18

18   *In re Ford Motor Co. Sec. Litig.*,
        381 F.3d 563 (6th Cir. 2004) ....................................................................11

19

20   *Glazer Capital Mgmt., LP v. Magistri*,
        549 F.3d 736 (9th Cir. 2008) ....................................................................18

21

22   *In re Immersion Corp. Sec. Litig.*,
        2011 WL 6303389 (N.D. Cal. Dec. 16, 2011) ...................................18, 19

23

24   *Indiana State Dist. Council of Laborers and Hod Carriers Pension and
        Welfare Fund v. Omnicare, Inc.*,
        583 F.3d 935 (6th Cir. 2009) ....................................................................16

25

26   *In re Int'l Rectifier Corp. Sec. Litig.*,
        2008 WL 4555794 (C.D. Cal. May 23, 2008)...........................................17

27

28   *Lloyd v. CVB Fin. Corp.*,
        811 F.3d 1200 (9th Cir. 2016) ..................................................................11

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Loos v. Immersion Corp.*,
762 F.3d 880 (9th Cir. 2014) ............................................................ 18, 19

*Metzler GmbH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ......................................... 4, 10, 12 14, 15 16

*Meyer v. Greene*,
710 F.3d 1189 (11th Cir. 2013) ............................................................ 19

*Morrison v. Nat'l Australia Bank*,
130 S. Ct. 2869 (2010).................................................................. 2, 7, 8, 9

*Nordstrom, Inc. v. Chubb & Son, Inc.*,
54 F.3d 1424 (9th Cir. 1995) ................................................................ 18

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004) .............................................................. 15

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) .............................................................. 14

*In re OmniVision Techs. Inc. Sec. Litig.*,
937 F. Supp. 2d 1090 (N.D. Cal. 2013)................................................ 15

*Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*,
774 F.3d 598 (9th Cir. 2014) ................................................................ 19

*Paddock v. DreamWorks*,
CV-14-06053 (C.D. Cal Apr. 1, 2015) ................................................. 16

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*,
763 F.3d 198 (2d Cir. 2014) ............................................................... 8, 9

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008) ................................................................ 16

*Safeco Ins. Co. of Am. v. Burr*,
551 U.S. 47 (2007)................................................................................ 17

*Shaw v. Digital Equip. Corp.*,
82 F.3d 1194 (1st Cir. 1996)................................................................. 11

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re Silicon Graphics, Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ........................................................................ 14

*In re Société Générale Sec. Litigation*,
    2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010) .......................................... 8

*Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*,
    552 U.S. 148 (2008) ..................................................................................... 10

*Stoyas v. Toshiba Corp.*,
    2016 WL 3563084 (C.D. Cal. May 20, 2016) ............................................. 8

*In re Teledyne Def. Contracting Deriv. Litig.*,
    849 F. Supp. 1369 (C.D. Cal. 1993) ...................................................... 12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .............................................................. 4, 9, 10, 14

*U.S. v. Georgiou*,
    777 F.3d 125 (3d Cir. 2015) ....................................................................... 8

*In re Vantive Corp. Sec. Litig.*,
    283 F.3d 1079 (9th Cir. 2002) ................................................................ 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab.
Litig.*, MDL No. 2672, Dkt. No. 2636 (N.D. Cal. Jan. 4, 2017) ................ 9

*Zucco Partners, LLC v. Digimarc*,
    552 F.3d 981 (9th Cir. 2009) ...................................................... 14, 16, 20

**Statutes**

15 U.S.C. § 78u-4(b)(1) ...................................................................................... 10

15 U.S.C. § 78u-4(b)(2)(A) ................................................................................. 4

42 U.S.C. § 7507 ................................................................................................. 5

42 U.S.C. § 7522(a)(1) ........................................................................................ 5

42 U.S.C. § 7543 ................................................................................................. 5

Gibson, Dunn &
Crutcher LLP

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES
(continued)

<u>Page(s)</u>

**Rules**

Fed. R. Civ. P. 9(b) ........................................................................... 1, 9, 18

Fed. R. Civ. P. 12(b)(6) ......................................................................... 1, 4

SEC Rule 10b-5, 17 C.F.R. § 240.10b-5 ...................................... 1, 8, 19, 20

**Regulations**

40 C.F.R. § 86.000-8 ................................................................................. 6

40 C.F.R. § 86.096-8 ................................................................................. 6

40 C.F.R. § 86.127-12 ............................................................................... 5

40 C.F.R. § 86.158-08 ............................................................................... 5

40 C.F.R. § 86.159-08 ............................................................................... 5

40 C.F.R. § 86.160-00 ............................................................................... 5

40 C.F.R. § 86.161.00 ............................................................................... 5

40 C.F.R. § 86.1803-01 ........................................................................... 11

40 C.F.R. § 86.1805-12 ............................................................................. 6

40 C.F.R. § 86.1809-10(b) ........................................................................ 6

40 C.F.R. § 86.1811-04 .......................................................................... 5, 6

40 C.F.R. § 86.1811-04(c) ........................................................................ 5

40 C.F.R. § 86.1811-04(m) ....................................................................... 5

40 C.F.R. § 86.1841-01 ............................................................................. 5

Cal. Code Regs. tit. 13, § 1960.1(r) ......................................................... 5

Cal. Code Regs. tit. 13, § 1961 ................................................................ 5

Cal. Code Regs. tit. 13, § 1961(a)(7) ....................................................... 5

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1  Defendants respectfully submit this memorandum in support of their motion to
2  dismiss plaintiffs' Consolidated Class Action Complaint (the "Complaint" or
3  "Compl.") pursuant to the Private Securities Litigation Reform Act of 1995 (the
4  "PSLRA") and Federal Rules of Civil Procedure 9(b) and 12(b)(6).[1]

5  **INTRODUCTION**

6  Daimler AG, which manufactures Mercedes-Benz vehicles and other brands, has
7  invested substantial resources to develop environmentally friendly cars. These
8  investments have led to, among other things, significant advancements in diesel
9  technology, and today Daimler AG and MBUSA, respectively, manufacture and
10  distribute a wide array of diesel-powered "BlueTEC" vehicles, from family sedans to
11  Sprinter vans, that reflect their commitment to environmental sustainability. Diesel
12  emissions have recently been scrutinized because of Volkswagen's admission that it
13  employed illegal "defeat devices" in its diesel vehicles to pass emissions tests. As a
14  result, regulators in Europe and the U.S. currently are reviewing compliance of diesel
15  vehicles industry-wide, including Mercedes-Benz vehicles. Daimler AG and MBUSA
16  are cooperating fully with those ongoing inquiries. To date, regulators have *not*
17  determined that any manufacturer other than Volkswagen violated emissions standards
18  by using an illegal "defeat device."

19  Yet plaintiffs in this case improperly equate Mercedes-Benz and Volkswagen, and
20  piggyback securities fraud claims against Daimler AG, MBUSA, and three members of
21  Daimler AG's Board of Management. Plaintiffs allege these defendants violated
22  Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, and SEC Rule 10b-5
23  (17 C.F.R. § 240.10b-5), by falsely claiming that BlueTEC diesel vehicles "fulfill the
24  strictest emissions standards" and do not utilize "defeat devices." There are four
25  fundamental flaws to plaintiffs' Complaint, each of which require dismissal.

---

[1]  Daimler AG, Dr. Dieter Zetsche, Dr. Thomas Weber, and Mr. Bodo Uebber also have filed a motion to dismiss for lack of personal jurisdiction. Although that motion should be granted, in the interests of efficiency the non-U.S. defendants join in these arguments as well.

*First*, the Supreme Court made clear in *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010), that the Exchange Act does not apply extraterritorially. Daimler AG is a German stock company, its principal place of business is in Stuttgart, Germany, and its stock is registered only on non-U.S. stock exchanges. Plaintiffs nevertheless allege that domestic transactions in American Depositary Receipts ("ADRs")—derivative securities issued by Deutsche Bank Trust Company, not Daimler AG, and not traded on any U.S. securities exchange—subject Daimler AG to regulation under the Exchange Act. However, courts have held that, under *Morrison*, ADRs are "predominantly foreign" securities that cannot serve as the basis for suits under federal securities laws.

*Second*, even if, contrary to *Morrison*, the antifraud provisions of the Exchange Act could be applied extraterritorially to statements emanating from Germany and relating to securities traded on non-U.S. exchanges, plaintiffs' claims are subject to dismissal because plaintiffs have not pleaded the basic elements of any securities fraud claim with the particularity required by the PSLRA. The gravamen of the Complaint is that defendants falsely denied that BlueTEC vehicles "used a 'defeat device'—a technological manipulation designed specifically to meet regulatory emissions requirements in a testing environment—even though they knew that BlueTEC vehicles' emissions control systems had been engineered to be fully operational only in ambient temperatures above 50°F (10°C), *i.e.*, in an ideal testing environment divorced from the realities of on-road, normal use driving conditions." Compl. ¶ 4 (emphases removed).

*Unlike* Volkswagen, however, regulators in the U.S. and Europe have not concluded that this functionality of BlueTEC vehicles fails to comply with applicable regulations. On the contrary, one of the documents plaintiffs rely upon—a regulatory report issued by the German Federal Motor Transport Authority ("KBA")—states that "[a]t the time of publication of this report, a prohibited defeat device, as used in particular VW vehicles, *could not be detected in other vehicles*." Indeed, plaintiffs plead no basis for their conclusion that Daimler AG is not entitled to rely on the express exception in applicable regulations in both the U.S. and Europe permitting deactivation

of the emissions control system when necessary to protect its cars' engines.  By filing this action, plaintiffs seek to shortcut the ongoing regulatory review and force this Court to decide highly complex technical issues that are within the regulators' purview and expertise.  Allowing plaintiffs to proceed on their claims—which are inextricably intertwined with complex regulatory issues—would needlessly frustrate and complicate the regulators' efforts to administer diesel emissions standards.

*Third*, under the PSLRA, plaintiffs must plead facts giving rise to a "strong inference" that each defendant acted with scienter, *i.e.*, made a false or misleading statement "either intentionally or with deliberate recklessness."  *Zucco Partners, LLC v. Digimarc*, 552 F.3d 981, 991 (9th Cir. 2009).  But instead of meeting this requirement, plaintiffs claim that the individual defendants held senior positions at Daimler AG, so they allegedly *must have known* that BlueTEC emissions control systems disengaged at lower ambient temperatures *and* that such function was impermissible under applicable regulations.  The Ninth Circuit has repeatedly held that such conclusory "must have known" allegations do not meet the PSLRA's heightened pleading standard.

*Finally*, plaintiffs fail to plead facts sufficient to show the required "causal connection" between their alleged investment losses and the allegedly misleading statements at issue here.  Contrary to plaintiffs' loss causation theory, it is not sufficient to correlate negative stock price movements with "expressions of concern" about, or "investigation" of, allegedly fraudulent conduct.  The Ninth Circuit has held that such announcements may portend "potential future disclosure" of material facts, but market reaction to speculation and rumor "cannot form the basis of a viable loss causation theory."  *Loos v. Immersion Corp.*, 762 F.3d 880, 890 (9th Cir. 2014).  Because plaintiffs rely on market speculation as the basis for their alleged trading losses resulting from third-party emissions tests and an ongoing internal investigation, plaintiffs cannot demonstrate the loss causation element of their Section 10(b) claim.

## BACKGROUND

Daimler AG is a German automotive company, incorporated in Germany and

1   headquartered in Stuttgart, Germany.  Compl. ¶ 20.[2]  Daimler AG's shares are traded

2   only on non-U.S. exchanges, and Daimler AG is subject to German securities

3   regulations.  Collins Decl. Ex. A (2015 Daimler AG Annual Report) at 64.  MBUSA is

4   a Daimler subsidiary, incorporated in Delaware.  Compl. ¶ 21.  Defendants Dr. Dieter

5   Zetsche, Bodo Uebber, and Dr. Thomas Weber all reside in Germany and are members

6   of Daimler AG's Board of Management.  *Id.* ¶¶ 22, 24, 26.

7         Plaintiffs are holders of unlisted ADRs purchased between February 22, 2012 and

8   April 21, 2016 (the "Class Period").  *Id.* ¶¶ 1, 19.  These ADRs trade only over-the-

9   counter ("OTC") in the U.S. and are not registered to trade on any U.S. securities

10  exchange.  *Id.* ¶ 1.  An ADR is a derivative security that reflects shares of a company

11  listed on a foreign exchange and owned by a depositary bank.  *Id.*; Collins Decl. Ex. B

12  (SEC ADR Bulletin).  The ADRs here are issued by Deutsche Bank Trust Company

13  Americas pursuant to a sponsored Level 1 ADR program.  Compl. ¶ 1.  Under U.S. law,

14  Level 1 ADRs may only be traded on the OTC market, may not be used to raise capital,

15  and do not require the foreign issuer to provide information about itself on the SEC's

16  EDGAR system.  *See* Collins Decl. Ex. B (SEC ADR Bulletin).[3]  Daimler AG is not

17  required to, and does not, file annual, quarterly, or other reports with the SEC.

18        The environmental impacts of the automotive industry generally—and diesel

19

20  [2] This memorandum discusses plaintiffs' allegations, which are assumed to be true
    solely for purposes of this motion, documents referenced in the Complaint, and other

21  judicially noticeable documents.  These documents are properly considered in ruling
    on a Rule 12(b)(6) motion to dismiss.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues &*

22  *Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Copies of documents referenced in this
    memorandum are attached as exhibits to the accompanying Declaration of Paul J.

23  Collins ("Collins Decl.").  "[W]hile the court assumes that the facts in a complaint are
    true, it is not required to indulge unwarranted inferences."  *Metzler GmbH v.*

24  *Corinthian Colleges, Inc.*, 540 F.3d 1049, 1065-66 (9th Cir. 2008).

25  [3] SEC regulations provide three different "levels" of ADRs, corresponding to varying
    degrees of access to U.S. securities markets.  Level 3 ADRs may be listed on a

26  national exchange and may be used to raise capital for the foreign issuer.  *See* Collins
    Decl. Ex. B (SEC ADR Bulletin).  Level 2 ADRs may be listed on a national

27  exchange, but may not be used to raise capital for the foreign issuer.  *Id.*  Level 2 and
    3 ADRs require the foreign issuer to file registration statements with the SEC

28  containing "extensive financial and non-financial information" as well as annual
    reports on an ongoing basis.  *Id.*  Level 1 ADRs are discussed above.  *See id.*

1   emissions specifically—are tightly regulated in both Europe and the United States.

2   Under European Union regulations, auto manufacturers must obtain authorization—a

3   "Type Approval Certificate"—from the national regulatory authority of a member

4   state, such as the KBA in Germany, prior to sale.  Compl. ¶ 54.  In the U.S., the EPA is

5   charged with regulating mobile and stationary sources of air pollution under the Clean

6   Air Act ("CAA").  Before any vehicle is sold in the U.S., it must have a "Certificate of

7   Conformity" ("COC"), which the manufacturer receives after certifying to the EPA

8   that the vehicle complies with emissions standards.  *Id*. ¶ 53; 42 U.S.C. § 7522(a)(1).[4]

9          Plaintiffs' claims rely upon complex emissions testing standards and regulations

10  within the purview of these agencies.  Compliance in the U.S., for example, is

11  determined based on laboratory testing following two protocols, the Federal Test

12  Procedure ("FTP") and the Supplemental Federal Test Procedure ("SFTP"), that

13  evaluate emissions on a dynamometer—a stationary platform that allows wheel rotation,

14  comparable to a treadmill.  Compl. ¶ 55; 40 C.F.R. §§ 86.1811-04, 86.1841-01, 86.127-

15  12, 86.158-08, Cal. Code Regs. tit. 13, §§ 1960.1(r), 1961(a)(7).[5]  The FTP and SFTP

16  consist of test series conducted under specified conditions:  urban driving (FTP-75),

17  high-speed or aggressive driving (US06), urban driving with air conditioning (SC03),

18  and, for gasoline vehicles, cold weather urban driving (Cold FTP).  *See* 40 C.F.R.

19  §§ 86.127-12, 86.158-08, 86.159-08, 86.160-00, 86.161.00.  EPA standards under these

20  testing protocols regulate emissions of nitrogen oxides ("NOx"), non-methane organic

21  gas, non-methane hydrocarbons, carbon monoxide, formaldehyde, and particulate

22  matter.  *Id.* § 86.1811-04(c), (m).  For vehicles made after 2012, EPA standards also

23

24  [4] The CAA preempts states from setting their own vehicle emissions standards, with the exception that EPA can waive preemption for California and other states that wish to

25  "opt-in" to California's standards.  42 U.S.C. §§ 7507, 7543.  Manufacturers must meet California Air Resources Board ("CARB") standards to sell vehicles in

26  California, and in thirteen other jurisdictions that opted into CARB (rather than EPA) standards.  Cal Code Regs. tit. 13, §§ 1960.1(r), 1961.

27  [5] E.U. regulations use the New European Driving Cycle ("NEDC") instead of EPA's FTP and SFTP.  Compl. ¶ 55.

28

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1    regulate carbon dioxide, nitrous oxide, methane, hydrofluorocarbons, perfluorocarbons,

2    and sulfur hexafluoride.  *Id.*  Under the FTP and SFTP, manufacturers must ensure their

3    vehicles comply with EPA standards set for each of these regulated emissions at various

4    mileage intervals, over the useful life of the vehicles.  *Id.* § 86.1805-12.

5        In addition, for purposes of investigating potential defeat devices, EPA may test

6    vehicles "using driving cycles and conditions which may reasonably be expected to be

7    encountered in normal operation and use." 40 C.F.R. § 86.1809-10(b).  In Europe,

8    contrary to plaintiffs' claims of "on-road" emissions in excess of "standards" (Compl.

9    ¶¶ 46, 72-74, 76, 78, 82), the E.U. has focused on emissions certifications ("Euro 5/6");

10   testing requirements for "real driving emissions" are being phased-in between 2017 and

11   2021 to control vehicle emissions in real operation, outside of laboratory tests.

12       European regulators, EPA, and CARB have modified the regulations that govern

13   diesel emissions over time.  *Id.* ¶¶ 39-44; *see, e.g.*, 40 C.F.R. §§ 86.1811-04, 86.096-8,

14   86.000-8.  To meet these complex regulations, Mercedes-Benz developed BlueTEC

15   technology, which reduces diesel emissions using a two-part process.  Compl. ¶ 59.

16   First, BlueTEC vehicles inject a diesel exhaust fluid into recirculated exhaust in the

17   catalyst chamber, converting NOx into nitrogen gas, water, and carbon dioxide.  *Id.*

18   ¶ 65.  Second, BlueTEC vehicles use a "Selective Catalytic Reduction system," whereby

19   the by-products of combustion, after leaving the engine, are cooled and returned through

20   the combustion chamber using exhaust gas recirculation.  *Id.*  As plaintiffs concede,

21   "[t]he BlueTEC approach, when it is operating, results in cleaner emissions," and

22   Mercedes-Benz vehicles pass all regulatory certification testing.  *Id.* ¶¶ 59-60.

23       In 2015, allegations emerged that Volkswagen diesel cars used "defeat device"

24   software that detected when emissions testing was occurring and activated emissions

25   controls only during testing.  *Id.* ¶ 79.  EPA investigated VW and found that "the engine

26   controls in certain diesel vehicles" made by VW "had been deliberately manipulated in

27   order to circumvent U.S. environmental standards."  Collins Decl. Ex. C, at 4.  In light

28   of that finding, the KBA conducted a separate inquiry into VW's diesel emissions, as

well as emissions from other cars, including certain diesel engines manufactured by Daimler AG. *Id.* The KBA then issued a detailed report and concluded, among other things, that "a prohibited defeat device, as used in particular VW vehicles, could not be detected in other vehicles," including the Mercedes V 250 BlueTEC. *Id.* at 94, 119.[6]

Plaintiffs nonetheless claim BlueTEC vehicles use a "defeat device" because some non-U.S. "BlueTEC systems deactivated at temperatures below 50°F." Compl. ¶ 84. In effect, based on claims that operation of the BlueTEC system is dependent on changes in ambient temperature, which plaintiffs conflate with "normal use" (*id.* ¶¶ 76, 78), plaintiffs claim that Daimler AG must be utilizing a "defeat device." *Id.* ¶¶ 72-78.

Plaintiffs therefore claim defendants made the following false or misleading statements regarding BlueTEC emissions during the putative Class Period:

(1) BlueTEC vehicles comply with "the strictest emission standards" (*id.* ¶¶ 101, 105, 112, 116, 137 (relying on Daimler AG's 2011-15 Annual Reports));

(2) BlueTEC vehicles "are the cleanest diesel cars in the world" (*id.* ¶¶ 101, 105, 112, 116 (relying on Daimler AG's 2011-14 Annual Reports));

(3) BlueTEC vehicles "optimiz[ed diesel engines] to achieve significantly lower ... emissions" (*id.* ¶¶ 101, 105 112, 116, 137 (relying on Daimler AG's 2011-15 Annual Reports));

(4) denials that BlueTEC vehicles use any defeat device, including by Daimler AG (*id.* ¶¶ 120, 121, 127, 130, 139), Mr. Uebber (*id.* ¶ 125), and Dr. Zetsche (*id.* ¶ 134); and

(5) a 2013 press release by MBUSA that "the E250 BlueTEC meets exhaust emission regulations in all 50 U.S. states" by using "AdBlue injection to make the diesel as clean as a state-of-the-art gasoline engine" (*id.* ¶ 108).

## ARGUMENT

I. **THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS INAPPROPRIATELY SEEK TO APPLY THE EXCHANGE ACT EXTRATERRITORIALLY**

In *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010), the Supreme

---

[6] The KBA also noted that many vehicles permit increased emissions in certain "temperature windows." Collins Decl. Ex. D (KBA Press Release). The KBA recognized this is "legally permissible if the device is necessary to protect the engine against damage or accident," but also suggested all manufacturers limit such measures. *Id.* As a result, Daimler AG, along with a number of others, agreed voluntarily to implement modifications to reduce the "temperature window." *Id.*

Court held that *only* (1) "the purchase or sale of a security listed on an American stock exchange," and (2) "the purchase or sale of any other security in the United States" are regulated by Section 10(b) and Rule 10b-5, because of the "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Id.* at 2888. The reach of Section 10(b) is, thus, solely domestic. Here, plaintiffs seek to apply Section 10(b) to statements made by or on behalf of a German company subject to regulation by German securities regulators and ongoing disclosure obligations under German law, whose shares are listed and traded exclusively on non-U.S. exchanges. Plaintiffs allege this is proper because Daimler AG ADRs—derivative securities of Daimler shares—trade OTC in the United States. Plaintiffs' theory is incorrect, and plaintiffs cannot meet either prong of *Morrison*.

Because the Exchange Act distinguishes between "securities exchanges" and "over-the-counter markets," and because the OTC markets are not registered with the SEC as a national exchange, courts have held that the OTC markets are "not national securities exchanges within the scope of *Morrison*." *U.S. v. Georgiou*, 777 F.3d 125, 135 (3d Cir. 2015); *accord Stoyas v. Toshiba Corp.*, 2016 WL 3563084, at *7 (C.D. Cal. May 20, 2016) (holding that OTC market was not an exchange under *Morrison*).

Nor are trades in Daimler ADRs "domestic transactions" covered by *Morrison*'s second prong because they are predominantly foreign in nature. *In re Société Générale Securities Litigation*, 2010 WL 3910286, at *6 (S.D.N.Y. Sept. 29, 2010), for example, held that *Morrison* precludes claims brought by investors in ADRs because "[t]rade in ADRs is considered to be a 'predominantly foreign securities transaction.'" (Internal citation and quotation marks omitted.) This is so even though ADRs are traded in the U.S. because, although a domestic transaction is *necessary* for a claim under Section 10(b), "such a transaction is not alone *sufficient* to state a properly domestic claim under the statute." *Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 215 (2d Cir. 2014) (emphasis added); *Stoyas*, 2016 WL 3563084, at *8 (rejecting

1    argument that transactions are domestic under *Morrison* simply because "the purchases

2    and sales all took place in the United States where the OTC market is located").

3         *Parkcentral* shows why a U.S.-based transaction is insufficient to apply the

4    securities laws to a foreign issuer like Daimler AG.  In *Parkcentral*, plaintiffs entered

5    into swap agreements in the U.S. that referenced securities of Volkswagen.  763 F.3d

6    at 201.  Plaintiffs sued Porsche claiming it made false statements regarding its intent to

7    takeover Volkswagen.  *Id.*  Although the court recognized plaintiffs' swap agreements

8    were U.S.-based, it held that plaintiffs were not allowed "by virtue of an agreement

9    independent from the reference securities, to hale the European participants in the

10   market for German stocks into U.S. courts and subject them to U.S. securities laws."

11   *Id.* at 216.  As in *Parkcentral*, to hold otherwise with respect to Daimler AG's ADRs

12   would allow a defendant's alleged Section 10(b)-relevant "conduct that occurred in a

13   foreign country, concerning securities in a foreign company, traded entirely on foreign

14   exchanges" to be subject to the U.S. securities laws—"a result *Morrison* plainly did

15   not contemplate and that the Court's reasoning does not . . . permit."  *Id.*[7]

16   **II.    THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS**
        **FAIL TO PLEAD FACTS GIVING RISE TO CLAIMS UNDER SECTION**
17      **10(b) AND RULE 10b-5**

18        To state a claim under Section 10(b) and Rule 10b-5, plaintiffs must satisfy both

19   Federal Rule of Civil Procedure 9(b)'s requirement to plead fraud "with particularity"

20   and the PSLRA's even more "exacting pleading requirements."  *Tellabs, Inc. v. Makor*

21   *Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007).[8]  Although the Court must accept as

---

[7] In *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., and Prods. Liab. Litig.*,
MDL No. 2672, Dkt. No. 2636, slip op. at 10 (N.D. Cal. Jan. 4, 2017) (Collins Decl.
Ex. E), the court held that VW's Level 1 ADRs satisfied the "domestic transaction"
prong of *Morrison*.  But *Volkswagen* failed to adequately differentiate between Level
1 ADRs, which are not used to raise capital and do not subject issuers to U.S.
disclosure regulations like Level 2 and 3 ADRs.  Sponsorship of a Level 1 ADR
program, without further involvement of the issuer, should not subject an issuer to
U.S. litigation on disclosures ***not*** required by the SEC; otherwise, there is no purpose
to the SEC's distinction between Level 1, 2 and 3 ADRs.

[8] Claims under Section 10(b) and SEC Rule 10b-5 require:  (1) a material
misrepresentation or omission; (2) made with scienter; (3) in connection with the
purchase or sale of a security; (4) on which Plaintiff relied; (5) economic loss; and

*(Cont'd on next page)*

Gibson, Dunn &
Crutcher LLP

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

true the well pleaded allegations of the Complaint and draw reasonable inferences in plaintiffs' favor, the factual allegations in the Complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In short, "[t]he PSLRA requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter." *Tellabs*, 551 U.S. at 314.

### A. Plaintiffs Have Not Adequately Alleged Facts Showing That Statements Regarding BlueTEC Emissions Control Systems Were False When Made

To plead falsity, plaintiffs must "specify each statement alleged to have been misleading," and "the reason or reasons why the statement is misleading." Moreover, "if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "A litany of alleged false statements, unaccompanied by the pleading of specific facts indicating why those statements were false, does not meet this standard." *Metzler GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). This requirement "prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Id.* at 1061 (emphasis in original).

As a threshold matter, many of the statements plaintiffs challenge are inactionable puffery. Plaintiffs, for example, repeat essentially the same statement made in each of Daimler AG's annual reports that its BlueTEC engines are "state of the art" and are "the cleanest diesel cars in the world," and Daimler AG is "optimizing [its diesel engines] to achieve significantly lower . . . emissions." Compl. ¶ 112 (from the 2013 annual report);

---

*(Cont'd from previous page)*

(6) "loss causation," *i.e.*, a causal connection between the material misrepresentation and loss. *Stoneridge Inv. Partners, LLC v. Sci.-Atlanta*, 552 U.S. 148, 157 (2008).

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Gibson, Dunn & Crutcher LLP

*see also id.* ¶¶ 101, 105, 116.  Indeed, the only alleged false or misleading statement purportedly made by MBUSA is the statement that "the BlueTEC system uses Adblue injection to make the diesel as clean as a state-of-the-art gasoline engine." *Id*. ¶ 108.

The Ninth Circuit has repeatedly held that optimistic "boasts" by a corporation and its officers may not serve as the basis for a securities fraud claim.  *See, e.g.*, *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206-07 (9th Cir. 2016) (holding statement that defendant company's "credit metrics [are] superior" to those of its peers is inactionable puffery).  Examples of statements held to be inactionable puffery from the auto sector include:  Bridgestone has "the best tires in the world" (*City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 670 (6th Cir. 2005)); Bridgestone's "[r]igorous testing under diverse conditions at our proving grounds around the world helps ensure reliable quality for original equipment customers" (*id.*); and Ford is "designing safety into . . . [its] cars and trucks" (*In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004)).  Daimler AG's statements that its engines are the "cleanest" and that it is "optimizing" its engines to be better are the type of "rosy affirmation commonly heard from corporate managers and numbingly familiar to the marketplace" that courts routinely find cannot support a securities fraud claim.  *See id.* (quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1217 (1st Cir. 1996)).

Plaintiffs insist that the foregoing statements, and the statements about Daimler AG's compliance with emission standards (Compl. ¶¶ 101, 105, 112, 116, 137) and alleged use of "defeat devices" (*id.* ¶¶ 120, 121,125, 127, 130, 134, 139), are false because BlueTEC emissions control systems purportedly deactivate at colder temperatures, although plaintiffs admit Daimler AG stated that the way the systems functioned "was necessary to protect the engine from damage caused by operating in excessively cold temperatures." *Id.* ¶¶ 84-85.  And plaintiffs concede that under U.S. regulations, a device that "reduces the effectiveness of the emission control system" is allowed to "protect[] the vehicle against damage." *Id.* ¶ 74 (quoting 40 C.F.R. § 86.1803-01).  Similarly, under E.U. regulations, such functionality is legal when "the

Gibson, Dunn & Crutcher LLP

1  need for the device is justified in terms of protecting the engine against damage or
2  accident and for safe operations of the vehicle." *Id.* ¶ 77.

3      To allege that this functionality was illegal—and thus that Daimler AG's
4  statements that it was in compliance with emission standards were false—plaintiffs
5  must allege facts showing ***why*** the various systems fall outside of the exception
6  permitting deactivation of such systems when necessary to protect its cars' engines.  In
7  their attempt to do so, plaintiffs rely on the April 2016 KBA report (Collins Decl.
8  Ex. C), which plaintiffs mischaracterize as stating that "at least two different
9  Mercedes-Benz models used defeat devices, and that the authority believed that those
10  defeat devices were not justified by the Company's previous excuses that those defeat
11  devices were necessary to protect the vehicles engines." *Id.* ¶ 13.

12      Contrary to plaintiffs' characterization, the KBA report clearly states that "a
13  prohibited defeat device, as used in particular VW vehicles, could not be detected in
14  other vehicles" tested, including the Mercedes-Benz vehicles.  Collins Decl. Ex. C, at
15  119, 128.  Although the KBA concluded that "all manufacturers" used devices that
16  increased emissions at certain times, it also found that "[t]he manufacturers justify the
17  admissibility of the increase in emissions through the shutdown systems mainly based
18  on the exception provided for in article 5, paragraph 2 of the provision (EC) no.
19  715/2007 on measures to protect the motor or for safe operation of the vehicle." *Id.*
20  Contrary to plaintiffs' claims, KBA made no conclusion about whether these devices
21  violated E.U. regulations, specifically noting that *further inquiry would be needed to*
22  *make such a determination.  Id.*  That inquiry is ongoing and plaintiffs' attempt to
23  assume its conclusion does not constitute the "pleading of specific facts indicating why
24  those statements were false." *Metzler*, 540 F.3d at 1070.  There is simply no duty under
25  U.S. securities laws "to disclose uncharged, unadjudicated wrongdoing." *In re Teledyne*
26  *Def. Contracting Deriv. Litig.*, 849 F. Supp. 1369 (C.D. Cal. 1993) (quoting *Ciresi v.*
27  *Citicorp,* 782 F. Supp. 819, 823 (S.D.N.Y. 1991), *aff'd*, 956 F.2d 1161 (2d Cir. 1992)).
28      Plaintiffs next claim that the voluntary service measure—which plaintiffs

1    mischaracterize as a "recall"—of certain diesel models in Germany following

2    publication of the KBA report "to 'tweak' those vehicles' emissions control software to

3    address reported excess emissions" (Compl. ¶ 89) constitutes an *admission* by Daimler

4    AG that disengagement at lower ambient temperatures was unnecessary.  But plaintiffs

5    plead nothing at all as to the scope of work performed, let alone how the alleged

6    modification to the emission control software impacted engagement of the BlueTEC

7    system at lower ambient temperatures.

8         Finally, falsity is not established by the KBA's alleged "doubts as to the

9    lawfulness of the defeat device" in the Mercedes V 250 BlueTEC 2.1L.  *Id.* ¶ 152.

10   Alleged "doubts" are a far cry from a *grounded belief* that the temperature calibration in

11   this non-U.S. vehicle constituted an illegal defeat device.  Indeed, contrary to plaintiffs'

12   claim, the KBA states that the engine protection exception to the defeat device

13   prohibition—*i.e.*, the exception Daimler AG is alleged to have used here—is broadly

14   worded and open to many reasonable interpretations.  *See* Collins Decl. Ex. C, at 122-

15   23.  That is, the KBA concluded that "wide interpretations may not be contrary to" EU

16   law, and "the use of defeat devices ultimately could always be justified" as necessary to

17   protect a car's engine due to the breadth of the exception.  *See id.* at 123.  "The

18   regulations existing so far concerning defeat devices cause legal uncertainty among

19   manufacturers and give . . . authorities no sufficient basis to be able to differentiate

20   admissible from inadmissible defeat devices, and to take legal action against

21   inadmissible defeat devices."  *Id.* at 125.  As such, plaintiffs have not alleged falsity with

22   the particularity required by the PSLRA.[9]

**B.    The Complaint Must Be Dismissed Because Plaintiffs Fail to Plead Facts Showing That Any Defendant Acted with Scienter**

25        To plead scienter, the PSLRA requires that plaintiffs plead "with particularity

---

[9] Plaintiffs also rely on reports from NGOs that certain vehicles allegedly emitted at higher than permissible amounts "on-road."  Compl. ¶¶ 92-99.  But, as discussed, those results are entirely consistent with *legal* mechanisms for protecting vehicles and their engines, as well as other laws.

facts giving rise to a strong inference that the defendant acted with the required state of mind" regarding "each act or omission alleged." 15 U.S.C. § 78u-4(b)(2)(A).  In this Circuit, plaintiffs must plead that "the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc*, 552 F.3d 981, 991 (9th Cir. 2009) (citation and internal quotation marks omitted).  "Recklessness only satisfies scienter under § 10(b) to the extent that it reflects some degree of intentional or conscious misconduct." *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014) (citation and internal quotation marks omitted).

Adequately alleging scienter is a "formidable" challenge, *Metzler GmbH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1055 (9th Cir. 2008), as a "strong inference" is not "a mere speculative inference . . . or even a reasonable inference." *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999).  Instead, there is a strong inference of scienter "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007).  It is not enough "to allege facts from which an inference of scienter rationally could be drawn." *Id.* at 323.  "In reviewing a complaint under this standard, 'the court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs.'" *Metzler*, 540 F.3d at 1061 (emphasis in original, citing *Tellabs*, 551 U.S. at 324-25).  Plaintiffs fail to meet this exacting standard.

### 1.    Plaintiffs' Generic Allegations Against Dr. Zetsche, Dr. Weber, and Mr. Uebber Are Insufficient

Plaintiffs fail to allege facts showing scienter as to the individual defendants, primarily arguing that the requisite degree of each individual's knowledge can be *assumed* due to the individuals' senior positions at Daimler AG.  For example, plaintiffs generically allege scienter "through Daimler's internal corporate documents, and connections with each other and with corporate officers and employees, attendance at Board of Management meetings, including committees thereof, and through reports and

other information provided to them in connection with their roles and duties as Daimler officers, members of the Board of Management, and as managers." Compl. ¶ 172.

Allegations of a "hands-on management style," "interaction with other corporate officers and employees," "attendance at management and board meetings," and "reports generated on a weekly or monthly basis" are not sufficient to allege scienter. *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 (9th Cir. 2002). Plaintiffs' claims that each of the individuals must have known of the purported fraud because each "directly participated in the management of the Company" (Compl. ¶ 29(a)), were "directly involved in the day-to-day operations of the Company at the highest levels" (*id.* ¶ 29(b)), or were "privy to" unspecified "confidential proprietary information" (*id.* ¶ 29(c)) are no different than those rejected by the Ninth Circuit in *Vantive* and are not sufficient to establish the requisite strong inference that any of the individuals was aware of every detail relating to the workings of various BlueTEC emissions control systems at various ambient temperatures, let alone the specific lines of software code that plaintiffs allege drives emissions control functions in testing versus "on-road" conditions. Were it otherwise, every executive would be charged with knowledge of every fact at every company, eviscerating the PSLRA's heightened pleading requirements, and converting the "core operations" theory into a catch-all inference of scienter for virtually any case. Numerous courts have rejected similar pleading artifices.[10]

Some courts have held that "falsity may itself be indicative of scienter" when particularized allegations as to falsity are "combined with 'allegations regarding a

---

[10] *See, e.g.*, *Vantive*, 283 F.3d at 1087; *Metzler*, 540 F.3d at 1058 (allegations that defendant had a "hands on" way of managing and tracking student data were not sufficient to allege defendant's knowledge of massive enrollment fraud); *In re Immersion Corp. Sec. Litig.*, 2011 WL 6303389, at *6 (N.D. Cal. Dec. 16, 2011) (scienter not pleaded despite CEO comment that the leadership team "is very, very hands-on"); *In re OmniVision Techs. Inc. Sec. Litig.*, 937 F. Supp. 2d 1090, 1111 (N.D. Cal. 2013) (rejecting scienter allegations that CEO controlled "myriad aspects" of operations). Only when a senior manager had specific knowledge about facts required to know that a statement was false can scienter be inferred. *Cf. In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005); *see also Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1231 (9th Cir. 2004).

management's role in the company' that are 'particular and suggest that the defendant had *actual access* to the disputed information.'" *Zucco*, 552 F.3d at 1000 (quoting *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785-86 (9th Cir. 2008)) (emphasis added). In each such case, however, plaintiffs were able to plead "some additional allegation of specific information conveyed to management and related to the fraud." *Metzler*, 540 F.3d at 1068.  That additional link of contemporaneous information, inconsistent with the public disclosure at issue, is what is absent here.  *See also, e.g.*, *Paddock v. DreamWorks*, 2:14-cv-06053, Dkt. No. 56, slip op. at 13-14 (C.D. Cal Apr. 1, 2015) (Collins Decl. Ex. F) (rejecting plaintiff's "core operations" theory of scienter because plaintiff did not sufficiently allege that the officer defendants were so involved in the roll out of Turbo, or received specific reports about Turbo, such that they must have known that it would not be as profitable as Defendants suggested).[11]

    In this case, the closest plaintiffs come to alleging a contemporaneous fact inconsistent with Daimler AG's public statements is a claim that the defendants were aware that in June 2015 Daimler AG had "recalled" around 11,000 of its Sprinter vans "to change the software of an emissions-related device" and "to avoid possible trouble with authorities and test organizations."  Compl. ¶¶ 82-83.  But the Complaint concedes these vans were not identical to the BlueTEC vehicles at issue here (*id.* ¶ 83) and, in any event, purported knowledge of an issue with certain Sprinter vans in no way shows that any of the individuals knew that BlueTEC vehicles—different cars, with different emissions control systems—contained "defeat devices."  *See, e.g.*, *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 946 (6th Cir. 2009) (no scienter for alleged false statement regarding compliance with laws because alleged knowledge of rebranding generic drugs did not suggest scienter for the alleged scheme to change dosage forms at issue in the litigation).

---

[11] In *Volkswagen*, for example, the court held that plaintiffs adequately pleaded scienter as to several of VW's senior executives, but only after detailing specific allegations as to how each defendant obtained specific and contemporaneous information inconsistent with VW's public statements.  Collins Decl. Ex. E, slip op. at 20-22.

Gibson, Dunn & Crutcher LLP

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

And even if the foregoing allegations were sufficient to allege that any individual knew that certain vehicles contained software code disengaging the emissions control system at certain ambient temperatures, such allegations still would not show that any of the defendants knew that such code constituted an impermissible "defeat device" within the meaning of applicable regulations.  Instead, plaintiffs must, at minimum, allege that defendants' interpretation of the regulatory exception was both "objectively unreasonable" and "ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (holding defendant did not recklessly violate Fair Credit Reporting Act because reading of statute, while erroneous, was at least objectively reasonable).  Plaintiffs' only basis for alleging that BlueTEC systems utilized an illegal "defeat device" is the KBA report.  But the KBA itself stated that there is "no sufficient basis to be able to differentiate admissible from inadmissible defeat devices" given that the regulatory exception is susceptible to "wide interpretations."  *See* Collins Decl. Ex. C, at 123, 125.  Thus, the KBA report gives rise to an innocent interpretation of the facts pleaded at least as "cogent and compelling" as any inference plaintiffs suggest.

### 2. Plaintiffs Fail to Allege Scienter as to Daimler AG and MBUSA

Because plaintiffs have not sufficiently alleged scienter as to the individuals, they have necessarily failed to allege scienter as to Daimler AG and MBUSA.  "[A] corporation 'can only act through its employees and agents' and can likewise only have scienter through them."  *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 475 (9th Cir. 2015) (citation omitted).  Thus, to plead that Daimler AG made any false or misleading statement with the required scienter, "[p]laintiffs must allege the requisite level of scienter with respect to at least one of the Individual Defendants."  *See Cheung v. Keyuan Petrochemicals, Inc.*, 2012 WL 5834894, at *3 (C.D. Cal. Nov. 1, 2012); *In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *21 (C.D. Cal. May 23, 2008) ("For scienter to be attributed to International Rectifier, Plaintiffs must sufficiently plead that at least one of International Rectifier's officers had the requisite

scienter at the time they made the allegedly misleading statements.").

To the extent plaintiffs seek to plead Daimler AG's scienter under a "collective scienter" theory based on employees other than the individual defendants—such as engineers further down in the corporate organization chart—the Complaint still fails. The Ninth Circuit has "not . . . adopted a theory of collective scienter." *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 744-45 (9th Cir. 2008); *see also Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435 (9th Cir. 1995) ("there is no case law supporting an independent 'collective scienter' theory").[12]

Finally, plaintiffs make absolutely no scienter allegations against MBUSA.  To plead scienter against a corporation like MBUSA, plaintiffs must plead scienter as to one of its officers who was responsible for the allegedly false statement.  But the Complaint only makes scienter allegations as to the individual defendants, who are directors and officers of Daimler AG, *not* MBUSA.  *See ChinaCast*, 809 F.3d at 475-76.  Accordingly, there is an additional reason to grant MBUSA's motion to dismiss.

## C.    Plaintiffs Fail to Plead Facts Demonstrating Loss Causation

The Complaint also should be dismissed because it lacks the particularized facts required under Rule 9(b) to plead the loss causation element of plaintiffs' Section 10(b) claim.  Here, plaintiffs must demonstrate "a causal connection between the material misrepresentation and the loss." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342 (2005).  Thus, a plaintiff must establish "that the defendant's fraud was *revealed* to the market and *caused* the resulting losses." *Loos v. Immersion Corp.*, 762 F.3d 880, 887

---

[12] *Glazer* shows why the Ninth Circuit rejects this theory and why it cannot apply here. In that case, InVision merged with General Electric. *Glazer*, 549 F.3d at 739.  A few months later, InVision announced it had discovered potential violations of the Foreign Corrupt Practices Act. *Id.*  Shareholders sued for securities fraud based on statements that InVision was in compliance with all laws. *Id.*  The Ninth Circuit rejected arguments that the plaintiff did not need to plead scienter as to an officer who made such statements, holding that "under the collective scienter theory urged by Glazer, so long as any employee at InVision had knowledge of the violation of any law, scienter could be imputed to the company as a whole.  This result would be plainly inconsistent with the pleading requirements of the PSLRA." *Id.* at 745.  Because plaintiffs are attempting to hold Daimler AG liable for similar statements, *Glazer* forecloses plaintiffs from proceeding on a collective scienter theory.

DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

1    (9th Cir. 2014) (emphasis in the original, internal quotation and citation omitted).

2            Here, plaintiffs contend that stock price drops occurring on September 21, 2015

3    and April 21, 2016 were caused by alleged "partial disclosure and/or materialization of

4    foreseeable risks concealed by the Defendants' fraud."  Compl. ¶¶ 165-66.  Plaintiffs

5    claim the price of Daimler AG ADRs declined approximately 7% on September 22,

6    2015 (*id.* ¶ 166), following the publication of an article by an NGO—the Federation

7    for Transport and Environment ("T&E")—claiming that "emissions data from testing

8    authorities throughout Europe" suggest "that diesel vehicles, including Mercedes-Benz

9    vehicles, were polluting at significantly higher levels than previously believed."  *Id.*

10   ¶ 141.  Similarly, plaintiffs contend there was a further 5% drop following disclosure

11   on April 21, 2016 that Daimler AG had initiated "an internal investigation regarding its

12   certification process related to exhaust emissions in the United States" (*id.* ¶ 167) and

13   that the KBA had "doubts" about whether emissions control systems in BlueTEC

14   vehicles improperly disengaged at lower ambient temperatures.  *Id.* ¶ 169.

15           Neither disclosure is sufficient to plead loss causation in the Ninth Circuit.  In

16   *Loos*, the Ninth Circuit categorically rejected an argument similar to plaintiffs' and

17   held that "[t]he announcement of an investigation does not 'reveal' fraudulent practices

18   to the market."  762 F.3d at 887; *accord Meyer v. Greene*, 710 F.3d 1189, 1192-93

19   (11th Cir. 2013).  This is because

20           at the moment the investigation is announced, the market cannot possibly
             know what the investigation will reveal.  While the disclosure of an
21           investigation is certainly an ominous event, it simply puts investors on
             notice of a *potential* future disclosure of fraudulent conduct.
22           Consequently, any decline in a corporation's share price following the
             announcement of an investigation can only be attributed to market
23           speculation about whether fraud has occurred.

24   *Loos*, 762 F.3d at 887-88 (emphasis in original).  Likewise, an "expression of concern

25   . . . does not constitute corrective disclosure and a public admission of . . . fraud."

26   *Oregon Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 608 (9th Cir. 2014).

27           Plaintiffs' loss causation arguments fail for the same reason:  neither the T&E

28   article nor the announcement that Daimler AG commenced an internal investigation

constituted an admission or a finding that BlueTEC vehicles use an improper "defeat device."  Although the investigation, in combination with the T&E article and KBA report might "put[] investors on notice of a *potential* future disclosure" of adverse findings, the stock price movements plaintiffs cite resulted from "market speculation" that is insufficient to establish loss causation.

## III.   THE SECTION 20(a) CLAIMS FAIL BECAUSE THERE IS NO PRIMARY VIOLATION

To state a claim for control person liability under Section 20(a), plaintiffs must allege:  (1) a primary violation of the federal securities laws; and (2) that a particular defendant exercised actual power or control over the primary violators.  *See Zucco Partners, LLC v. Digimarc*, 552 F.3d 981, 990 (9th Cir. 2009).  Because plaintiffs have failed to allege any primary violation under Section 10(b) and Rule 10b-5, they necessarily also fail to allege a Section 20(a) violation.  *See Apollo Grp. Inc.*, 774 F.3d at 610.  In addition, plaintiffs fail to plead actual control.  As the court held in *Volkswagen*, conclusory allegations that defendants were "involved in the day-to-day operations" of companies and controlled them by "directing their public statements" are insufficient to plead actual control.  Collins Decl. Ex. E, slip op. at 33.  These are precisely the types of allegations plaintiffs make here (Compl. ¶¶ 172-75)—conclusory and lacking in specificity—and fail for the reasons identified in *Volkswagen*.

## CONCLUSION

For the foregoing reasons, defendants respectfully urge the Court to dismiss the Complaint with prejudice.

Dated:  January 20, 2017

GIBSON, DUNN & CRUTCHER LLP
SQUIRE PATTON BOGGS (US) LLP


By:  /s/ Paul J. Collins
             Paul J. Collins
Attorneys for Defendants
DAIMLER AG, MERCEDES-BENZ USA,
LLC, DIETER ZETSCHE, BODO UEBBER,
and THOMAS WEBER