1  GLANCY PRONGAY
          & MURRAY LLP
2  JOSHUA L. CROWELL (295411)
   1925 Century Park East
3  Suite 2100
   Los Angeles, CA 90067
4  Telephone:  (310) 201-9150
   Facsimile:  (310) 432-1495
5  jcrowell@glancylaw.com

6  *Liaison Counsel for Lead Plaintiff*
   *Public School Retirement System of the*
7  *School District of Kansas City,*
   *Missouri and Liaison Counsel*
8  *for the Proposed Class*

9  LABATON SUCHAROW LLP
   JAMES W. JOHNSON (*pro hac vice*)
10 MICHAEL H. ROGERS (*pro hac vice*)
   MATTHEW J. HRUTKAY (297485)
11 140 Broadway
   New York, New York  10005
12 Telephone:  (212) 907-0700
   Facsimile:  (212) 818-0477
13 jjohnson@labaton.com
   mrogers@labaton.com
14 mhrutkay@labaton.com

15 *Attorneys for Lead Plaintiff Public*
   *School Retirement System of the*
16 *School District of Kansas City,*
   *Missouri and Lead Counsel*
17 *for the Proposed Class*

18            UNITED STATES DISTRICT COURT

19            CENTRAL DISTRICT OF CALIFORNIA

20

21 VANCOUVER ALUMNI ASSET             Case No. 16-cv-02942-SJO-KS
   HOLDINGS INC., Individually and on
   Behalf of All Others Similarly Situated, **MEMORANDUM OF POINTS AND**
22                                    **AUTHORITIES IN OPPOSITION**
                                      **TO DEFENDANTS' MOTION TO**
                   Plaintiffs,        **DISMISS CONSOLIDATED CLASS**
23             v.                     **ACTION COMPLAINT FOR**
                                      **FAILURE TO STATE A CLAIM**
24 DAIMLER AG, MERCEDES-BENZ
   USA, LLC, DIETER ZETSCHE,          **Hearing:**
25 BODO UEBBER, and THOMAS            Date:      May 15, 2017
   WEBER,                             Time:      10:00 a.m.
26                                    Place:     Courtroom 10C
                   Defendants.
27                                    Judge:     Hon. S. James Otero

28

1  | MARIA MUNRO, Individually and on      Case No. 16-cv-03412-SJO-KS
   | Behalf of All Others Similarly Situated
2  |
   |                Plaintiffs,
3  |         v.
4  | DAIMLER AG, MERCEDES-BENZ
   | USA, LLC, DIETER ZETSCHE,
5  | BODO UEBBER, and THOMAS
   | WEBER,
6  |                Defendants.
7  |

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

NATURE OF THE CASE ................................................................................ 1

ARGUMENT .................................................................................................. 3

I.   Lead Plaintiff's Daimler ADR Purchases Are Domestic Transactions
     Subject to Section 10(b) Liability .................................................... 3

II.  Lead Plaintiff Pleads Defendants' Securities Violations With Sufficient
     Specificity and Particularity ........................................................... 6

     A.   Lead Plaintiff Sufficiently Alleges Materially False Statements............. 6

          1.   Defendants' False Statements Are Not Mere Puffery ..................... 8

          2.   Lead Plaintiff's Claims are not Contingent on Findings of
               Regulatory Violations ................................................................. 9

               (a)   There Are Permissible Uses for Defeat Devices, No
                     Such Permissible Uses Apply to BlueTEC Vehicles ............. 10

               (b)   German Regulators Found the Company's
                     Temperature-Based Defeat Device Was Not Justified.......... 11

               (c)   Daimler Owners' Manuals Belie the Company's
                     Justification by Stating That BlueTEC Was Supposed to
                     Operate in Extremely Low Temperatures .......................... 12

     B.   Lead Plaintiff's Scienter Allegations Satisfy the PSLRA's
          Standard When Viewed Holistically and in Totality ......................... 13

          1.   Falsity Supports a Strong Inference of Scienter............................ 13

          2.   Lead Plaintiff's Scienter Allegations Are More Compelling
               than Defendants Unspecified "Innocent Inference" ..................... 14

          3.   Defendants' Unswerving Focus on BlueTEC Significantly
               Strengthens the Inference of Scienter for all Defendants............... 15

          4.   Lead Plaintiff Sufficiently Alleges Daimler AG's and
               MBUSA's Scienter ...................................................................... 17

III. Lead Plaintiff's Loss Causation Allegations Satisfy Pleading
     Requirements.................................................................................... 18

IV.  The Complaint States Control Person Liability Claims ........................... 20

CONCLUSION............................................................................................... 20

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM
CASE NO. 16-CV-02942-SJO-KS

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Abbott Laboratories*,
  140 F. Supp. 2d 894 (N.D. Ill. 2001)..................................................6

*In re Apollo Group, Inc. Securities Litigation*,
  395 F. Supp. 2d 906 (D. Ariz. 2005).................................................9

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ........................................................................7

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................3

*Berson v. Applied Signal Technology, Inc.*,
  527 F.3d 982 (9th Cir. 2008)..............................................6, 15, 16

*Brody v. Transitional Hospitals Corp.*,
  280 F.3d 997 (9th Cir. 2002)...........................................................2

*City of Monroe Employees Retirement System v.*
  *Bridgestone Corp.*, 399 F.3d 651 (6th Cir. 2005) ...........................8

*In re Ford Motor Co. Securities Litigation*,
  381 F.3d 563 (6th Cir. 2004)...........................................................8

*In re Galena Biopharma, Inc. Securities Litigation*,
  117 F. Supp. 3d 1145 (D. Or. 2015)..........................................18, 19

*In re Gilead Sciences Securities Litigation*,
  536 F.3d 1049 (9th Cir. 2008).......................................................19

*Glazer Capital Management, LP v. Magistri*,
  549 F.3d 736 (9th Cir. 2008).........................................................18

*Howard v. Everex Systems, Inc.*,
  228 F. 3d 1057 (9th Cir. 2000).......................................................20

*In re Impax Laboratories, Inc. Securities Litigation*,
  2007 WL 7022753 (N.D. Cal. July 18, 2007)..................................17

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM
CASE NO. 16-CV-02942-SJO-KS

ii

*In re iPass, Inc. Securities Litigation,*
   2006 WL 496046 (N.D. Cal. Feb. 28, 2006) .......................................................... 8

*Lloyd v. CVB Financial Corp.,*
   811 F.3d 1200 (9th Cir. 2016) ............................................................................... 8

*In re MannKind Securities Actions,*
   835 F. Supp. 2d 797 (C.D. Cal. 2011) ................................................................ 14

*Matrixx Initiatives, Inc. v. Siracusano,*
   563 U.S. 27 (2011) .......................................................................................... 3, 9

*Miller v. Thane International, Inc.,*
   519 F.3d 879 (9th Cir. 2007) ............................................................................. 10

*In re Montage Technology Group Ltd. Securities Litigation,*
   78 F. Supp. 3d 1215 (N.D. Cal. 2015) ............................................................... 17

*Morrison v. National Australia Bank Ltd.,*
   561 U.S. 247 (2010) ................................................................................... 3, 4, 5

*Mulligan v. Impax Laboratories, Inc.,*
   36 F. Supp. 3d 942 (N.D. Cal. 2014) ............................................................... 8, 9

*No. 84 Employer-Teamster Joint Council Pension*
   *Trust Fund v. American West Holding Corp.,*
   320 F.3d 920 (9th Cir. 2003) ........................................................................ 3, 16

*Pace v. Quintanilla,*
   2015 WL 652719 (C.D. Cal. Feb. 13, 2015) ..................................................... 13

*Paracor Finance, Inc. v. General Electric Capital Corp.,*
   96 F.3d 1151 (9th Cir. 1996) ............................................................................. 20

*Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE,*
   763 F.3d 198 (2d Cir. 2014) ............................................................................ 4, 5

*In re Questcor Securities Litigation,*
   2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ................................................ 17, 20

*Reese v. Malone,*
   747 F.3d 557 (9th Cir. 2014) ........................................................................ 13, 14

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM
CASE NO. 16-cv-02942-SJO-KS

iii

*South Ferry LP, No. 2 v. Killinger,*
  542 F.3d 776 (9th Cir. 2008) .............................................................. 13

*In re Societe Generale Securities Litigation,*
  2010 WL 3910286 (S.D.N.Y. Sept. 29, 2010) ..................................... 5

*Stoyas v. Toshiba Corp.,*
  191 F. Supp. 3d 1080 (C.D. Cal. 2016) ................................................ 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
  551 U.S. 308 (2007) ............................................................................ 13

*United States v. Laurienti,*
  611 F.3d 530 (9th Cir. 2010) ............................................................... 6

*In re VeriFone Holdings, Inc. Securities Litigation,*
  704 F.3d 694 (9th Cir. 2012) ............................................................... 6

*In re Volkswagen "Clean Diesel" Marketing,*
  *Sales Practices, and Products Liability Litigation,*
  2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ....................................*passim*

*Zucco Partners, LLC v. Digimarc Corp.,*
  552 F.3d 981 (9th Cir. 2009) ................................................... 2, 3, 18

# NATURE OF THE CASE

Lead Plaintiff alleges here that Daimler AG violated the securities laws by misrepresentations and material omissions concerning emissions controls in the Company's diesel passenger and light-duty vehicles.  By concealing Daimler's manipulation of emissions controls, Defendants enabled the Company to game the regulatory system, and exposed the Company to significant liabilities while misleading investors, regulators, and consumers since at least 2012. This fraudulent misconduct directly harmed investors in Daimler's U.S. securities.

Throughout the Class Period, Defendants regularly touted Daimler's BlueTEC[1] passenger and light-duty vehicles for their environmental friendliness and clean emissions, announcing that they were the "cleanest diesel cars in the world" and "as clean as a state-of-the-art gasoline engine," that the Company was "optimizing [them] to achieve significantly lower emissions," and that "thanks to BlueTEC" Daimler diesel cars "conform to the strictest emissions standards . . . in the world." (¶¶ 101, 105, 108, 112, 116, 137). When reports emerged in September 2015 that the Company manipulated these systems in a way that allowed their diesel cars easily to pass emissions certification tests, Defendants issued a series of emphatically false denials. (¶¶ 121, 125, 127, 134, 139).

Yet, Defendants later admitted that BlueTEC had been specifically designed to actively reduce raw diesel emissions only when the ambient temperature exceeded 50°F, with the full understanding that such vehicles would not be subject to regulatory tests at temperatures below that threshold. (¶¶ 84-85). This function, deliberately encoded by the Company into software governing emissions controls,

---

[1] BlueTEC is the emissions control system used in Daimler's passenger and light-duty diesel vehicles (¶ 2), and consists of a "coordinated system . . . of pollutant-reducing components in a vehicle's engine and exhaust system, the operation of which is regulated by . . . an Engine Control Unit." (¶ 63). Unless the context otherwise indicates, all "¶" references are to paragraphs in the Consolidated Class Action Complaint (ECF No. 38) (the "Complaint").

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM
CASE NO. 16-CV-02942-SJO-KS

1

caused BlueTEC systems to disengage when the ambient temperature fell below 50°F—meaning that these vehicles spewed unchecked diesel emissions into the air in many normal use driving conditions.

As discussed *infra*, and throughout the Complaint, Defendants' initial misstatements and subsequent denials are quintessential examples of "affirmatively creating an impression of a state of affairs that differs in a material way from the one that actually exists." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). Although Defendants argue that Daimler BlueTEC's shut-off function was necessary to protect the vehicle's engine (and was thus legal), statements the Company made to Mercedes-Benz drivers in owners' manuals from BlueTEC vehicles during the Class Period demonstrate that the Company's "engine protection" justification was nothing but an attempt to avoid being caught.

Throughout their motion, Defendants harp on the lack of an announced regulatory violation against Daimler. (Def. Br. at 1:16-18; 2:21-23; 3:1-4; 12:3-6; 12:20-24). By doing so, however, Defendants willfully misdirect the Court by arguing that violations of federal securities laws require underlying violations of vehicle emissions regulations or other government obligations.[2] This is not, and never has been, the law in this or any other circuits. Indeed, environmental regulators do not prosecute violations of federal securities laws on behalf of private litigants. Instead, what is at issue is whether Daimler's statements concerning its BlueTEC passenger and light-duty vehicles were false and misleading to investors, and whether Defendants knew (or were deliberately reckless in failing to know) that those statements presented a danger of misleading investors in Daimler's

_____

[2] Although Lead Plaintiff does allege that statements concerning "compliance with the strictest emissions standards" were false and misleading, the promise of compliance was not what made these statements false—it was the fact that any satisfaction of regulatory obligations was contingent on a device of questionable legality that caused the vehicle to spew unchecked diesel emissions into the atmosphere in common, normal-use driving conditions.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM CASE NO. 16-CV-02942-SJO-KS

2

ADRs. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009).

Likewise, Defendants' arguments that Lead Plaintiff's domestic ADR purchases are "predominantly foreign" run contrary to controlling case law, and contradict the Company's own press release announcing its ADR program ("Daimler ADRs will be traded in the over-the-counter (OTC) market in the United States" and are "created to permit US investors to indirectly hold shares in [Daimler] and to trade them on securities markets in the United States"). *See* Declaration of Michael H. Rogers in Opposition to Defendants' Motions to Dismiss Consolidated Class Action Complaint, ("Rogers Dec."), Ex. 2 (the "ADR Press Release"). Moreover—and fatally for their argument—Defendants do not and cannot contest that Lead Plaintiff purchased Daimler ADRs in domestic transactions in the United States.

## ARGUMENT

Courts evaluating pleadings on a motion to dismiss must "assum[e] the complaint's allegations to be true," and construe them in the light most favorable to the plaintiff. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 45 (2011). A complaint should be sustained unless it fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is inappropriate "unless it appears beyond a doubt that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief." *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 931 (9th Cir. 2003).

### I.   Lead Plaintiff's Daimler ADR Purchases Are Domestic Transactions Subject to Section 10(b) Liability

A party is liable for violations of Section 10(b) relating to "transactions in securities listed on domestic exchanges, and ***domestic transactions in other securities.***" *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247, 267 (2010) (emphasis added). Lead Plaintiff satisfies *Morrison*'s second prong, since it

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM CASE NO. 16-CV-02942-SJO-KS

3

1  purchased Daimler ADRs in domestic transactions from U.S. counterparties.

2        Defendants nonetheless argue that Daimler is not liable here because "[t]he

3  reach of Section 10(b) is[] solely domestic" (Def. Br. at 8:5-6)—even though

4  American investors purchased Daimler ADRs *in the United States*.  Faced with the

5  reality that most of the ADR purchases (including those of Lead Plaintiff) were

6  domestic, Defendants' argue instead that domestic transactions in ADRs (at least

7  Level 1 ADRs) generally are "predominantly foreign" under *Parkcentral Global*

8  *Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198 (2d Cir. 2014). This

9  argument fundamentally misinterprets *Parkcentral*, where the court's holding was

10  based on "the particular character of the unusual [securities based swap agreement]

11  security at issue," a consideration absent here,[3] and where the court expressly noted

12  that its decision was unique—"we do not suggest that the presence of some foreign

13  element in a transaction necessarily means that Congress did not intend to include

14  it in the coverage of § 10(b)." *Id.*, at 216.

15        Although, "[t]he Ninth Circuit has not adopted *Parkcentral*'s 'predominantly

16  foreign' test" (*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and*

17  *Products Liability Litig.*, 2017 WL 66281, at *4 n.3 (N.D. Cal. Jan. 4, 2017)

18  ("*VW*") (Breyer, J.)), an analysis of the "predominantly foreign" factors

19  demonstrates that Lead Plaintiff's transactions in Daimler ADRs are *not* foreign

20  under *Parkcentral*'s logic. *See VW*, at 4-8 (Section 10(b) applies under *Morrison*,

21  where "[r]egardless of the level of the ADRs, Volkswagen took affirmative steps to

22  make its securities available to investors here in the United States").

23

24
25        [3] The securities at issue in *Parkcentral* were "securities-based swap agreements
      pegged to the price of V[olkswagen] shares" and were "roughly the equivalent to
26    short positions in VW stock." *Id.*, at 201. Due to the unique nature of those swap
      agreements, "plaintiffs [did] not allege . . . that [Defendant] was a party to any
27    securities-based swap agreements referencing VW stock, or that it participated in
      the market for such swaps in any way." *Id.* at 207. In contrast, Daimler was a party
28    to the ADRs at issue here, and actively participated in the marketing of those units.

1   For example, here, as in *VW*: "[Daimler] sponsored the ADRs and thus was

2   directly involved in the domestic offering of the ADRs" (at *5); "[Daimler] took

3   affirmative steps to make its securities available to investors here in the United

4   States" (at *6); "[t]he Deposit Agreements creating the ADRs were entered into

5   between [Daimler] and [Deutsche Bank Trust Company Americas] and provide

6   specifically that the Agreements and the ADRs are governed by New York law"

7   (at *6); "[Daimler] submitted Form F-6 Registration Statements with the SEC to

8   make the ADRs available in the United States" (at *6); and Daimler "must, and

9   does, comply with SEC Rule 12g3-2(b), which requires a foreign issuer to provide

10  on its website English-translated versions of market disclosure documents provided

11  in its home country such that U.S. investors have relevant investment information"

12  (at *6). Thus, even under *Parkcentral*'s "predominantly foreign" transaction test,

13  Lead Plaintiff's "allegations establish a sufficient connection between [Daimler's]

14  ADRs and the United States," such that U.S. Level 1 ADRs are "domestic

15  transactions in other securities" that are covered by §10(b). *VW*, at *4.[4]

16  Additionally, and most importantly based on the Supreme Court's express

17  language, Lead Plaintiff's documents show that ***all*** broker-dealers, settling agents,

18  and clearing houses associated with the transactions were U.S. institutions.[5]

19  *Morrison*, 561 U.S. at 267 (liability for 10(b) as to "transactions in securities listed

20  on domestic exchanges, and ***domestic transactions in other securities***").

21

22  [4] The two cases Defendants cite in support of their *Morrison* argument are
    easily distinguishable.  In *In re Societe Generale Sec. Litig.*, 2010 WL 3910286

23  (S.D.N.Y. Sept. 29, 2010), the court dismissed plaintiffs' claim based on the
    "conduct" and "effects" tests that were held inapplicable under *Morrison*.  *See VW*,

24  2017 WL 66281, at *5 n.4 (citing *Societe Generale*, at *6).  And in *Stoyas v.
    Toshiba Corp.*, 191 F. Supp. 3d 1080 (C.D. Cal. 2016), the defendant did not

25  sponsor the American Depository Shares, and was not involved in the transactions
    of those securities in the U.S. 191 F. Supp. 3d at 1091-94.  Here Daimler

26  sponsored the ADRs at issue, and selected an American bank (Deutsche Bank
    Trust Company Americas) to be the depositary bank.

27  [5] *See generally* Rogers Dec., Ex. 3 (trade tickets evidencing Lead Plaintiff's
    Class Period purchases of Daimler ADRs),

28

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM
CASE NO. 16-CV-02942-SJO-KS

5

## II.    Lead Plaintiff Pleads Defendants' Securities Violations With Sufficient Specificity and Particularity

According to Defendants' logic, Lead Plaintiff's Complaint would only survive if it alleged direct evidence that Defendants Zetsche, Uebber, and Weber (the "Individual Defendants") each had knowledge of: "every detail relating to the workings of various BlueTEC . . . systems" (Def. Br. at 15:12-14); the "specific lines of software code" that causes BlueTEC systems in Daimler's passenger and light duty vehicles to fully engage only when ambient temperature exceeded 50°F (Def. Br. at 15:14); and that such code actually violated applicable emissions regulations in the United States and the European Union (Def. Br. at 17:3-5). But Ninth Circuit precedent requires no such omniscience or incontrovertible proof (especially at the motion to dismiss, where Lead Plaintiff's allegations are presumed true). "While the PSLRA 'significantly altered pleading requirements in private securities fraud litigation,' it did not impose an insurmountable standard." *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012). After all, "[r]ecklessly turning a 'blind eye' to impropriety is equally culpable behavior under Rule 10b-5." *Id.* Moreover, because Lead Plaintiff's allegations are sufficiently particularized, Defendants' argument fails.

### A.    Lead Plaintiff Sufficiently Alleges Materially False Statements

Falsity and materiality are satisfied here, where Lead Plaintiff's allegations of misleading statements and omissions "identify which statement is made misleading by defendants' omission" (*Anderson v. Abbott Labs.*, 140 F. Supp. 2d 894, 903-04 (N.D. Ill. 2001)) and give an "impression about a state of affairs that differs in a material way from the one that actually exists." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008); *see also United States v. Laurienti*, 611 F.3d 530, 539 (9th Cir. 2010) (Rule 10b-5 "prohibits the telling of material half-truths. . . .").

Lead Plaintiff alleges pervasive evidence that Defendants' statements

touting the Company's "clean diesel" BlueTEC system and (post-September 2015 statements) denying emissions manipulations or the use of defeat devices were objectively false or materially misleading at the time they were made, by omitting information which "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information" (*Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988))—namely that those same systems which made Mercedes-Benz diesel cars "clean diesel" only operated when the outside temperature is above 50°F, and that those systems utilized a defeat device that was of questionable legality. ¶¶ 84 ("Daimler acknowledged that its BlueTEC systems deactivated at temperatures below 50°F"); 153 (Daimler recalled 247,000 vehicles to implement an "extended temperature range" following German regulator's announcement of "'doubts as to the lawfulness of the defeat device' employed by Mercedes").

Since Defendants cannot claim that their statements were actually true, they dance around the facts to confuse the Court and argue that dismissal is merited because: (i) the statements alleged to be false and/or misleading are all inactionable puffery or opinion statements (Def. Br. at 10:20-11:18); and (ii) there has not yet been a finding of a regulatory violation in either the United States or Europe. *Id.*, at 12:12-27. Regarding this second point, Defendants falsely claim that Lead Plaintiff has not alleged any regulatory violations because the Complaint fails to acknowledge that there are potentially valid reasons to use a shut-off device, or *why* the BlueTEC defeat device falls outside of the regulatory exception permitting such valid uses, and because German regulators did not expressly find the presence of an *impermissible* defeat device in the KBA report. *See id.*, at 12:3-6; 13:8-22; 12:12-27. As discussed in further detail below, these points are neither accurate, nor do they negate Defendants' false and misleading statements to investors, and ultimately, none of these issues mandate dismissal.

Lead Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Consolidated Class Action Complaint for Failure to State a Claim
Case No. 16-cv-02942-SJO-KS

7

### 1.    Defendants' False Statements Are Not Mere Puffery

Defendants argue that their statements concerning BlueTEC diesel emissions were simply corporate boasting and inactionable puffery, avoiding the point that such statements directly compare Daimler BlueTEC vehicles with diesel vehicles offered by their competitors, and thus were capable of objective verification. This alone takes such statements out of the realm of "puffery."

Statements of puffery are those which are generally "not capable of objective verification, and [which] lack[] a standard against which a reasonable investor could expect them to be pegged."[6] *Mulligan*, 36 F. Supp. 3d at 966.[7] Typically, such statements are "not-actionable under the PSLRA because the law deems [them] so amorphous as to be immaterial," but this determination necessarily "entail[s] fact-intensive assessments that are more properly left to the jury." *Id.* at 966.

Defendants' statements here are distinct from the amorphous statements cited above (and in their motion), in that Daimler's claims regarding BlueTEC vehicles were subject to objective verification ***and*** were capable of measurement against an objective standard —namely competitors' vehicles and environmental regulations.  Defendants were not just boasting ambiguously when they said Daimler made the "cleanest diesel cars in the world," that those cars were "as clean

---

[6] Examples include such amorphous statements as "we are very pleased with the learning from our pilot launch," and "so far, we're getting really great feedback." *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014); *see also In re iPass, Inc. Sec. Litig.*, 2006 WL 496046, at *4 (N.D. Cal. Feb. 28, 2006) (puffery statements include "industry leading growth," "measureable progress," and "continuing improvements").

[7] The examples of puffery cited by Defendants are distinguishable from Defendants' verifiable statements about BlueTEC.  *See, e.g., Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206-07 (9th Cir. 2016) ("credit metrics [are] superior,"); *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 670 (6th Cir. 2005) (Bridgestone has "best tires in the world," and "[r]igorous testing . . . helps ensure reliable quality for . . . customers"); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (Ford "design[s] safety into . . . [its] cars and trucks").

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM
CASE NO. 16-CV-02942-SJO-KS

8

as state-of-the-art gasoline engines," and the Company was "optimizing [its vehicles] to achieve significantly lower emissions." (¶¶ 101, 105, 108, 112, 116, 137). They made these statements specifically to highlight the cleanliness of its BlueTEC emissions control systems, which the Company claimed distinguished it from its competitors. Moreover, in so doing, they "not only failed to disclose important negative facts in their possession, but actually painted a picture that was contrary to the facts they possessed." *In re Apollo Grp., Inc. Sec. Litig.*, 395 F. Supp. 2d 906, 921 (D. Ariz. 2005) (citing generally *Am. West*, 320 F.3d 920 (9th Cir. 2003)). Such statements are "anchored in misrepresentations of existing facts" and should be sustained. *Mulligan*, 36 F. Supp. 3d at 966 (citations omitted).

### 2. Lead Plaintiff's Claims are not Contingent on Findings of Regulatory Violations

Defendants argue that without a finding of a regulatory violation, their statements cannot be false or misleading.[8] This cannot be. The fact that no regulatory agency has yet announced a finding of violations by Daimler does not mean that Defendants' Class Period statements were not false and misleading when made, or that Defendants are not liable to investors for making such statements. *See, e.g.*, *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 40 (2011).

There is no dispute that Daimler BlueTEC passenger and light duty vehicles' emissions control systems disengaged at or below 50°F. The only question before the Court is whether Defendants' statements ("cleanest diesel cars in the world"; "cleaner than state-of-the-art gasoline" vehicles; "compliance with the strictest

---

[8] Defendants also insinuate that that action will interfere with or otherwise frustrate any pending "ongoing regulatory review," and will "force this Court to decide highly complex technical issues that are within the regulators purview and expertise." Def. Br. at 3:2-4. They also argue that this action would "needlessly frustrate and complicate the regulators' efforts to administer diesel emissions standards," (*id.* at 3:5-6) without citing a single source that securities claims relating to vehicle emissions should be dismissed out of deference to regulatory jurisdiction.

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM CASE NO. 16-CV-02942-SJO-KS

9

1    emissions standards") were false and misleading. The Court's finding does not

2    hinge on compliance with or violation of government regulations.

3        Moreover, to the extent that Defendants claim the Company's denials after

4    September 2015 are not actionable because there has been no government finding,

5    Defendants again neglect to understand that even if the legality of Daimler's defeat

6    devices was ***questionable*** (something the Company would admit in its 2016

7    Annual Report), their statements were false and misleading in that they

8    emphatically denied any impropriety. It is well-established that "public statements

9    cannot be analyzed in complete isolation," and "[s]ome statements, although

10   literally accurate, can become, through their context and manner of presentation,

11   devices which mislead investors." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886

12   (9th Cir. 2007) (citation omitted).

13                    **(a)    There Are Permissible Uses for Defeat Devices, No
                              Such Permissible Uses Apply to BlueTEC Vehicles**

14

15       Daimler acknowledged in February 2016 that a shut-off device in BlueTEC

16   diesel passenger and light-duty vehicles (including but not limited to those

17   BlueTEC vehicles at issue herein) was designed by the Company to disengage

18   emissions cleaning systems when ambient temperatures fall below 50°F (10°C).

19   This confession shows that those vehicles emit far more pollution than government

20   emissions standards in the United States (and the European Union) permit, when

21   the temperature falls below 50°F.[9] (¶ 84-85). Such a function hardly makes these

22   vehicles the "cleanest diesel cars in the world," despite Lead Plaintiff's

23   acknowledgement that there are certain circumstances where a defeat device is

24

25       [9] Because Lead Plaintiff alleges that all BlueTEC passenger and light-duty
     vehicles are substantially similar (¶ 83), it is not necessary to allege each specific
26   vehicle model affected by the BlueTEC defeat devices. *See* Def. Br., at 16:17-21.
     What is common to all affected Daimler vehicles, regardless of engine or model, is
27   the BlueTEC system. *Id.* (arguing that circumstances surrounding a recall of
     15,000 Mercedes BlueTEC Sprinter vans do not infer that Defendants were
28   unaware of issues with other Daimler vehicles with BlueTEC systems).

permissible. (¶ 74).[10]

And several tests performed by European regulators and non-governmental agencies (each a "NGO") verify that: under conditions where the ambient temperature falls below 50°F Daimler's BlueTEC vehicles produce much higher on-road emissions of nitrous oxides ("NOx"; one of the most concerning diesel emission pollutants) than permitted, that this manipulation ensures that emissions controls are working during regulatory testing protocols, and that the Company's justification for that function for the defeat device (*i.e.*, engine protection) was not "justified. (¶¶ 3, 8, 10, 13, 88, 92-99, 141-43, 150-53).[11] These public reports contradict Defendants' Class Period public statements concerning BlueTEC.

### (b)   German Regulators Found the Company's Temperature-Based Defeat Device Was Not Justified

Further, immediately after publication of the KBA Report, several additional reports disclosed the Company's voluntary recall of 247,000 BlueTEC passenger and light-duty vehicles "to fix a device that turns off emissions controls at particular temperatures as a means to protect the engine," which thresholds the German Transport Minister found "weren't justified."[12] (¶¶ 14, 89, 153-54, 170).

---

[10] Lead Plaintiff clearly alleges "***why*** the various systems fall outside of the exception" (Def. Br. at 12:5-6). *See, e.g.*, ¶ 14 ("temperature thresholds at which the controls shut down weren't justified"); ¶ 88 (the KBA "concluded that those defeat devices were not necessary to protect the vehicle"); ¶ 102 ("excessive emissions were caused by BlueTEC's emissions control system's software that intentionally shut-down that . . . system ***under certain conditions unnecessary*** to protect the engine from damage")(emphasis added); ¶¶ 103, 106, 107, 109, 113, 114, 117, 118, 122, 123, 126, 129, 132, 135, 138, 140 (same).

[11] The Complaint refers to two distinct reports discussing diesel emissions from Daimler's BlueTEC vehicles, each of which was issued by a government regulator or NGO, and which are incorporated therein by reference.  These include: a "Report of the Commission of Inquiry in the matter "Volkswagen" (the "KBA Report") (*see generally* ¶¶ 88, 94; Collins Dec., Ex. C); and a study by NGO Transport & Environment "Dieselgate: Who? What? How?" (*See* ¶ 97; Rogers Dec., Ex. 4).

[12] To the extent that Defendants claim this was not a recall, Lead Plaintiff has merely alleged facts stated in publicly available sources, including sources of which Defendants seek judicial notice. *See, e.g.*, Collins Dec., Ex. D, at 2 ("Manufacturers that have been using temperature windows will organize a

*(continued . . . )*

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM
CASE NO. 16-CV-02942-SJO-KS

11

1   This announcement and the KBA report, and other Company literature, discussed

2   *infra*, likewise corroborate Lead Plaintiff's claims that there was no genuine need

3   for the Company to design BlueTEC to be engaged at temperatures above 50°F.

4               **(c)    Daimler Owners' Manuals Belie the Company's
                         Justification by Stating That BlueTEC Was Supposed
5                        to Operate in Extremely Low Temperatures**

6          Defendants further argue that BlueTEC was designed to clean emissions

7   only when the ambient temperature was above 50°F to protect the engine in

8   temperatures below that threshold—therefore, according to Defendants, rendering

9   their statements and emphatic denials of emissions manipulations not false or

10  misleading. *See* Def. Br. at 11:23-24.

11         Leaving aside for the moment the questions of whether this assertion passes

12  objective muster (it does not), nor whether a supposedly sincere desire to protect

13  the engine would make Defendants' otherwise false statements true (it would not),

14  this argument is ***directly contradicted*** by instructions in Daimler owners' manuals

15  for each of the passenger and light-duty vehicles which offered BlueTEC during

16  the Class Period.  Specifically, in Daimler owners' manuals for BlueTEC

17  passenger and light-duty vehicles throughout the Class Period, Daimler provided

18  an "important safety note" regarding operating in "low outside temperatures,"

19  promising that BlueTEC works at temperatures ***well below the 50°F threshold***.

20  Indeed, the manuals state that "[AdBlue solution] freezes at a temperature of

21  approximately 12°F (-11°C)."[13]  The owners' manuals also note that there is a pre-

22  heating system for the AdBlue solution, and as a result, "[w]inter operation is also

23  ***guaranteed*** at temperatures below 12°F (-11°C)." Rogers Dec., Ex. 5. The

24

25  _____

    *( . . . continued)*
26  voluntary recall . . . . This applies to [] Mercedes . . . ."); Rogers Dec. Ex. 4, ("The
    German regulator [KBA] has required the *voluntary recall* of affected cars . . . .").
27      [13] AdBlue solution is the "diesel exhaust fluid" or "DEF" used to help
    "convert[] NOx into nitrogen gas, water, and carbon dioxide." Def. Br. at 6:16-17.
28

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM
CASE NO. 16-CV-02942-SJO-KS

12

BlueTEC system is therefore capable of and, by Daimler's own claims, designed to work at very cold temperatures.

### B. Lead Plaintiff's Scienter Allegations Satisfy the PSLRA's Standard When Viewed Holistically and in Totality

Courts are to engage in a "holistic approach" in assessing scienter, considering "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual alleged, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008) ("[W]hile a high level of detail  is required under the PSLRA, a court should look to the complaint as a whole, not to each individual scienter allegation . . . .") The standard is met here, where, accounting for all of the circumstances, "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 324; *see also S. Ferry*, 542 F.3d at 784; *Pace v. Quintanilla*, 2015 WL 652719, at *8 (C.D. Cal. Feb. 13, 2015).  Lead Plaintiff does not need to produce a "smoking gun" to meet their burden.  *Tellabs*, 551 U.S. at 330 (Scalia, J., concurring). Lead Plaintiff's allegations satisfy this standard, especially given that Defendants assert no countervailing inference of Defendants' mindset.

### 1. Falsity Supports a Strong Inference of Scienter

In some circumstances—most applicable here during and after Defendants' first emphatic denial of all allegations that the Company had manipulated its emissions control systems starting in September 2015—the false and misleading nature of Defendants' statements significantly strengthens the inference of scienter for each of the Individual Defendants, and most critically for Defendant Weber (who was responsible for Research and Development related to BlueTEC). "[B]y making a detailed factual statement, contradicting important data to which [Defendants] had access, a strong inference arises that [Defendants] knowingly

1   misled the public as to its clear meaning." *Reese v. Malone*, 747 F.3d 557, 572 (9th

2   Cir. 2014) (internal quotation marks omitted).

3        Indeed, after the announcement of the Volkswagen scandal and the

4   publication of the *Transport & Environment* article (which reporting on-road test

5   results of Daimler BlueTEC vehicles showing that emissions controls were not

6   fully operational below 50°F), it is simply implausible to infer that Defendants

7   (specifically Defendant Weber) did not know at and after that time that their

8   continued statements to the market were false and misleading (or that their

9   statements presented a ***danger*** of misleading investors).[14] (¶ 143). Thereafter, if

10  they did not ***know*** the specific parameters within which the BlueTEC systems

11  operated when they spoke and emphatically denied emissions manipulations or that

12  their statements presented a danger of misleading the investing public, Individual

13  Defendants were deliberately reckless in maintaining their ignorance following

14  these announcements, and the inference of scienter is equally strong.

15        Here, the falsity of Defendants' statements is evidence of scienter, since

16  those allegations are accompanied by detailed allegations of Defendants' roles

17  within the Company showing they had access to contrary information, and where

18  "the nature of the relevant fact was of such prominence that it would be absurd to

19  suggest that management was without knowledge of the matter." *In re MannKind*

20  *Sec. Actions*, 835 F. Supp. 2d 797, 808-09 (C.D. Cal. 2011) (quoting *Zucco,* 552

21  F.3d at 1000).

22        **2.    Lead Plaintiff's Scienter Allegations Are More Compelling
              than Defendants Unspecified "Innocent Inference"**

23

24        "Defendants are asking the Court to draw inferences in their favor which,

25

26    [14] In addition to Mr. Weber's extensive experience in Daimler Research and
    Development for more than 13 years, which provided him insight into the specific
    parameters of the BlueTEC system's capabilities, he "laid important foundations,
27  [and] renewed the entire product portfolio of passenger cars," and "played a major
    role in the present success of Mercedes-Benz Cars." (¶ 27).

28

1   on Defendants' motion to dismiss, the Court cannot do." *VW*, 2017 WL 66281, at
2   *12. Lead Plaintiff's allegations create a strong inference that Defendants made
3   statements concerning the capabilities of Daimler's BlueTEC passenger and light-
4   duty vehicles that gave an "impression of a state of affairs that differ[ed] in a
5   material way from the one that actually exist[ed]," (*Berson*, 527 F.3d at 985) and
6   either knew or deliberately disregarded that those statements were false or
7   misleading. In response, Defendants assert only an unspecified "innocent
8   interpretation of the facts pleaded" (Def. Br. at 17:15-16), without actually stating
9   that Defendants did not know or disregard this information in a deliberately
10  reckless manner.

11          The more compelling inference here is that the Individual Defendants knew
12  that BlueTEC, the only diesel emissions control system used in Daimler passenger
13  and light-duty vehicles, was designed to be operable only when the ambient
14  temperature is above 50°F, that such limitations and design was of at least
15  questionable legality under both U.S. and E.U. regulations, and that, in light of
16  such knowledge their statements presented investors with an "impression of a state
17  of affairs that differs in a material way from the one that actually exists." *Berson*,
18  527 F.3d at 985.

19          Even if such statements were not made with knowledge that they were false
20  and misleading, it is inconceivable that Defendants were unaware that their Class
21  Period statements were misleading, since BlueTEC was the *only* diesel emissions
22  control system used in Daimler passenger and light-duty vehicles, and each
23  Individual Defendant (and particularly Defendant Weber) had engineering
24  backgrounds and was instrumental in the development and marketing of BlueTEC
25  vehicles.

26          **3.   Defendants' Unswerving Focus on BlueTEC Significantly
                    Strengthens the Inference of Scienter for all Defendants**

27          Given the prominence with which Daimler publicly lauded its "clean diesel"
28

offerings, it is "absurd to suggest" that Defendants, and certainly Defendant
Weber, did not know throughout the Class Period that BlueTEC passenger and
light-duty vehicles disengaged emissions controls below 50°F, and that in light of
such information, their statements that the Company made the "cleanest diesel cars
in the world" and that were "as clean as than a state-of-the-art gasoline engine"
were false and misleading when made. *Berson*, 527 F.3d at 987-88; *see generally*
¶¶ 101, 105, 108, 112, 116.  *America West*, 320 F.3d 920, is particularly
instructive. There, making ***no particularized allegations concerning Defendants'***
***knowledge***, "plaintiffs relied on an inference based on defendants' positions as
outside directors on America West's board:[ t]he company's maintenance
problems, and the government's investigation into them were so important to the
company that it was 'absurd to suggest that [they] would not discuss' them."
*Berson*, 527 F.3d at 987-88.

        This inference is even stronger in light of the fact that Defendants are
officers of Daimler, Members of the Board of Management, and had advanced
degrees in engineering and extensive experience across numerous Daimler
subsidiaries (¶¶ 22, 24, 26-27). An even stronger inference emerges for Defendant
Weber, who specifically "shaped Research & Development at Daimler, and
primarily at Mercedes-Benz Cars, for more than thirteen years" (including
throughout the Class Period), who "laid important foundations, [and] renewed the
***entire product portfolio of passenger cars***," and has "played a major role in the
present success of Mercedes-Benz Cars."  (¶ 27).

        Any contrary inference is "patently incredible," especially after news of the
VW Scandal and publications identifying similar conduct at Daimler. (¶ 141).
Given the weight and implication of the allegations against VW and the
prominence of BlueTEC in Daimler's diesel vehicles, Lead Plaintiff's allegations
here (especially post-September 2015) fall squarely within the core operations

doctrine. Any claim by the "high-ranking individual defendants, that they were unaware of major business events likely to have a significant impact on the [C]ompany's financial condition" is not credible, only strengthening the inference that Defendants had the requisite intent to mislead the investing public. *In re Impax Labs., Inc. Sec. Litig.*, 2007 WL 7022753, at *10 (N.D. Cal. July 18, 2007), *rev'd on other grounds*, 2008 WL 1766943 (citing *Am. West*, 320 F.3d at 943). "Defendants criticize plaintiffs' attempt to plead scienter based on management of board positions. However, in this circuit. . . ,'such allegations may independently satisfy the PSLRA when they are particular and suggest that defendants had access to the disputed information.'" *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1226 (N.D. Cal. 2015) (quoting *S. Ferry*, 542 F.3d at 785). [15]

Other facts alleged that support the inference of Defendants' scienter include: Daimler's reliance on revenue from its passenger and light-duty vehicles (¶¶ 35-37); the implementation of strict emissions controls in the U.S. and the E.U. which made compliance therewith a Company priority (¶¶ 41-43; Def. Br. at 6:14-15); the Company's announced strategy to "make diesel driving popular [in the U.S.] again" (¶46); BlueTEC's "key role in making diesel-operated vehicles more environmentally friendly than ever before" (¶ 47); the prioritization of Daimler Research and Development's "compl[iance] with new emissions standards . . ." (¶ 48); and Defendant Weber's announcement that "the BlueTEC campaign expresses [Daimler's] ambitious targets for the U.S." (¶ 51-52).

### 4. Lead Plaintiff Sufficiently Alleges Daimler AG's and MBUSA's Scienter

Although Defendants would have this Court believe that the doctrine of

---

[15] "[A]lthough generally a plaintiff may not rely *only* on the core-operations inference to plead scienter, it is one factor that the Court may consider as part of its 'holistic' assessment of the pleadings." *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *19 (C.D. Cal. Oct. 1, 2013) (citing *S. Ferry*, 542 F.3d at 784).

LEAD PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM CASE NO. 16-CV-02942-SJO-KS

17

1   "collective" or "corporate" scienter is all but dead (Def. Br., at 18:2-8), "Ninth

2   Circuit law does not prohibit the doctrine . . . in all circumstances." *VW*, 2017 WL

3   66281, at *14. In fact, the Ninth Circuit specifically noted that "there [are]

4   circumstances in which a company's public statements were so important and so

5   dramatically false that they would create a strong inference that at least *some*

6   corporate officials knew of the falsity [or material omission] upon publication."

7   *Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 744 (9th Cir. 2008).

8        That is exactly the situation here. Although Lead Plaintiff does not allege

9   exactly *which* Daimler employee developed the "specific lines of software code"

10  responsible for the BlueTEC's shut-off function, it is highly plausible that someone

11  within the Company with requisite authority to bind Daimler (if not one of the

12  Individual Defendants themselves) knew of and approved of that function, and

13  understood that such a function would have made statements made by the

14  Defendants false and materially misleading.  Indeed, in light of the Company's

15  eventual acknowledgement that it had intentionally designed the system to shut-off

16  at 50°F, it is clear that someone within Daimler with applicable authority knew of

17  this system design, and that Defendants' highly-targeted and reactionary Class

18  Period statements presented a significant danger of misleading investors.

19       Taken collectively, Lead Plaintiff's scienter allegations create a strong

20  inference that Defendants knew or deliberately ignored the likelihood that their

21  statements would "present[] a *danger* of misleading buyers" of Daimler ADRs,

22  including the Lead Plaintiff.  *Zucco*, 552 F.3d at 991 (emphasis added).

23  **III.   Lead Plaintiff's Loss Causation Allegations Satisfy Pleading
        Requirements**

24

25       In the Ninth Circuit, "[a]t the pleading stage, [] the plaintiff need only allege

26  that the decline in the defendant's stock price was proximately caused by a

27  revelation of fraudulent activity rather than by changing market conditions,

28  changing investor expectations, or other unrelated factors."  *In re Galena*

1  *Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1189 (D. Or. 2015) (citing

2  *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1062 (9th Cir.

3  2008)); *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1056 (9th Cir. 2008)

4  (loss causation sufficiently pleaded where "the [] complaint offers sufficient detail

5  to give defendants ample notice of [their] loss causation theory and to give us some

6  assurance that the theory has a basis in fact").

7          The Complaint alleges that an article published by NGO "Transport &

8  Environment" on September 21, 2015 partially disclosed to the market that

9  Daimler's BlueTEC passenger and light-duty diesel vehicles emitted "significantly

10  higher levels of pollutants during normal use . . . compared to conditions that

11  mimic [] highly regulated test-conditions," in its conclusion that "the results

12  observed were highly indicative that . . . Defendants, were using defeat devices"

13  (¶ 143; Rogers Dec., Ex. 6), and that Lead Plaintiff suffered losses as a result.

14          Further, Lead Plaintiff alleges that there were three corrective events from

15  April 21-22, 2016 that caused the price of Daimler ADRs to fall, and caused

16  ensuing losses to members of the Class: (1) the announcement that the U.S.

17  Department of Justice had requested Daimler perform an internal investigation; (2)

18  the KBA Report, which stated that two Mercedes BlueTEC models the German

19  regulators had tested "adjust the efficiency of their emission control system to

20  driving conditions and environmental conditions[, which] corresponds to a defeat

21  device" (¶ 150); and (3) the announcement of a voluntary recall of 247,000

22  Daimler BlueTEC vehicles on April 22, 2016 to "introduce an extended

23  temperature range" (¶ 152) based on the KBA's "doubts as to the lawfulness of the

24  defeat device" (¶ 153).

25          Defendants' argument that the announcement of an investigation ***cannot***

26  constitute a corrective event misrepresents the law of this Circuit, and holds Lead

27  Plaintiff to a higher standard than precedent requires. As one court noted, such a

28

1  "bright-line rule" would "preclude any type of action . . . where there has been no

2  conclusive finding of fraud by a government agency, or a criminal charge initiated,

3  or a formal corrective disclosure by the defendant." *In re Questcor Sec. Litig.*,

4  2013 WL 5486762, at *22 (citation and quotation marks omitted). This argument

5  also fails to acknowledge that there were three separate events that caused the price

6  drop on or about April 21-22, 2016, only one of which was the announcement of

7  an internal investigation. *See, e.g.*, ¶¶ 150 (publication of the KBA report), 152

8  (announcement of the voluntary recall of Daimler BlueTEC vehicles).

9  **IV.  The Complaint States Control Person Liability Claims**

10       A plaintiff asserting control person liability must allege a primary violation

11  of the federal securities laws and that "the defendant exercised actual power or

12  control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F. 3d 1057,

13  1065 (9th Cir. 2000). This is an "intensely factual question." *Paracor Fin., Inc. v.*

14  *Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996)

15       Lead Plaintiff has adequately pleaded primary violations of the federal

16  securities laws above, and have sufficiently alleged that Defendants Zetsche,

17  Weber, and Uebber exercised actual control over Daimler and MBUSA. (¶ _).

18  Defendants Zetsche and Uebber were each officers of Daimler AG (¶¶ 22, 24); all

19  three Individual Defendants were Members of the Company's Board of

20  Management (¶¶ 22, 24, 26); and each ran Daimler day-to-day, had access to

21  confidential business information, and exercised authority over Daimler's

22  statements to the investing public, including those alleged in the Complaint to be

23  false and misleading. (¶ 29).  Lead Plaintiff has pleaded Control Person claims.

24                          **CONCLUSION**

25       For the foregoing reasons, Lead Plaintiff respectfully requests that

26  Defendants' motion to dismiss be denied in its entirety.

27

28

Dated:   March 20, 2017

Respectfully submitted,

LABATON SUCHAROW LLP

By:   */s/ James W. Johnson*
     James W. Johnson
     Michael H. Rogers
     Matthew J. Hrutkay

*Attorneys for Lead Plaintiff Public
School Retirement System of the
School District of Kansas City,
Missouri and Lead Counsel for the
Proposed Class*

GLANCY PRONGAY &
     MURRAY LLP
Joshua L. Crowell

*Liaison Counsel for Lead Plaintiff
Public School Retirement System of the
School District of Kansas City,
Missouri and Liaison Counsel for the
Proposed Class*

Lead Plaintiff's Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss Consolidated Class Action Complaint for Failure to State a Claim
Case No. 16-cv-02942-SJO-KS

21