MERYL L. YOUNG, SBN 110156
  myoung@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Telephone: 949.451.3800
Facsimile: 949.451.4220

PAUL J. COLLINS, SBN 187709
  pcollins@gibsondunn.com
MICHAEL J. KAHN, SBN 303289
  mjkahn@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
1881 Page Mill Road
Palo Alto, CA 94304-1211
Telephone: 650.849.5300
Facsimile: 650.849.5333

MATTHEW J. KEMNER, SBN 188124
  matthew.kemner@squirepb.com
TROY M. YOSHINO, SBN 197850
  troy.yoshino@squirepb.com
SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, CA 94111
Telephone: 415.743.2469
Facsimile: 415.393.9887

Attorneys for Defendants DAIMLER AG, MERCEDES-BENZ USA, LLC, DIETER ZETSCHE, BODO UEBBER, and THOMAS WEBER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANCOUVER ALUMNI ASSET HOLDINGS INC., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIMLER AG, MERCEDES-BENZ USA, LLC, DIETER ZETSCHE, BODO UEBBER, and THOMAS WEBER,<br><br>Defendants. | Case No. 16-cv-02942-SJO-KS<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM** |
| MARIA MUNRO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIMLER AG, MERCEDES-BENZ USA, LLC, DIETER ZETSCHE, BODO UEBBER, and THOMAS WEBER,<br><br>Defendants. | Case No. 16-cv-03412-SJO-KS<br><br>**Hearing:**<br>Date: May 15, 2017<br>Time: 10:00 a.m.<br>Place: Courtroom 10C<br><br>Judge: Hon. S. James Otero |

      Rather than defend the Complaint they filed, plaintiffs' Opposition attempts to rewrite it, seeking judicial notice of factual allegations found nowhere in their pleading and contradicting the allegations they now find inconvenient. Plaintiffs claimed Daimler AG used a purported "defeat device"—and, indeed, used the term "defeat device" 62 times in their Complaint—but now claim that their case "does not hinge on [Daimler's] compliance with or violation of government regulations" in the U.S. and E.U. regarding such devices. Opp. at 10; *see, e.g.*, Complaint ¶¶ 119-135, 141, 150. Seven of the statements plaintiffs put at issue are based on whether Daimler AG used "defeat devices." Yet plaintiffs claim—wrongly—that they should not now be required to plead facts showing use of an illegal "defeat device."

      Likewise, plaintiffs wrongly claim that each statement was false or misleading because the alleged "defeat device"—deactivation of the BlueTEC system below 50°F—was "unnecessary" to protect the vehicles' engines and, therefore, the part-protection exception in U.S. and E.U. regulations did not apply. Compl. ¶¶ 100-140. First, plaintiffs claim that because owners' manuals say AdBlue solution "freezes at a temperature of approximately 12°F," "BlueTEC [should] work[] at temperatures well below the 50°F threshold." Opp. at 12. But these claims are not in the Complaint and, in any event, say nothing about the complex BlueTEC system. It is BlueTEC, not AdBlue, that is at issue. Second, plaintiffs do ***not*** allege facts showing that the February 2016 disclosure on this subject (Compl. ¶¶ 84-85) revealed any alleged fraud or caused ADR prices to fall, which would have occurred if the "fraud" were that the BlueTEC system deactivated below the "50°F threshold," as plaintiffs now claim.

      **The ADR Transactions Are Not "Domestic."** Plaintiffs rely heavily on *VW*'s statement that *Morrison v. National Australia Bank Ltd.*, 130 S.Ct. 2869 (2010), does not preclude application of the Exchange Act to sponsored Level 1 ADR programs. *See* Opp. at 4-5. This Court should not follow *VW*, as it ignored the important differences between Level 1 and Level 2/3 ADRs. *VW* acknowledged that foreign issuers with Level 1 ADRs are not subject to reporting requirements in the U.S.—

1  unlike Level 2 and 3 ADRs which require reports with "extensive financial and non-
2  financial information about the issuer"—but dismissed this distinction in the SEC's
3  regulations without analysis. *See* 2017 WL 66281, at *6 (N.D. Cal. Jan. 4, 2017). The
4  distinction is critical, however, because foreign issuers with Level 1 ADRs do not
5  "access[] the U.S. markets." Collins Decl. Ex. B at 2.[1] Daimler AG is a German
6  company regulated under German law, with disclosure obligations under German law,
7  whose shares are listed and traded exclusively on non-U.S. exchanges. Opening Brief
8  ("OB") at 4, 8. The ADRs are derivative securities issued by **Deutsche Bank**—not
9  Daimler AG. Subjecting Daimler AG to U.S. securities laws is not consistent with
10 either *Morrison* or the SEC's regulatory scheme. This Court should therefore reject
11 *VW* and dismiss the Complaint for the reasons stated by defendants. *See* OB at 4, 7-9.

12     **Falsity.** Plaintiffs wrongly claim they met the exacting pleading requirements
13 of the PSLRA because defendants did not show that "their statements were actually
14 true." Opp. at 7. But it is ***plaintiffs'*** burden to plead falsity "with particularity."
15 *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). Having flipped
16 the pleading burden on its head, plaintiffs then incorrectly argue they need not plead
17 facts showing an illegal defeat device. Opp. at 10. But to plead that defendants' post-
18 September 2015 "deni[als of] any impropriety" (*id.*) were false, plaintiffs must allege
19 that Daimler AG engaged in the "impropriety" alleged.

20     Plaintiffs incorrectly contend that "whether Defendants' statements . . . were
21 false or misleading . . . does not hinge on compliance with or violation of government
22 regulations." Opp. at 9-10. Plaintiffs argue they plead illegality by alleging that
23 deactivation of the BlueTEC system was "unnecessary to protect the engine from
24 damage" (*id.* at 11 n.10), but simply because AdBlue—only one component of a

---

[1] The fact that Daimler AG translates its disclosures into English (Opp. at 5) is of no moment, as Daimler AG is entitled under *Morrison* to list its securities on non-U.S. exchanges and provide information to English-speaking investors, including Americans, without subjecting itself to the Exchange Act. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 532-33 (S.D.N.Y. 2011).

complex emissions system—does not freeze at temperatures above 12°F does not, as plaintiffs claim, show other parts would not be harmed.  *See* Compl. ¶¶ 63-65.  Plaintiffs rely on the KBA Report (Opp. at 11), but the KBA found ***no illegal defeat device***.  OB at 12-13.  Plaintiffs cite nothing finding the BlueTEC system illegal in any way.  *See* Opp. at 11.  Likewise, plaintiffs claim that BlueTEC cars were not, in fact, the "cleanest diesel cars in the world," but do not provide emissions data or other facts that would permit the Court to make such a comparison.

        Plaintiffs wrongly claim some of the challenged statements are not puffery, as they "were subject to objective verification and were capable of measurement against an objective standard."  Opp. at 8.  But the cases defendants cite (OB at 11) show that this is not the test.  Examples of puffery include "credit metrics [are] superior," testing is "rigorous" and done "under diverse conditions," and an issuer is "designing safety into . . . [its] cars."  *Id.*  Such statements are all objectively measurable, but still are puffery.  *See Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1206-07 (9th Cir. 2016).  Instead, the test is whether statements are "boasts" that investors understand as "rosy affirmations."  OB at 11.  Daimler AG's statements are puffery under controlling law.

        **Scienter.**  Plaintiffs incorrectly argue that the Complaint is sufficient because defendants did not disprove plaintiffs' allegations.  Opp. at 15.  But it is not defendants' burden to show they "did not know or disregard . . . information in a deliberately reckless manner."  *Id.*  Instead, plaintiffs must plead facts showing a *strong inference* each defendant acted knowingly or with "deliberate recklessness."  *Zucco Partners, LLC v. Digimarc*, 552 F.3d 981, 991 (9th Cir. 2009).  Plaintiffs fail to plead any *contemporaneous fact* known to the defendants when alleged misstatements were made that, if true, would show falsity.  For example, plaintiffs do not plead facts showing defendants were aware of an illegal "defeat device," knew or had any reason to know the details of the "software governing emissions controls" (Opp. at 1), or that the functioning of the system was not, as plaintiffs suggest, required to protect the engine.

        Instead, plaintiffs claim that because the individual defendants had senior

positions and because diesel vehicles are an important part of the business, they *must have known*. Opp. at 16-17. But the cases plaintiffs cite do not support that argument. In *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding Corp.*, 320 F.3d 920, 940 (9th Cir. 2003), scienter was inferred from the defendants' suspicious stock sales—not an issue here. In dicta, the court also noted plaintiffs were able to plead a strong inference of scienter because, unlike here, *at the time the allegedly false statements were made*, there was an ongoing government investigation known to the senior officers and directors. *In re Impax Labs., Inc. Sec. Litig.*, 2007 WL 7022753, at *10 (N.D. Cal. July 18, 2007), held only that knowledge of a company's "core operations" can be inferred when material to the company's business *and* supported by corroborating facts. And *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215, 1226-27 (N.D. Cal. 2015), did not rely on a "core operations" theory, but instead cited numerous specific items that, in the aggregate, established scienter. Here, allegations that "[Defendants] had access" to specific "contradict[ory] important data" (Opp. at 13) are precisely what is missing from the Complaint.[2]

      Plaintiffs next claim that "[i]n some circumstances . . . the false and misleading nature of Defendants' statements significantly strengthens the inference of scienter." Opp. at 13. But again, plaintiffs' cases are distinguishable. *See Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014) (defendant admitted it had data contradicting alleged misstatement); *In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 809-10 (C.D. Cal. 2011) (false statement that FDA had "blessed" study was evidence of scienter because company would know if FDA gave its approval).

      Finally, plaintiffs argue that corporate scienter is established by the collective knowledge of employees—even as they admit they cannot allege that the individual

---

[2] Plaintiffs argue that defendants' statements after the VW scandal broke were at least reckless (Opp. at 14), but they do not allege that defendants knew any feature of the BlueTEC system was illegal, nor could they, as the KBA concluded the regulations at issue did not establish any illegal defeat devices. OB at 17 (citing KBA report, Collins Decl. Ex. C).

defendants had knowledge of an allegedly illegal defeat device—because "it is *highly plausible* that *someone* within the Company with requisite authority to bind Daimler (*if not one of the Individual Defendants themselves*) knew of and approved of that function." Opp. at 18 (emphases added). Plaintiffs' "collective scienter" theory has not been endorsed by the Ninth Circuit and what plaintiffs allege—functionality of software code embedded in BlueTEC vehicles—is the type of non-obvious data that cannot support collective scienter. *See Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 744-45 (9th Cir. 2008); *see also* OB at 18 & n.12.

**Loss Causation.** Plaintiffs concede that, to plead loss causation, they must "allege that the decline in the defendant's stock price was proximately caused by a revelation of fraudulent activity." Opp. at 18. Yet plaintiffs do not even attempt to distinguish *Loos v. Immersion Corp.*, 762 F.3d 880 (9th Cir. 2014), which held that "the announcement of an investigation does not 'reveal' fraudulent practices to the market." 762 F.3d at 890. Instead, plaintiffs' cases all pre-date *Loos*. *See* cases cited in Opp. at 19-20. Plaintiffs argue three other corrective disclosures—the T&E article, the KBA Report, and an alleged "voluntary recall" (Opp. at 19)—but each also fails. *Loos* held that an investigation cannot be a corrective disclosure as "it simply puts investors on notice of a *potential* future disclosure of fraudulent conduct" and "any decline in a corporation's share price . . . can only be attributed to market speculation about whether fraud has occurred." *Loos* at 890 (emphasis in case). Similarly, any price decline here is based solely on "market speculation" about a "potential future disclosure" because (1) T&E states only that "illegal defeat devices *may* also be in use" by manufacturers other than VW (Rogers Decl. Ex. 6 at 3) (emphasis added), (2) KBA only says it had "doubts" and "further inquiry would be needed" to make this determination (OB at 12-13), and (3) the purported "recall" was based on the KBA Report (Compl. ¶ 153) and so fails for the same reason.

**Section 20(a) Claims.** Plaintiffs alleged no primary violation, and did not plead actual control, so these claims also fail. OB at 20.

| | |
|---|---|
| Dated: April 3, 2017 | GIBSON, DUNN & CRUTCHER LLP<br>SQUIRE PATTON BOGGS (US) LLP<br><br>By: /s/ Paul J. Collins<br>      Paul J. Collins<br><br>Attorneys for Defendants |