GLANCY PRONGAY
    & MURRAY LLP
JOSHUA L. CROWELL (295411)
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 432-1495
jcrowell@glancylaw.com

*Liaison Counsel for Lead Plaintiff the
Public School Retirement System of the
School District of Kansas City,
Missouri and Liaison Counsel
for the Proposed Class*

LABATON SUCHAROW LLP
JAMES W. JOHNSON (*pro hac vice*)
MICHAEL H. ROGERS (*pro hac vice*)
IRINA VASILCHENKO (*pro hac vice*)
JAMES T. CHRISTIE (*pro hac vice*)
MARGARET SCHMIDT (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jjohnson@labaton.com
mrogers@labaton.com
ivasilchenko@labaton.com
jchristie@labaton.com
mschmidt@labaton.com

*Attorneys for Lead Plaintiff the Public
School Retirement System of the
School District of Kansas City,
Missouri and Lead Counsel
for the Proposed Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANCOUVER ALUMNI ASSET HOLDINGS INC., Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIMLER AG, DIETER ZETSCHE, BODO UEBBER, and THOMAS WEBER,<br><br>Defendants. | Master File No. 16-cv-02942-DSF-KS<br><br>Judge:    Hon. Dale S. Fischer<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |
| MARIA MUNRO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>DAIMLER AG, DIETER ZETSCHE, BODO UEBBER, and THOMAS WEBER,<br><br>Defendants. | Case No. 16-cv-03412-DSF-KS<br><br>Hearing:<br><br>Date: May 18, 2020<br>Time: 1:30 p.m.<br>Place: Courtroom 7D<br>Judge: Hon. Dale S. Fischer |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................. iii

PRELIMINARY STATEMENT ............................................................1

    A.    Overview of the Litigation ................................................1

    B.    Settlement Discussions ......................................................4

    C.    The Proposed Settlement ...................................................5

    D.    Proposed Schedule of Events ............................................6

ARGUMENT ........................................................................................7

I.     THE SETTLEMENT MERITS PRELIMINARY APPROVAL ...................7

    A.    Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class ................................................9

    B.    Settlement Resulted from Good Faith, Arm's-Length Negotiations ........................................................10

    C.    The Relief Provided by the Settlement Is Adequate .........................11

        1.    Many Risks to Obtaining a Recovery Remained ...................11

        2.    Proposed Plan of Allocation for Distributing Relief Treats Settlement Class Members Equitably ..........................14

        3.    Anticipated Legal Fees and Expenses ....................................16

    D.    Settlement Class Members Are Treated Equitably Relative to One Another ..........................................................17

II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ........................................................17

    A.    Standards Applicable to Class Certification .....................................17

    B.    The Settlement Class Meets the Requirements of Rule 23(a) ...........18

        1.    Rule 23(a): Numerosity ..........................................................18

        2.    Rule 23(a)(2):  Questions of Law or Fact Are Common .........19

        3.    Rule 23(a)(3): Lead Plaintiff's Claims Are Typical ...............20

        4.    Rule 23(a)(4):  The Lead Plaintiff Is Adequate .....................20

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

i

   C. The Settlement Class Meets the Requirements of Rule 23(b)(3) ......21

     1. Common Questions of Law or Fact Predominate ...................21

     2. A Class Action Is a Superior Method of Adjudication ...........22

III. THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE
PROCESS, AND THE PSLRA REQUIREMENTS....................................23

CONCLUSION...................................................................................................25

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

ii

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ...................................................................22

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ..............................................................18, 21

*Arnold v. United Artists Theatre Circuit, Inc.*,
158 F.R.D. 439 (N.D. Cal. 1994) .............................................18

*In re Banc of Calif. Sec. Litig.*,
No. SACV1700118AGDFMX, 2019 WL 6605884 (C.D. Cal.
Dec. 4, 2019) ......................................................................8, 10

*Basic v. Levinson*,
485 U.S. 224 (1988) ...................................................................22

*In re Bear Stearns Cos. Sec., Derivative, & ERISA Litig.*,
No. 07-Civ-10453, 2009 WL 50132 (S.D.N.Y. Jan. 5, 2009) .........................20

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .....................................................19

*Cheng Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW, 2019 WL 5173771 (C.D. Cal. Oct. 10,
2019) .....................................................................................16

*In re Comput. Memories Sec. Litig.*,
111 F.R.D. 675 (N.D. Cal. 1986) .............................................20

*In re Cooper Cos. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ...........................................18, 21

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
No. MDL-901, 1993 WL 144861 (C.D. Cal. Feb. 26, 1993)...................21

*Flynn v. Sientra, Inc.*,
No. CV1507548SJO(RAOx), 2017 WL 11139918 (C.D. Cal. Jan.
23, 2017) .................................................................................8

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

iii

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................. 18, 19, 21

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ................................................................ 18

*Howell v. JBI, Inc.*,
   298 F.R.D. 649 (D. Nev. 2014) ............................................................ 18

*In re HP Sec. Litig.*,
   No. 12-cv-05980-CRB, 2015 WL 4477936 (N.D. Cal. July 20,
   2015) ..................................................................................................... 24

*In re Juniper Networks, Inc. Sec. Litig.*,
   264 F.R.D. 584 (N.D. Cal. 2009) ........................................................ 19

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) .............................................................. 23

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ........................................................ 13

*Lo v. Oxnard European Motors, LLC*,
   No. 11-cv-1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec.
   15, 2011) ............................................................................................... 14

*McPhail v. First Command Fin. Planning, Inc.*,
   No. 05-cv-179-IEG-JMA, 2009 WL 839841 (S.D. Cal. Mar. 30,
   2009) ................................................................................................ 12, 23

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) .............................................................. 20

*In re Mercury Interactive Corp. Sec. Litig.*,
   618 F.3d 988 (9th Cir. 2010) ................................................................ 7

*Morrison v. Nat'l Australia Bank*,
   561 U.S. 247 (2010) .......................................................................... 3, 11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................ 23

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) .......................................................... 7

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

iv

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
238 F.R.D. 482 (C.D. Cal. 2006) .................................................................21

*In re NVIDIA Corp. Derivative Litig.*,
No. 06-cv-06110-SBA (JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ........................................................................................................10

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .........................................................13

*In re OSI Sys., Inc. Derivative Litig.*,
No. CV-14-2910-MWF-(MRWx), 2017 WL 5634607 (C.D. Cal. Jan. 24, 2017)......................................................................................................10

*In re Portal Software, Inc. Sec. Litig.*,
No. 03-cv-5138 VRW, 2007 WL 1991529 (N.D. Cal. June 30, 2007) ...............................................................................................................10

*In re Syncor ERISA Litig.*,
227 F.R.D. 338 (C.D. Cal. 2005) .................................................................20

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008)........................................................................7

*In re THQ Inc. Sec. Litig.*,
No. 00-1783-AHM(EX), 2002 WL 1832145 (C.D. Cal. Mar. 22, 2002)................................................................................................................18

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002) ......................................................................16

*In re Zynga Inc., Sec. Litig.*
No. 12 cv 04007, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ......................9

**Statutes**

15 U.S.C. § 78u-4(a)(4) ..................................................................................17

15 U.S.C. § 78u-4(a)(7)(A)-(F) ......................................................................25

15 U.S.C. § 78u-4(e)........................................................................................15

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

v

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 3

Fed. R. Civ. P. 23 ................................................................................... *passim*

Fed. R. Civ. P. 23(a) ........................................................................ 1, 17, 18

Fed. R. Civ. P. 23(a)(1) .................................................................................. 18

Fed. R. Civ. P. 23(a)(2) .................................................................................. 19

Fed. R. Civ. P. 23(a)(3) .................................................................................. 20

Fed. R. Civ. P. 23(a)(4) .................................................................................. 20

Fed. R. Civ. P. 23(b) ...................................................................................... 18

Fed. R. Civ. P. 23(b)(3) ......................................................................... *passim*

Fed. R. Civ. P. 23(b)(3)(A)-(D) .................................................................... 22

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 23

Fed. R. Civ. P. 23(e) ...................................................................... 1, 8, 17

Fed. R. Civ. P. 23(e)(1)(B) .............................................................................. 8

Fed. R. Civ. P. 23(e)(2) .................................................................................... 8

Fed. R. Civ. P. 23(e)(2)(B) ............................................................................ 10

Fed. R. Civ. P. 23(e)(3) ........................................................................... 5, 8

Fed. R. Civ. P. 23(f) ...................................................................................... 13

Fed. R. Civ. P. 23(g)(1) .................................................................................. 21

**Other Authorities**

Internal Revenue Code Section 501(c)(6) .................................................... 16

Manual for Complex Litigation (Fourth) (2004) .......................................... 7

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

vi

# PRELIMINARY STATEMENT

Lead Plaintiff the Public School Retirement System of the School District of Kansas City, Missouri ("Lead Plaintiff" or "Kansas City"), through its counsel Labaton Sucharow LLP ("Labaton Sucharow" or "Lead Counsel"), submits this memorandum of points and authorities in support of its unopposed motion, pursuant to Federal Rules of Civil Procedure 23(a), (b)(3), and (e), for preliminary approval of a proposed class action settlement in the amount of $19,000,000, in cash, pursuant to the terms set forth in the Stipulation and Agreement of Settlement, dated April 20, 2020 (the "Stipulation"), which will resolve the Action in its entirety.[1]  Lead Plaintiff, on behalf of itself and all others similarly situated, entered into the Stipulation with all of the defendants in the Action: Daimler AG ("Daimler" or the "Company"), and Dieter Zetsche ("Zetsche"), Bodo Uebber ("Uebber"), and Thomas Weber ("Weber") (collectively, the "Individual Defendants" and, with Daimler, the "Defendants").

Lead Plaintiff respectfully submits that the Settlement is a very good result for the Settlement Class and should be preliminarily approved by the Court.  The decision to settle was informed by a comprehensive investigation, intensive motion practice, and extensive arm's-length negotiations overseen by a respected mediator.  For the reasons stated herein, Lead Plaintiff respectfully requests that the Court grant this motion.

## A.   Overview of the Litigation

Beginning in April and May 2016, two securities class action complaints were filed in the U.S. District Court for the Central District of California (the "Court") on behalf of investors in Daimler alleging violations of the Securities

---

[1] The Stipulation is attached as Exhibit 1 to the Declaration of James W. Johnson, submitted herewith.

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

1

1    Exchange Act of 1934 (the "Exchange Act").[2]

2    On June 28, 2016, the plaintiffs in *Vancouver* and *Munro*, respectively,

3    pursuant to the procedure set forth by the Private Securities Litigation Reform Act

4    of 1995 (the "PSLRA"), filed motions to consolidate the two cases and for

5    appointment as lead plaintiff and for their selection of lead counsel.  ECF Nos. 9

6    and 16.  Also on June 28, 2016, Kansas City filed a motion for appointment as

7    lead plaintiff and for its approval of its selection of lead counsel.  ECF No. 13.

8    On July 20, 2016, the Court entered an Order consolidating the *Vancouver*

9    and *Munro* actions, appointing Kansas City as Lead Plaintiff and appointing

10   Labaton Sucharow as Lead Counsel and Glancy Prongay & Murray LLP as

11   Liaison Counsel.  ECF No. 30.

12   The Consolidated Class Action Complaint for Violations of the Federal

13   Securities Laws (the "Complaint") was filed on October 11, 2016, alleging

14   violations of §§ 10(b) and 20(a) of the Exchange Act.  ECF No. 38.  The

15   Complaint was based upon Lead Counsel's extensive factual investigation, which

16   included, among other things, the review and analysis of: (i) documents filed

17   publicly by the Company with the U.S. Securities and Exchange Commission

18   ("SEC"); (ii) publicly available information, including press releases, news

19   articles, and other public statements issued by or concerning the Company and

20   Defendants; (iii) research reports issued by financial analysts concerning the

21   Company; (iv) other publicly available information and data concerning the

22   Company, including European and domestic emissions regulations, regulatory

23   submissions by Daimler and other auto manufacturers, investigative reports

24   regarding diesel emissions and defeat devices, and engineering analyses; (v)

25   documents produced in response to Freedom of Information Act ("FOIA")

26

27   [2] *Vancouver Alumni Asset Holdings, Inc. v. Daimler AG, et al.,* No. 16-cv-02942-
     SJO-KS (C.D. Cal., Apr. 29, 2016); and *Maria Munro v. Daimler AG, et al.,* No.

28   16-cv-03412-SJO-KS (C.D. Cal., May 18, 2016).

requests issued to emissions regulators, including the Environmental Protection Agency ("EPA") and California Air Resources Board ("CARB"); and (vi) the applicable law governing the claims and potential defenses.  Lead Counsel's investigation also included identifying approximately 103 former Daimler and Mercedes-Benz employees and other persons with relevant knowledge and interviewing 30 of them.  Lead Counsel also consulted with experts on damages, diesel emissions, and regulatory issues.

On January 20, 2017, Defendants filed a motion to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2) (ECF No. 58), as well as a motion to dismiss pursuant to Rule 12(b)(6) (ECF No. 62).  Lead Plaintiff opposed both motions on March 20, 2017. ECF Nos. 68, 69.  On April 3, 2017, Defendants filed reply briefs in further support of their motions.  ECF Nos. 72, 74.

On May 31, 2017, the Court entered an order denying Defendants' motion to dismiss for lack of personal jurisdiction and granting in part and denying in part Defendants' motion to dismiss for failure to state a claim.  ECF No. 77 (the "MTD Order").  In particular, the Court denied Defendants' Rule 12(b)(6) motion to dismiss in substantial part, finding that Lead Plaintiff had adequately pled that: the purchases of the Daimler securities at issue were domestic securities transactions under *Morrison v. National Australia Bank*, 561 U.S. 247 (2010) and, therefore, subject to Section 10(b) liability; Defendants' statements and omissions were materially false and misleading when made; the Complaint sufficiently alleged Defendants had acted with scienter, except for Defendant Mercedes-Benz USA, LLC (Daimler's American subsidiary); and loss causation was sufficiently alleged.  *See* MTD Order at 26.

After the issuance of the MTD Order, the case was stayed for reasons set forth in a sealed order.  *See* ECF No. 99, under seal. Pursuant to the Court's subsequent permission (*see* ECF No. 128, under seal), Lead Plaintiff served

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

3

document requests to Defendants in July 2018. After receiving Defendants' responses and objections in August 2018, the Parties met and conferred on multiple occasions regarding Defendants' document production, including a sealed discovery dispute.  After the Parties were unable to resolve this dispute, Lead Plaintiff filed a motion to compel before Magistrate Judge Stevenson in April 2019. ECF No. 166, under seal.  Subsequently, the Parties engaged in further extensive briefing and oral argument on this motion and Defendants' related motion to strike Lead Plaintiff's supplemental expert report. ECF Nos. 167-69, 178-79, 186, 188, 197, 201, 217, 226, 235.  On October 2, 2019, Magistrate Judge Stevenson granted Lead Plaintiff's motion to compel. ECF No. 237. Defendants appealed that order to the District Court and, after additional extensive briefing, Judge Otero issued an order on January 24, 2020, granting Defendants' objections in part and denying them in part. ECF No. 302.

## B.    Settlement Discussions

In October 2019, Lead Plaintiff and Defendants, through their counsel, conferred on the possibility of reaching a negotiated resolution of the Action and agreed to participate in a mediation under the auspices of the Honorable Daniel Weinstein of JAMS (the "Mediator"), with assistance from Ambassador (ret.) David Carden.  In advance of the mediation, the Parties submitted detailed mediation statements and exhibits to the Mediator, which addressed issues of both liability and damages.  On December 19, 2019, the Parties met for a full-day mediation with Judge Weinstein and Ambassador Carden.  Ultimately, the Parties agreed, in principle, to a settlement of $19 million, subject to the negotiation of a mutually acceptable Settlement term sheet and long form stipulation of settlement and completion of additional due diligence to confirm the reasonableness of the Settlement.  The Settlement Term Sheet was executed by the Parties on February 20, 2020 and the Stipulation was executed on April 20, 2020.

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

4

## C.    The Proposed Settlement

Pursuant to the Stipulation, within twenty (20) calendar days after the later of (i) entry of the Preliminary Approval Order or (ii) Lead Counsel's provision to Defendants' Counsel of payment instructions and a W-9 form for the Settlement Fund, Defendants shall pay, or cause to be paid, the Settlement Amount into the Escrow Account.  *See* Stipulation at ¶6.

In exchange for this payment, upon the Effective Date of the Settlement, Lead Plaintiff and each Settlement Class Member shall release and dismiss the "Released Claims" against the Released Defendant Parties.  *See* Stipulation at ¶¶1(aa) – (bb), 4.  The definition of Released Claims has been tailored to release only claims that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the Action; or (ii) could have asserted in any forum or proceeding that arise out of or are based upon or are related to the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint that arise out of the purchase or acquisition of Daimler American Depository Receipts ("ADRs") and/or Global Registered Shares ("GRS") in the United States during the Class Period (February 22, 2012 through April 21, 2016, inclusive).  *See* Stipulation at ¶¶1(e), 1(aa).

Pursuant to Rule 23(e)(3), the only agreements made by the Parties in connection with the Settlement are the Term Sheet, the Stipulation, and the confidential Supplemental Agreement, dated as of April 20, 2020, concerning the circumstances under which Defendants may terminate the Settlement based upon the number of exclusion requests.  *See* Stipulation at ¶41.  It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class.  The Supplemental Agreement can be provided to the Court *in camera* or under seal.

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

5

After approval of the Settlement and approval of the Plan of Allocation for the proceeds of the Settlement, the proposed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), will process all claims received and will apply the plan of allocation approved by the Court.  At the completion of the administration, A.B. Data will distribute the Net Settlement Fund to eligible claimants, and will continue to do so as long as it is economically feasible to make distributions.  *See* Stipulation at ¶61.  This is not a "claims-made" settlement and the entire $19 million Settlement Amount is for the benefit of the Settlement Class, regardless of how many claims are submitted, and there is no reversion to Defendants.  *Id*. at ¶12.  When it is no longer feasible to make additional distributions, because of the *de minimis* amount of funds left in the Net Settlement Fund, Lead Plaintiff proposes that the unclaimed balance shall be contributed to the National Council of Teachers Retirement (*see* discussion below), or such other non-profit and non-sectarian organization(s) approved by the Court.  *Id*. at ¶61.

**D.   Proposed Schedule of Events**

Lead Plaintiff respectfully proposes the following schedule for Settlement-related events, each of which is in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for mailing individual Notices and Claim Forms | *10 business days after entry of the Preliminary Approval Order ("Notice Date")* |
| Deadline for publication of Summary Notice in *The Wall Street Journal* and transmission over *PR Newswire* | *Within 14 calendar days of the Notice Date* |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's request for an award of attorneys' fees and expenses | *No later than 35 calendar days before the Settlement Hearing* |
| Deadline for submission of requests for exclusion or objections | *No later than 21 calendar days before the Settlement Hearing* |
| Deadline for filing reply papers in support of Lead Plaintiff and Lead Counsel's motions | *No later than 7 calendar days before the Settlement Hearing* |
| Deadline for submission of Claim Forms | *Postmarked or received no later than 7 calendar days before the Settlement Hearing* |

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

6

| Settlement Hearing[3] | *At the Court's convenience, but no fewer than 100 calendar days after entry of the Preliminary Approval Order* |
|---|---|

This schedule is similar to those used and approved by numerous courts in securities class action settlements and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010) (fee motion must be made available to the class before the objection deadline).

## ARGUMENT

## I.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

As a matter of public policy, settlement is strongly favored for resolving disputes, especially in complex class actions. *E.g.*, *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.").[4]

Federal Rule of Civil Procedure 23 requires court approval for any settlement of a class action.  Approval of class action settlements proceeds in two stages:   (i) preliminary approval, followed by notice to the class; and (ii) final approval.  *See, e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004); Manual for Complex Litigation (Fourth) § 13.14 (2004).  "At this stage, the Court may grant preliminary approval of a settlement if

---

[3] In light of the conditions resulting from the COVID-19 pandemic, the Settlement Hearing may be conducted by telephone or in-person, at the Court's discretion. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 5:16-md-02752-LHK, ECF No. 448 (N.D. Cal. Mar. 23, 2020) (ordering that, in light of COVID-19, final settlement hearing be conducted telephonically); *In re Snap Inc. Sec. Litig.*, Case No. 2:17-cv-03678-SVW-AGR, ECF No. 375 (C.D. Cal. Apr. 27, 2020) (ordering that "the Court may adjourn the Settlement Hearing or decide to hold the Settlement Hearing telephonically without further notice to the Class"). If the Settlement Hearing were to be held telephonically, instructions on how Settlement Class Members can participate will be posted on the Settlement website.

[4] All internal citations are omitted and emphases added, unless otherwise noted.

1   it: "(1) appears to be the product of serious, informed, non-collusive negotiations;

2   (2) has no obvious deficiencies; (3) does not improperly grant preferential

3   treatment to class representatives or segments of the class; and (4) falls within the

4   range of possible approval." *Flynn v. Sientra, Inc*., No. CV1507548SJO(RAOx),

5   2017 WL 11139918, at *4 (C.D. Cal. Jan. 23, 2017). *See also In re Banc of Calif.*

6   *Sec. Litig*., No. SACV1700118AGDFMX, 2019 WL 6605884, at *2 (C.D. Cal.

7   Dec. 4, 2019). By this motion, Lead Plaintiff requests that the Court take the first

8   step: preliminary approval of the Settlement.

9        Effective December 1, 2018, Rule 23(e) was amended to, among other

10   things, specify that the crux of a court's preliminary approval evaluation is

11   whether notice should be provided to the class given the *likelihood* that the court

12   will be able to finally approve the settlement and certify the class.   Rule

13   23(e)(1)(B).   Rule 23 was previously silent as to how courts were to evaluate

14   whether a proposed settlement was fair, adequate, and reasonable, but Rule

15   23(e)(2) now provides that a court should consider whether:

16

17   (A)   class representatives and counsel have adequately represented the class;

18   (B)   the proposal was negotiated at arm's length;

19   (C)   the relief provided for the class is adequate, taking into account:
         (i)    the costs, risks, and delay of trial and appeal;

20       (ii)   the effectiveness of any proposed method of distributing relief, including the method of processing class-member claims;

21       (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

22

23       (iv)   an agreement required to be identified under Rule 23(e)(3); and
     (D)   the proposal treats class members equitably relative to each other.[5]

24

---

25   [5] The Court may also consider the Ninth Circuit's long-standing approval factors,
26   many of which overlap with the Rule 23 considerations:  "(1) the strength of the
     plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further
27   litigation; (3) the risk of maintaining class action status throughout the trial;
     (4) the amount offered in settlement; (5) the extent of discovery completed and the
28   stage of the proceedings; (6) the experience and views of counsel; (7) the presence

---

Applying the standards set forth above, it is respectfully submitted that the Settlement should be preliminarily approved.

### A. Lead Plaintiff and Lead Counsel Have Adequately Represented the Settlement Class

Here, Lead Plaintiff has vigorously investigated the Action since its inception and the Settlement was achieved only after diligent arm's-length mediated negotiations between counsel with considerable knowledge and expertise in the field of federal securities law, including securities fraud class actions under the Securities Exchange Act. Lead Counsel developed a deep understanding of the facts of the case and merits of the claims through their analysis of, *inter alia*:  (i) publicly available information regarding the Company and interviews of former employees; (ii) documents produced in response to FOIA requests; (iii) briefing on Defendants' motions to dismiss; (iv) analysis of Defendants' mediation statement and exhibits; and (v) consultations with experts in damages, diesel emissions and regulatory issues.  Prior to executing the Stipulation, Lead Counsel also conducted additional due diligence and reviewed documents produced by Defendants.

Lead Plaintiff Kansas City is a sophisticated institutional investor, which provides retirement and other benefits for employees of the Kansas City, Missouri School District and certain other public employers and manages more than $668 million in assets for those beneficiaries.  *See, e.g.,* ECF No. 38 at 19. With an informed understanding, Lead Plaintiff agreed to the Settlement.  Further, throughout the Action, Lead Plaintiff had the benefit of the advice of knowledgeable counsel well-versed in securities fraud cases.  Labaton Sucharow is highly experienced and has a long and successful track record in such cases.

---

of a governmental participant; and (8) the reaction of the class members of the proposed settlement."  *In re Zynga Inc.*, *Sec. Litig.* No. 12 cv 04007, 2015 WL 6471171, at *8 (N.D. Cal. Oct. 27, 2015).

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

9

*See* Ex. 2.  Labaton Sucharow has served as lead counsel in a number of high profile matters.  *See, e.g.*, *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-8141 (S.D.N.Y.) ($1 billion recovery); *In re HealthSouth Corp. Sec. Litig.*,  No. 03-cv-1500 (N.D. Ala.) ($600 million recovery); and *In re Countrywide Sec. Litig.*, No. 07-cv-5295 (C.D. Cal.) ($600 million recovery).

Courts give considerable weight to the opinion of experienced and informed counsel.  *See, e.g.*, *In re NVIDIA Corp. Derivative Litig.*, No. 06-cv-06110-SBA (JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement.").

### B.     Settlement Resulted from Good Faith, Arm's-Length Negotiations

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length."  Courts have long recognized that there is an initial presumption that a proposed settlement is fair and reasonable when it is the "product of arms-length negotiations."  *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138 VRW, 2007 WL 1991529, at *6 (N.D. Cal. June 30, 2007); *see also In re Banc of Calif.*, 2019 WL 6605884, at *2 (noting, at preliminary approval, that "one important factor is that the parties reached the settlement after significant arms-length negotiations with a third-party mediator"); *In re OSI Sys., Inc. Derivative Litig.*, No. CV-14-2910-MWF-(MRWx), 2017 WL 5634607, at *3 (C.D. Cal. Jan. 24, 2017) (settlement is a fair result where it was "the result of sincere, arm's length negotiations before an experienced mediator").  Here, as noted above, the Settlement was achieved only after a full-day, in person mediation before Judge Weinstein, with assistance from Ambassador (ret.) David Carden.  Defendants' counsel, three well-regarded US law firms with strong records and deep expertise in defense of securities class actions, vigorously asserted arguments against liability and damages.  The negotiations were at all times adversarial and at arm's-length, and produced a result that is in the best interests of the Settlement Class.

### C.    The Relief Provided by the Settlement Is Adequate

#### 1.    Many Risks to Obtaining a Recovery Remained

Although Lead Plaintiff and Lead Counsel believe that the claims asserted against Defendants have merit, they recognize the significant expense and length of continued litigation through trial and appeals, as well as the risks they would face in establishing one or more of the required elements – falsity, materiality, scienter, and/or loss causation – to sustain their securities fraud claims.

For example, Defendants would have argued that the purchases of the Daimler securities at issue here—particularly the Daimler GRS, which are global shares of a foreign issuer not sold on any U.S. exchange and which are connected to the U.S. only by their trading on the U.S. over-the-counter market—did not qualify as domestic transactions under *Morrison*. Defendants also would continue to argue that their statements made before the U.S. Environmental Protection Agency issued a Notice of Violation ("NOV") to Volkswagen ("VW") for using illegal emissions "defeat devices" are mere corporate optimism, or puffery, which are not material as a matter of law. Further, Defendants would have maintained their arguments that such statements, touting, *e.g.*, Daimler's compliance with "the strictest emissions standards," were not false because its diesel vehicles met the applicable regulatory standards. Regarding statements denying that Daimler used defeat devices after the VW NOV, Defendants would likely continue to contend that they are not false and misleading because, *inter alia*, Lead Plaintiff would not be able to establish Daimler's use of any *impermissible* defeat device like the ones used by VW, for example because any alleged defeat device had a legitimate purpose of protecting the engine under applicable regulations. As to scienter, Defendants would have continued to argue, *inter alia*, that none of the Individual Defendants could have been aware of any improper defeat device given that they were not responsible for developing any of the applicable software, nor would such responsibility be expected given their high-level management

1   positions.   Defendants would also argue that there would not be sufficient

2   evidence to prove that any of the Individual Defendants, or anyone else whose

3   knowledge could be imputed to Daimler and who participated in making the

4   challenged statements, knew that Daimler's emissions systems were non-

5   compliant with regulatory standards because the regulatory landscape is complex

6   and not well-defined.

7         Lead Plaintiff would have also confronted significant challenges in

8   establishing loss causation and damages.  Defendants would have likely continued

9   to argue that the two alleged corrective disclosures (on September 21, 2015 and on

10   April 21, 2016) were not corrective.  For example, Defendants would likely argue

11   that the relevant September 21, 2015 article was not corrective because it did not

12   reveal any defeat device issues with *Daimler's* vehicles.  Further, they would have

13   likely argued that loss causation was not established for this first alleged

14   disclosure date because the article was issued during trading hours on September

15   21, 2015, yet there was no statistically significant stock price decline on that day.

16   Defendants would have also likely argued that even if the alleged disclosures were

17   corrective and caused statistically significant price declines, there were credible

18   arguments and evidence showing that a significant portion of the price declines

19   resulted from forces unrelated to the alleged fraud.

20         If liability were established with respect to all remaining claims, it is

21   estimated that the maximum aggregate damages recoverable at trial based on the

22   full stock price declines on the disclosure dates would be approximately $150

23   million.  Accordingly, the Settlement recovers approximately 13% of maximum

24   damages.  Since the passage of the Private Securities Litigation Reform Act of

25   1995 ("PSLRA"), courts have regularly approved settlements that recover far

26   smaller percentages of maximum damages.  *See, e.g.*, *McPhail v. First Command*

27   *Fin. Planning, Inc.,* No. 05-cv-179-IEG-JMA, 2009 WL 839841, at *5 (S.D. Cal.

28   Mar. 30, 2009) (finding a $12 million settlement recovering 7% of estimated

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

12

damages was fair and adequate); *In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) ($13.75 million settlement yielding 6% of potential damages after deducting fees and costs was "higher than the median percentage of investor losses recovered in recent shareholder class action settlements").

Importantly, this maximum estimate assumes that Lead Plaintiff would be able to prove damages based on all alleged corrective disclosures in the Action and that it would not need to disaggregate, or parse out, confounding non-fraud related information on those dates. However, had the case proceeded, Defendants would have strenuously argued for the exclusion of each of the alleged corrective disclosures on the grounds, among others, that Lead Plaintiff could not sufficiently link each to Defendants' alleged fraud. If these arguments prevailed at class certification, summary judgment, trial, or on appeal, the Settlement Class could have recovered significantly less or, indeed, nothing.

The $19 million recovery is also above the median settlement amount of $11.5 million for 2019, as reported by Cornerstone Research. *See* Laarni T. Bulan and Laura E. Simmons, Securities Class Action Settlements – 2019 Review and Analysis at 1 (Cornerstone Research 2020), attached as Ex. 3 to Johnson Decl.

Further, the Settlement represents a prompt and substantial tangible recovery, without the considerable risk, expense, and delay of completing extensive fact and expert discovery and prevailing at class certification, summary judgment, trial, and post-trial litigation. *See, e.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results."). For instance, if the case were to proceed, Lead Plaintiff would have had to argue, and the Court would be called to rule on, Lead Plaintiff's anticipated motion for class certification. If a class were certified, Defendants would have likely filed a Rule 23(f) appeal to the Ninth Circuit. At each of these stages, there would be significant risks attendant to the

continued prosecution of the Action, and there was no guarantee that further litigation would have resulted in a higher recovery, or any recovery at all.

Accordingly, in light of the substantial risks and expense of continued litigation, and compared to the certain and prompt recovery of $19,000,000, the Settlement is a favorable result that is well within the range of reasonableness. *See, e.g.*, *Lo v. Oxnard European Motors, LLC*, No. 11-cv-1009 JLS (MDD), 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15, 2011) (at preliminary approval, "'[c]onsidering the potential risks and expenses associated with continued prosecution of the Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery through continued litigation,' the Court finds that, on balance, the proposed settlement is fair, reasonable, and adequate") (alteration in original).

### 2.    Proposed Plan of Allocation for Distributing Relief Treats Settlement Class Members Equitably

At the final Settlement Hearing, the Court will be asked to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to eligible claimants.  The Plan of Allocation, which is reported in full in the Notice, was drafted with the assistance of Lead Plaintiff's consulting damages expert, based on the measure of damages for claims under the Exchange Act and is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement amongst eligible claimants.  *See* Notice at ¶¶47-63.

Here, the Plan of Allocation is designed to equitably distribute the Settlement proceeds among members of the Settlement Class who were allegedly injured by Defendants' alleged misrepresentations and who submit valid Claim Forms.  The Plan provides for the calculation of a "Recognized Loss" amount for each properly documented purchase or acquisition of Daimler ADRs and/or GRS, in the United States, during the Class Period.  A claimant's total Recognized Losses will depend on, among other things, when their shares were purchased

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

14

and/or sold during the Class Period in relation to the disclosure dates alleged in the Action, whether the shares were held through or sold during the statutory 90-day look-back period, *see* 15 U.S.C. § 78u-4(e), and the value of the shares when they were sold or held.

The Recognized Loss formulas are tied to liability and damages. In developing the Plan of Allocation, Lead Plaintiff's damages expert considered the amount of artificial inflation allegedly present in Daimler ADRs and/or GRS, in the United States, throughout the Class Period that was purportedly caused by the alleged fraud. Inflation tables were created and are reported in the Notice as part of the Plan of Allocation. The tables will be utilized by the Claims Administrator in calculating Recognized Loss amounts for claimants.

The Claims Administrator will calculate claimants' Recognized Losses using the transactional information provided by claimants in their Claim Forms, which can be mailed to the Claims Administrator, submitted online using the settlement website, or, for large investors, with hundreds of transactions, via e-mail to the Claims Administrator's electronic filing team. Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members' transactional data and a claims process is required. Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each eligible claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's total "Recognized Loss" compared to the aggregate Recognized Losses of all eligible claimants.[6]

Once the Claims Administrator has processed all submitted claims, notified

---

[6] Because eligible claimants will be receiving their *pro rata* share of the Net Settlement Fund and their individual recoveries will depend on the value of all other eligible claimants' recoveries, which will change on a daily basis as claims are processed and verified, it would not be feasible to have the website provide estimates of claim amounts for each class member.

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

15

claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made to eligible claimants in the form of checks and wire transfers.  After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise) after at least six (6) months from the date of initial distribution, Lead Counsel will, if feasible and economical, re-distribute the balance among eligible claimants who have cashed their checks. These re-distributions will be repeated until the balance in the Net Settlement Fund is no longer feasible to distribute.  Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of any outstanding Notice and Administration Expenses or Taxes, will be donated to the National Council of Teachers Retirement ("NCTR"), or such other non-profit and non-sectarian organization(s) approved by the Court.[7]  *See* Stipulation at ¶26.

### 3.    Anticipated Legal Fees and Expenses

As set forth in the Notice, Lead Counsel will request attorneys' fees of no more than 30% of the Settlement Fund and litigation expenses of no more than $300,000, which may include an application for reimbursement by the Lead Plaintiff pursuant to the PSLRA. A fee request of no more than 30%, while slightly above the 25% "benchmark" within the Ninth Circuit, would be consistent with other settlements approved in the Ninth Circuit. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) (fee of 28% awarded); *Cheng Jiangchen v. Rentech, Inc.,* No. CV 17-1490-GW, 2019 WL 5173771, at *11 (C.D. Cal. Oct.

---

[7] NCTR began in 1924, affiliated with the National Education Association in 1937, and became an independent association in 1971. *See* https://nctr.org/about-nctr/.  It is a nonprofit tax-exempt entity under Section 501(c)(6) of the Internal Revenue Code.   NCTR explains that it "is constituted as an independent association dedicated to safeguarding the integrity of public retirement systems in the United States and its territories to which teachers belong and to promoting the rights and benefits of all present and future members of the systems." *Id.*

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

16

10, 2019) (awarding 33%).  The basis of Lead Counsel's fee and expense request will be detailed in the upcoming motion requesting fees and expenses.

### D. Settlement Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either Lead Plaintiff or any segment of the Settlement Class.  Rather, all members of the Settlement Class, including Lead Plaintiff, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[8]    All Settlement Class Members that were allegedly harmed as a result of the alleged fraud, and that have an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Loss" under the plan.  Notice at ¶¶47-53.

## II. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

### A. Standards Applicable to Class Certification

Lead Plaintiff respectfully requests that the Court preliminarily certify the Settlement Class for purposes of the Settlement only, pursuant to Rules 23(a), (b)(3), and (e) of the Federal Rules of Civil Procedure.  The proposed Settlement Class, which has been stipulated to by the Parties, is defined as "all persons and entities that purchased or otherwise acquired Daimler American Depository Receipts and/or Global Registered Shares, in the United States, during the period from February 22, 2012 through April 21, 2016, inclusive, and were allegedly damaged thereby," excluding those listed in ¶1(hh) of the Stipulation.

---

[8] Lead Plaintiff may seek reimbursement of its reasonable costs and expenses (including lost wages) directly related to its participation in the Action. This would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of plaintiffs' costs and expenses explicitly contemplated by the PSLRA in addition to receiving their *pro rata* portion of the recovery).

Lead Plaintiff's Memo. of Points & Authorities in Support of Unopposed Motion For Preliminary Approval of Proposed Class Action Settlement Case No. 16-cv-02942-DSF-KS and 16-cv-03412-DSF-KS

17

Courts have acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). In the Ninth Circuit, "Rule 23 is to be liberally construed in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing." *In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009); *see also In re THQ Inc. Sec. Litig.*, No. 00-1783-AHM(EX), 2002 WL 1832145, at *2 (C.D. Cal. Mar. 22, 2002) ("[T]he law in the Ninth Circuit is very well established that the requirements of Rule 23 should be liberally construed in favor of class action cases brought under the federal securities laws.").

A settlement class, like other certified classes, must satisfy the requirements of Rule 23(a) and (b). *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). However, the manageability concerns of Rule 23(b)(3) are not at issue for a settlement class. *See Amchem Prods.*, 521 U.S. at 593 ("Whether trial would present intractable management problems . . . is not a consideration when settlement-only certification is requested."). As discussed below, the Action satisfies all the factors for certification.

**B.    The Settlement Class Meets the Requirements of Rule 23(a)**

**1.    Rule 23(a): Numerosity**

Rule 23(a)(1) requires that the class be so numerous that joinder of all members is impracticable. "'[I]mpracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964). There is no fixed number of class members which either compels or precludes the certification of a class. *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D. 439, 448 (N.D. Cal. 1994). In securities litigation, courts regularly find the numerosity requirement is satisfied with respect to putative purchasers of nationally traded securities on the volume of outstanding shares. *See Howell v.*

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

18

*JBI, Inc*., 298 F.R.D. 649, 654-55 (D. Nev. 2014) ("in securities cases, when millions of shares are traded during the proposed class period, a court may infer that the numerosity requirement is satisfied").

Here, there can be no dispute that the Settlement Class satisfies numerosity and consists of (at least) thousands of investors.  Throughout the Class Period, millions of Daimler ADRs and GRSs were actively traded by investors in the U.S.  Common sense dictates that these shares were purchased by thousands of investors, making joinder impracticable.

### 2.      Rule 23(a)(2):  Questions of Law or Fact Are Common

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit construes this requirement "permissively," and has stated that that "[a]ll questions of fact and law need not be common to satisfy the rule."  *Hanlon*, 150 F.3d at 1019.

Securities fraud cases have long been found to satisfy the commonality requirement:

> The overwhelming weight of authority holds that repeated misrepresentations of the sort alleged here satisfy the "common question" requirement.   Confronted with a class of purchasers allegedly defrauded over a period of time by similar misrepresentations, courts have taken the common sense approach that the class is united by a common interest in determining whether a defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions, and that the issue may profitably be tried in one suit.

*Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *see also In re Juniper Networks, Inc. Sec. Litig*., 264 F.R.D. 584, 588 (N.D. Cal. 2009) ("Repeated misrepresentations by a company to its stockholders satisfy the commonality requirement of Rule 23(a)(2).").

In this case, commonality requirements are met. The central questions–whether Defendants' statements during the Class Period were false and misleading, whether Defendants acted with the requisite mental state, and whether

Lead Plaintiff's Memo. of Points & Authorities in Support of Unopposed Motion For Preliminary Approval of Proposed Class Action Settlement Case No. 16-cv-02942-DSF-KS and 16-cv-03412-DSF-KS

19

the amounts by which the prices of Daimler ADRs and/or GRS were artificially inflated, if at all, during the Class Period–are the same for all class members.

### 3.    Rule 23(a)(3): Lead Plaintiff's Claims Are Typical

Rule 23(a)(3) is satisfied where the claims of the proposed class representatives arise from the same course of conduct that gives rise to the claims of the other class members, and where the claims are based on the same legal theory.  *In re Comput. Memories Sec. Litig.*, 111 F.R.D. 675, 680 (N.D. Cal. 1986).  Rule 23(a)(3) does not require plaintiffs to show that their claims are identical on every issue to those of the class, but merely that significant common questions exist.  *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 344 (C.D. Cal. 2005). Here, Lead Plaintiff's claims are typical to those of the other Settlement Class Members.  Like others, Lead Plaintiff purchased Daimler ADRs, in the United States, during the Class Period and claims to have suffered damages when Defendants' alleged material misstatements and omissions were revealed.

### 4.    Rule 23(a)(4): The Lead Plaintiff Is Adequate

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The proper resolution of this issue requires that two questions be addressed:  (a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 462 (9th Cir. 2000) (citing *Hanlon*, 150 F.3d at 1020).

Here, as mentioned above, Lead Plaintiff is a sophisticated institutional investor that has and will continue to represent the interests of the Settlement Class fairly and adequately.  There is no antagonism or conflict of interest between Lead Plaintiff and the proposed Settlement Class.  Lead Counsel also has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. *See* Ex. 2; *see also In re Bear Stearns*

*Cos. Sec., Derivative, & ERISA Litig.*, No. 07-Civ-10453, 2009 WL 50132, at *10
(S.D.N.Y. Jan. 5, 2009) (Labaton Sucharow has "substantial experience in the
prosecution of shareholder and securities class actions").  Lead Counsel is well
qualified to conduct the Action and has ably represented Lead Plaintiff and the
proposed Settlement Class throughout the Action.[9]

### C.   The Settlement Class Meets the Requirements of Rule 23(b)(3)

#### 1.   Common Questions of Law or Fact Predominate

Rule 23(b)(3) sets forth two requirements, the first being that the "questions
of law or fact common to the members of the class predominate over any
questions affecting only individual members."   Fed. R. Civ. P. 23(b)(3).   The
predominance inquiry "tests whether proposed classes are sufficiently cohesive to
warrant adjudication by representation."   *Amchem Prods.*, 521 U.S. at 594.
"'When common questions present a significant aspect of the case and they can be
resolved for all members of the class in a single adjudication, there is clear
justification for handling the dispute on a representative rather than on an
individual basis.'"   *Hanlon*, 150 F.3d at 1022.   Predominance is "readily met" in
securities class actions.  *Amchem Prods.*, 521 U.S. at 625; *see also Cooper Cos.*,
254 F.R.D. at 632 ("[S]ecurities fraud cases fit Rule 23 'like a glove.'").

Here, Defendants' alleged fraudulent statements and omissions affected all
Settlement Class Members in the same manner (*i.e.*, through public statements
made to the market and documents publicly filed with the SEC).   Predominance of
common questions generally will be found when, as alleged here, "'many
purchasers have been defrauded over time by similar misrepresentations, or by a
common scheme to which alleged non-disclosures related.'"   *Negrete v. Allianz
Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 492 (C.D. Cal. 2006); *see also In re First
Capital Holdings Corp. Fin. Prods. Sec. Litig.*, No. MDL-901, 1993 WL 144861,

---

[9] Thus, Lead Counsel should also be appointed under Rule 23(g)(1).

at *6 (C.D. Cal. Feb. 26, 1993) ("The Ninth Circuit has repeatedly found that common issues predominate in federal securities actions where the proposed class members have all been injured by the same alleged course of conduct.").

Moreover, class-wide reliance is established in this Action because the claims asserted against Defendants are predicated upon the "fraud-on-the-market" presumption of reliance in *Basic v. Levinson*, 485 U.S. 224, 241-42 (1988).[10] Application of *Basic* (or, alternatively, *Affiliated Ute*) dispenses with the requirement that each Settlement Class Member prove individual reliance on Defendants' alleged misstatements and/or omissions. *See id.* at 241-42. In order to be entitled the *Basic* presumption of reliance, the market for the security must be "efficient." *Id.* at 248. Here, where Daimler regularly communicated with public investors via established market communications mechanisms, was followed by numerous securities analysts, and where Daimler ADRs and/or GRS met all of the requirements for trading, and were actively traded on highly efficient over-the-counter markets under the ticker symbols "DDAIY" and "DDAIF," there is sufficient evidence of market efficiency.

### 2.    A Class Action Is a Superior Method of Adjudication

Finally, Rule 23(b)(3) also requires that the action be superior to other available methods for the fair and efficient adjudication of the controversy. The rule lists several matters pertinent to this finding: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)-(D). Each factor weighs in

---

[10] Alternatively, Lead Plaintiff believes that it could also establish predominance through the application of *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972) because its claims are predominantly predicated on alleged omissions regarding Daimler's use of defeat devices.

favor of superiority here.  *See, e.g., McPhail,* 247 F.R.D. at 615 ("class action is the superior method for fair and efficient adjudication" because individual suits would "clog [ ] the federal courts with innumerable individual suits litigating the same issues repeatedly," the plaintiffs assert complex claims that "would be very costly to litigate," and each claim is for a "relatively small amount").

Further, without the settlement class device, Defendants could not obtain a class-wide release, and therefore would have had little, if any, incentive to settle. Certification of the Settlement Class will allow the Settlement to be administered in an organized and efficient manner.  Accordingly, the Court should preliminarily certify the Settlement Class.

## III.   THE PROPOSED NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA REQUIREMENTS

Lead Counsel proposes that notice be given to the Settlement Class in the form of the mailed long-form Notice and the Summary Notice, which will be published in *The Wall Street Journal* and be disseminated over the internet.  *See* Exhibits A-1 and A-3 to the proposed Preliminary Approval Order.  Notice to the Settlement Class in the form and in the manner set forth in the proposed Preliminary Approval Order will fulfill the requirements of due process, the Federal Rules of Civil Procedure, and the PSLRA.

Rule 23(c)(2)(B) requires notice of the pendency of the class action to be "the best notice practicable under the circumstances."  It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  Notice must describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  *See, e.g.*, *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

Lead Plaintiff's Memo. of Points & Authorities in Support of Unopposed Motion For Preliminary Approval of Proposed Class Action Settlement Case No. 16-cv-02942-DSF-KS and 16-cv-03412-DSF-KS

23

1   Lead Counsel proposes to provide Settlement Class Members notice by:
2   (i) individual first-class mailing of the long-form Notice, addressed to all
3   Settlement Class Members who can reasonably be identified and located, using
4   information provided by Daimler's transfer agent, and information provided by
5   third party banks, brokers, and other nominees about their customers who may
6   have eligible purchases; (ii) publication of the Summary Notice in *The Wall Street*
7   *Journal*; and (iii) dissemination of the Summary Notice on the internet using *PR*
8   *Newswire*. *See In re HP Sec. Litig*., No. 12-cv-05980-CRB, 2015 WL 4477936, at
9   *2 (N.D. Cal. July 20, 2015) (finding that similar procedures satisfy Rule 23 and
10  the PSLRA, and constitute the best notice practicable).  The Notice will also be
11  accessible on the case website and Lead Counsel's website.

12  This proposed notice program is the "gold standard" in securities cases.
13  Name and address data for potential class members is available from third-party
14  banks, brokers, and nominees, and the Claims Administrator will be able to reach
15  potential class members through mailed notice.  Daimler's transfer agent and the
16  nominees are unlikely to have e-mail addresses for potential class members or, if
17  they have them, are likely to be unwilling to provide them given privacy concerns.

18  The form and substance of the notice program are also sufficient.  The
19  forms of notice describe the terms of the Settlement; the considerations that
20  caused Lead Plaintiff to conclude that the Settlement is fair, adequate, and
21  reasonable; the maximum attorneys' fees and expenses that may be sought; the
22  procedure for requesting exclusion from the Settlement Class; the procedure for
23  objecting; the procedure for participating in the Settlement; the proposed Plan of
24  Allocation; and the date and place of the Settlement Hearing.

25  The long-form Notice also satisfies the PSLRA's separate disclosure
26  requirements by, *inter alia*, stating:  (i) the amount of the Settlement determined
27  in the aggregate and on an average per share basis; (ii) that the Parties do not
28  agree on the amount of damages that would be recoverable in the event Lead

Lead Plaintiff's Memo. of Points & Authorities in Support of Unopposed Motion For Preliminary Approval of Proposed Class Action Settlement
Case No. 16-cv-02942-DSF-KS and 16-cv-03412-DSF-KS

24

1  Plaintiff prevailed; (iii) that Lead Counsel intends to make an application for an

2  award of attorneys' fees and expenses (including the amount of such fees and

3  expenses determined on an average per share basis), and a brief explanation of the

4  fees and expenses sought; (iv) the name, telephone number, and address of a

5  representative of counsel for the Settlement Class who will be available to answer

6  questions concerning any matter contained in the Notice; and (v) the reasons why

7  the Parties are proposing the Settlement.  *See* 15 U.S.C. § 78u-4(a)(7)(A)-(F).

8       Finally, Lead Plaintiff also requests that the Court appoint A.B. Data, Ltd.

9  ("A.B. Data") as the Claims Administrator to provide all notices approved by the

10 Court to Settlement Class Members, to process Claim Forms, and to administer

11 the Settlement.  A.B. Data is a recognized leader in legal administration services

12 for class action settlements and legal noticing programs and has successfully

13 administered dozens of complex securities class action settlements.  *See* Ex. 4.

14      With respect to Notice and Administration Expenses, A.B. Data estimates

15 that its fees and expenses may be in the range of $110,000 to $340,000, depending

16 on the number of notices mailed and claims received.  *See* Ex. 5.  This estimate

17 assumes that no more than 175,000 notice packets of 20 pages (consisting of a

18 Notice and Claim Form) will be mailed and that no more than 35,000 claims will

19 be received.  In the event that actual experience differs from these assumptions,

20 the administrative fees and expenses incurred will differ from this estimate.

21                              **CONCLUSION**

22      For the foregoing reasons, Lead Plaintiff respectfully requests that the Court

23 issue an order substantially in the form of the proposed Preliminary Approval

24 Order:  (i) preliminarily approving the Settlement; (ii) approving the manner and

25 forms of notice to the Settlement Class; (iii) setting a date for the Settlement

26 Hearing; (iv) appointing A.B. Data as Claims Administrator; (v) preliminarily

27 certifying the Settlement Class; and (vi) granting such other and further relief as

28 may be required.

Lead Plaintiff's Memo. of Points & Authorities in Support of Unopposed Motion For
Preliminary Approval of Proposed Class Action Settlement
Case No. 16-cv-02942-DSF-KS and 16-cv-03412-DSF-KS                                    25

Dated: April 29, 2020

**LABATON SUCHAROW LLP**

By: /s/ *James W. Johnson*
JAMES W. JOHNSON (*pro hac vice*)
MICHAEL H. ROGERS  (*pro hac vice*)
IRINA VASILCHENKO  (*pro hac vice*)
JAMES T. CHRISTIE  (*pro hac vice*)
MARGARET SCHMIDT  (*pro hac vice*)
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
jjohnson@labaton.com

mrogers@labaton.com

ivasilchenko@labaton.com

jchristie@labaton.com

mschmidt@labaton.com

*Attorneys for Lead Plaintiff and the Settlement Class*

**GLANCY PRONGAY & MURRAY LLP**
JOSHUA L. CROWELL (295411)
1925 Century Park East
Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 432-1495
jcrowell@glancylaw.com

*Liaison Counsel for Lead Plaintiff and the Settlement Class*

LEAD PLAINTIFF'S MEMO. OF POINTS & AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT
CASE NO. 16-CV-02942-DSF-KS AND 16-CV-03412-DSF-KS

26

**CERTIFICATE OF SERVICE**

I hereby certify that on April 29, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 29, 2020

/s/ *James W. Johnson*
James W. Johnson

1

**Mailing Information for a Case 2:16-cv-02942-DSF-KS Vancouver Alumni Asset Holdings, Inc. v. Daimler AG et al**

2

**Electronic Mail Notice List**

3

The following are those who are currently on the list to receive e-mail notices for this case.

4

- **Eric J Belfi**

5

  ebelfi@labaton.com,lpina@labaton.com,4076904420@filings.docketbird.com,electroniccasefiling@labaton.com

6

- **James T Christie**

  jchristie@labaton.com,lpina@labaton.com,smundo@labaton.com,9436348420@filings.docketbird.com,electroniccasefiling@labaton.com

7

8

- **Paul J Collins**

  pcollins@gibsondunn.com,PLe@gibsondunn.com,eoldiges@gibsondunn.com,mjkahn@gibsondunn.com,JRodriguez@gibsondunn.com,cthomas@gibsondunn.com

9

10

- **Joshua Lon Crowell**

  jcrowell@glancylaw.com,joshua-crowell-496@ecf.pacerpro.com,info@glancylaw.com

11

12

- **Jenny Lynn Grantz**

  jenny.grantz@squirepb.com,carrie.takahata@squirepb.com

13

- **James W Johnson**

  jjohnson@labaton.com,7592785420@filings.docketbird.com,lpina@labaton.com,smundo@labaton.com,electroniccasefiling@labaton.com

14

15

- **Michael J Kahn**

  mjkahn@gibsondunn.com,jrodriguez@gibsondunn.com,SChoi@gibsondunn.com

16

17

- **Christopher J Keller**

  ckeller@labaton.com,5497918420@filings.docketbird.com,lpina@labaton.com,electroniccasefiling@labaton.com

18

- **Matthew J Kemner**

  matthew.kemner@squirepb.com,Marsi.Allard@SquirePB.com

19

20

- **Francis P McConville**

  fmcconville@labaton.com,HChang@labaton.com,lpina@labaton.com,drogers@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

21

22

- **Danny Lam Nguyen**

  danny.nguyen@usdoj.gov

23

- **Jennifer Pafiti**

24

  jpafiti@pomlaw.com,jalieberman@pomlaw.com,ahood@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,ashmatkova@pomlaw.com,abarbosa@pomlaw

25

- **Robert Vincent Prongay**

  rprongay@glancylaw.com,CLinehan@glancylaw.com,robert-prongay-0232@ecf.pacerpro.com

26

27

- **Michael H Rogers**

  mrogers@labaton.com,lpina@labaton.com,8956253420@filings.docketbird.com,electroniccasefiling@labaton.com

28

- **Laurence M Rosen**

  lrosen@rosenlegal.com

- **Jonathan M Rotter**
  jrotter@glancylaw.com,jonathan-rotter-5262@ecf.pacerpro.com

- Margaret Schmidt
  mschmidt@labaton.com,lpina@labaton.com,electroniccasefiling@labaton.com

- **Christopher S Turner**
  christopher.turner@lw.com,washington-dc-litigation-services-5378@ecf.pacerpro.com,christopher-turner-6162@ecf.pacerpro.com,DCECFNotificationsDC@lw.com

- **Irina Vasilchenko**
  ivasilchenko@labaton.com,lpina@labaton.com,ElectronicCaseFiling@labaton.com,8032137420@filings.docketbird.com

- **Peter Allen Wald**
  peter.wald@lw.com,peter-wald-7073@ecf.pacerpro.com,#sflitigationservices@lw.com

- **Troy M Yoshino**
  troy.yoshino@squirepb.com,carrie.takahata@squirepb.com

- **Meryl L Young**
  myoung@gibsondunn.com,pmclean@gibsondunn.com

- **Nicole M Zeiss**
  NZeiss@labaton.com,5854006420@filings.docketbird.com,lpina@labaton.com,ElectronicCaseFiling@labaton.com,Settlementquestions@labaton.com,cboria@labaton.